IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT DIABETES CARE INC. and ABBOTT DIABETES CARE LIMITED, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-977-CFC |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DEXCOM, INC.'S
OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:

Robert A. Van Nest

Christa Anderson

Eugene M. Paige

Sophie Hood

Elizabeth A. Egan

Andrew S. Bruns

Sean M. Arenson

Jee Young (Grace) Kim

Puja Parikh

Nicholas R. Green

Yena Lee

Bilal Malik

KEKER, VAN NEST & PETERS LLP

633 Battery Street

San Francisco, CA  94111-1809

(415) 676-2276

Dated: September 13, 2021

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................1

SUMMARY OF THE ARGUMENT ......................................................................1

STATEMENT OF FACTS .....................................................................................2

    A.    Continuous Glucose Monitoring Systems.............................................2

    B.    The Harper Patents ...............................................................................3

          1.    The Harper '842 Patent ..............................................................5

          2.    The Harper '653 Patent ..............................................................6

    C.    Procedural Background .........................................................................8

ARGUMENT ........................................................................................................8

    A.    Legal Standards .....................................................................................8

          1.    Motions to Dismiss Based on Section 101 ................................8

          2.    Patentability Under Section 101 ...............................................10

    B.    The Harper Patents are directed to the abstract idea of filling information gaps with stored information...........................................12

          1.    The asserted claims in the Harper Patents are directed to nonpatentable subject matter.....................................................12

          2.    The asserted claims are representative of all claims in the Harper Patents. ..........................................................................17

          3.    The Harper Patents have no inventive concept that could render the claims patentable under Section 101. ......................19

CONCLUSION ....................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alice Corp. Pty. Ltd. v. CLS Bk. Int'l*,
  573 U.S. 208 (2014).........................................................................10, 11, 16, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................9

*Bancorp Servs. LLC v. Sun Life Assurance Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed Cir. 2012) .........................................................9

*Chamberlain Group, Inc. v. Techtronic Industries Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) .......................................................13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) ..9, 10, 11, 19

*Cleveland Clinic Found. v. True Health Diag. LLC*,
  859 F.3d 1352 (Fed. Circ. 2017).......................................................17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................13, 14, 17

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017) .......................................................16

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ...............................................*passim*

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ...............................................*passim*

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .......................................................15

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020) .......................................................16

*Godlewski v. Affiliated Computer Servs., Inc.*,
  210 F.R.D. 571 (E.D. Va. 2002) .......................................................8

ii

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
   434 F. Supp. 2d 598 (N.D. Iowa 2006) ............................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ......................................................................15

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   566 U.S. 66 (2012)...........................................................................................10

*Newark Cab Ass'n v. City of Newark*,
   901 F.3d 146 (3d Cir. 2018) ..............................................................................9

*PersonalWeb Techs. LLC v. Google LLC*,
   —F.4th—, 2021 WL 3556889, at *4 (Fed. Cir. Aug. 12, 2021).................14, 16

*Realtime Data LLC v. Array Nets. Inc.*,
   2021 WL 1752045 (D. Del. May 4, 2021) ..........................................................9

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ...................................................................12, 19

*Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................14, 19, 20

*Universal Secure Registry LLC v. Apple Inc.*,
   —F.4th—, 2021 WL 3778395 (Fed. Cir. Aug. 26, 2021)...................................8

**Federal Statutes**

35 U.S.C. § 101 ....................................................................................*passim*

**Rules**

Fed. R. Civ. P. 12 .........................................................................................1, 8, 9

## NATURE AND STAGE OF PROCEEDINGS

On July 1, 2021, Plaintiffs Abbott Diabetes Care Inc. and Abbott Diabetes Care Limited (collectively, "Abbott") filed this action for patent infringement. Abbott's Complaint alleges that certain of Defendant DexCom, Inc.'s ("DexCom")'s continuous glucose monitors ("CGMs") infringe twelve patents that Abbott claims to own. *See* D.I. 1, ¶ 1. Abbott asserts in the Complaint's First and Seventh Causes of Action that DexCom's G6 CGM system infringes U.S. Patent Nos. 10,820,842 (the "Harper '842 Patent") and 10,952,653 (the "Harper '653 Patent") (collectively, "the Harper Patents").[1] *See id.* ¶¶ 61-64; 85-88.

The Harper Patents do not claim patentable subject matter under 35 U.S.C. § 101 and are therefore invalid as a matter of law. DexCom accordingly moves pursuant to Federal Rule of Civil Procedure 12 to dismiss the First and Seventh Causes of Action for the reasons discussed below.

## SUMMARY OF THE ARGUMENT

1.     The Harper Patents are invalid under Section 101 because they are directed to the abstract idea of filling information gaps with stored data. The Federal Circuit has made clear that patents teaching methods or systems that

---

[1] The Harper Patents, which were attached to the Complaint as Exhibits A and G, are reproduced for the Court's reference in DexCom's Appendix to this Opening Brief, filed herewith. Page citations to the Harper Patents are given as Appendix citations in the form "A 1," "A 2," and so on. Pin citations are given in the form "A 1, 1:1," with the numerals following the Appendix page number representing column and line numbers within the Harper Patents.

1

merely collect, analyze, and transfer information—without any further inventive concept—are directed to abstract ideas.  *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  Specifically, the Federal Circuit has observed that "including previously stored information in a subsequent communication" is an abstract idea "not only because it is a longstanding commercial practice also because it amounts to nothing more than gathering, storing, and transmitting information."  *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020).  That is all the Harper Patents claim—the claims do not disclose any transformative step or tool for presentation that changes the character of the backfilled data.

2.     Further, nothing in the claims of the Harper Patents contains an inventive concept that could convert the abstract idea to which those patents are directed into patentable subject matter.  Accordingly, the First and Seventh Causes of Action fail as a matter of law and no amendment could cure the defect.

### STATEMENT OF FACTS

### A.     Continuous Glucose Monitoring Systems

DexCom and Abbott are competing designers, manufacturers, and distributors of glucose monitoring systems.  Abbott alleges that it produces "continuous glucose monitoring devices[.]"  D.I. 1, ¶ 4.  CGM systems are medical devices that provide continuous real-time blood glucose monitoring for patients

2

with diabetes.  *See, e.g.*, D.I. 1, ¶¶ 24-31.  These systems, like DexCom's G6 CGM system, may eliminate the need for often painful fingerstick calibration and provide for continuous monitoring of a patient's blood glucose.  *See id.* ¶ 33. CGM systems offer significant advances over prior generations of glucose measurement devices, which often failed to provide a complete picture of a patient's glucose levels and suffered from low compliance due to their invasive and painful nature.  *See id.* ¶ 17.  CGM systems are typically comprised of small, lightweight, battery-powered elements controlled by microprocessors, which collect information using a sensor and then use a transmitter to communicate that information to a receiver and display device.  *See id.*, A 16, 1:1-42.

### B.     The Harper Patents

Although Abbott's Complaint frames the Harper Patents in the context of CGM systems, the patents are directed broadly to the abstract concept of "backfilling" information gaps on a display device, after a "failure mode condition" is resolved.  Both Harper Patents are part of a family that are continuations of the same initial non-provisional application, No. 12/769,635, which was filed on Apr. 28, 2010.  *See* A 16, at 1:12-14; *id.*, A 40 at 1:14-16. Accordingly, both share the same specification.

In general, the specification describes an analyte sensor system comprising: (1) a sensor unit; (2) a data processing and transmitter unit that can be coupled to

3

the sensor unit; (3) a primary receiver that communicates with the transmitter by communication link; and (4) an optional secondary receiver that is operatively coupled to the communication link and which can also communicate with the primary receiver.  *See* A 17-18, at 4:56-5:11.  The system described in the specification "outputs" data from the sensor to "a graphical user interface (GUI) such as a liquid crystal display (LCD)[.]"  *Id.*, A 20, at 10:39-40.  However, the system may "disabl[e] the output of the sensor data during a [*sic*] adverse condition time period[.]"  *Id.*, A 16, at 1:63-64.  In other words, the system may stop outputting data to a display for the user to see when certain adverse conditions are present.  The claims use the phrase "failure mode condition[.]"  *See id.*, A 23, at 15:27-28; A 47, at 15:44-45.

Relevant here, the specification explains that the sensor system has the ability to "backfill" missing or uncalibrated analyte data.  For example, certain conditions may be unsuitable for required calibration of the sensor.  *Id.* A 44-45, at 10:59-11:13.  In such circumstances, the receiver unit may disable its display of glucose information.  The Harper '842 Patent claims a system where the data "received from the analyte sensor" associated with the failure mode condition is stored and then outputted to a display after the failure mode condition is resolved. *See id.*, A 23, at 15:24-41.  The Harper '653 Patent claims a system where a sensed glucose value associated with a failure mode condition is stored in memory on the

4

transmitter and then transmitted to a receiver unit and displayed after the failure mode condition is corrected.  *See id.*, A 47, at 15:26-59.

The specification explains that this backfilling process can be used in other circumstances as well, such as "system malfunction, sensor dislodging, signal errors associated with the sensor, transmitter unit, receiver unit, and the like, or another [sic] variables or parameters that result in the inability of the analyte monitoring system to display or output the real-time monitored analyte level[.]" *Id.* A 46, at 13:22-27.  In each circumstance, "the parameters associated with the correction or rectification" of the abnormal system condition "may be used to retrospectively correct or process data or signals so that the missing gaps in analyte related data may be processed and backfilled."  *Id.* at 13:34-38.

### 1.    The Harper '842 Patent

The Harper '842 Patent consists of two independent method claims (Claims 1 and 23), one independent system claim (Claim 14) and twenty-seven additional dependent claims.  *See* A 23-24, at 15:24-18:45.  Abbott contends that DexCom's G6 CGM system infringes "at least" Claim 14 of the Harper '842 Patent.  *See* D.I. 1, ¶ 62.

Claim 14 of the Harper '842 Patent is a system claim that requires a sensor, one or more processors, and one or more memory devices that can cause the

5

processor to detect failure mode conditions that cause data gaps on the display and then backfill the data.  The claim elements are set forth in the chart below:

| Ref. | Claim 14 of Harper '842 Patent |
|------|-------------------------------|
|      | An analyte monitoring system comprising |
| 14A  | an analyte sensor |
| 14B  | one or more processors; and |
| 14C  | a memory device for storing instructions which, when executed by the one or more processors, causes the one or more processors to: |
| 14D  | detect a failure mode condition, wherein the failure mode condition causes one or more sensor data gaps to be outputted to a display of the analyte monitoring system |
| 14E  | store sensor data received from the analyte sensor for at least a portion of a time period associated with the failure mode condition |
| 14F  | process the sensor data for the at least a portion of the time period associated with the failure mode condition, and |
| 14G  | in response to a correction of the failure mode condition, output the processed stored sensor data to the display of the analyte monitoring system such that the one or more sensor data gaps are at least partially filled by the processed stored sensor data. |

### 2.  The Harper '653 Patent

Abbott contends that DexCom's G6 CGM system infringes "at least" Claim 1 of the Harper '653 Patent.  *See* D.I. 1, ¶ 86.  Claim 1 of the Harper '653 Patent is an independent system claim that claims an on-body glucose sensor and transmitter with an associated receiver unit.  *See id.*, A 47, at 15:26-50.  As with Claim 14 of the Harper '842 Patent, the system backfills missing data associated with failure mode conditions.  *Id.* at 15:26-62.  This claim requires that the data stored during

6

the failure mode condition be stored on the on-body unit rather than the receiver unit.  A chart showing the elements for Claim 1 of the Harper '653 Patent is below:

| Ref. | Claim 1 of Harper '653 Patent |
|------|-------------------------------|
|  | A glucose monitoring system, comprising: |
| **1A** | (1) an on body unit configured to be positioned on a user's body, the on body unit comprising: |
| **1B** | a glucose sensor, a portion of which is configured to be positioned under skin of the user and sense a glucose level of the user, and |
| **1C** | a data processing and transmitter unit coupled with the glucose sensor, wherein the data processing and transmitter unit is configured to transmit data indicative of the sensed glucose level over a Bluetooth wireless communication link, and wherein the data processing and transmitter unit comprises a processor coupled to a memory, wherein the memory stores instructions that, when executed by the processor, cause the processor to: |
| **1D** | store, in the memory of the data processing and transmitter unit, at least a portion of the data indicative of the sensed glucose level corresponding to a time period associated with a failure mode condition, and |
| **1E** | cause wireless transmission of the at least a portion of the data indicative of the sensed glucose level to a receiver unit after the failure mode condition is corrected, and |
| **1F** | (2) the receiver unit, comprising: |
| **1G** | a display |
| **1H** | one or more processors; and |
| **1I** | a memory device coupled with the one or more processors, the memory device storing instructions that, when executed by the one or more processors, cause the one or more processors to output the at [sic] least a portion of the data indicative of the sensed glucose level to a display of the receiver unit after the failure mode condition is corrected, |
| **1J** | wherein the failure mode condition is detected by the data processing and transmitter unit, the receiver unit, or both. |

## C.     Procedural Background

Abbott filed this lawsuit on July 1, 2021.  *See* D.I. 1.  On July 23, 2021, the

Court entered a stipulated order extending DexCom's time to respond to Abbott's

Complaint to September 13, 2021.[2]  *See* D.I. 9.

## ARGUMENT

The First and Seventh Causes of Action should be dismissed because the

Harper Patents claim unpatentable subject matter under Section 101.  The counts

accordingly fail to state a claim as a matter of law.

## A.     Legal Standards

### 1.     Motions to Dismiss Based on Section 101

"Patent eligibility under § 101 is a question of law based on underlying

facts," and "eligibility can be determined at the Rule 12(b)(6) stage 'when there are

no factual allegations that, taken as true, prevent resolving the eligibility question

as a matter of law.'"  *Universal Secure Registry LLC v. Apple Inc.*, —F.4th—,

2021 WL 3778395, at *2 (Fed. Cir. Aug. 26, 2021) (quoting *Aatrix Software, Inc.*

---

[2] Serving a Rule 12 motion tolls the deadline to serve a responsive pleading.  *See* Fed. R. Civ. P. 12(a)(4); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 639 (N.D. Iowa 2006) ("[A] motion pursuant to Rule 12(b), even one that challenges less than all of the claims . . . extends the time to answer as to all claims in the pleading."); *Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) ("A majority of courts . . . hold that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion."). DexCom will answer Abbott's Complaint at the appropriate time following the Court's ruling on this motion.

*v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

Defendants challenging patentability need not wait for claim construction because

claim construction is not "an inviolable prerequisite to a validity determination

under § 101." *Bancorp Servs. LLC v. Sun Life Assurance Co. of Canada (U.S.)*,

687 F.3d 1266, 1273 (Fed Cir. 2012).

Courts resolving motions to dismiss based on Section 101 use the general

Rule 12 standards of the local circuit. *See ChargePoint, Inc. v. SemaConnect, Inc.*,

920 F.3d 759, 764-65 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020). Under

Third Circuit law, courts "accept all factual allegations in the complaint as true and

construe those facts in the light most favorable to the plaintiffs. To survive a

motion to dismiss, a complaint must contain sufficient factual allegations, taken as

true, to 'state a claim to relief that is plausible on its face.'" *Newark Cab Ass'n v.*

*City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018) (cleaned up); *see also Realtime*

*Data LLC v. Array Nets. Inc.*, 2021 WL 1752045, at \*4 (D. Del. May 4, 2021).

A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted). Deciding whether a claim is plausible is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."

*Id.* at 679 (citation omitted).

### 2.    Patentability Under Section 101

Despite the broad language of Section 101, it is well established that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bk. Int'l*, 573 U.S. 208, 216 (2014).  The Federal Circuit "employ[s] the two-step analysis articulated in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), and further delineated in *Alice*" to determine patent eligibility under Section 101.  *ChargePoint*, 920 F.3d at 765.  Federal Circuit law is clear that a patent may be directed to an abstract idea under this framework even where the claim is written as an apparatus claim, as opposed to a method claim.  *See, e.g.*, *id.* at 770 ("as the Supreme Court indicated in *Alice*, whether a device is 'a tangible system (in § 101 terms, a "machine")' is not dispositive.  Resolving the § 101 inquiry based on such an argument 'would make the determination of patent eligibility "depend simply on the draftsman's art."'") (quoting *Alice*, 573 U.S. at 224) (internal citation omitted).

*First*, the Court determines "whether the claims at issue are directed to" one of the patent-ineligible subject matters: laws of nature, natural phenomena, and abstract ideas.  *Id.* at 765.  This initial step of the analysis—*Alice* Step One—considers the "focus" of the challenged claims and "their character as a whole." *Elec. Power Grp.*, 830 F.3d at 1353.  *Alice* Step One includes consideration of both the claim language and the patent's specification—both "what it states and what it

10

does not[.]" *ChargePoint*, 920 F.3d at 768.  The specification, however, "cannot be used to import details . . . if those details are not claimed." *Id.* at 769.  Courts may also consider "the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system.'" *Id.* at 768-69 (quoting *Intellectual Ventures I LLC v. Cap. One Bnk. (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (omission in original)).

**Second**, if the challenged claim *is* "directed to" ineligible subject matter, courts must look for an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 765 (internal quotation marks and citation omitted).  This analysis—*Alice* Step Two— requires consideration of the specific claim elements, reviewed "both individually and as an ordered combination." *Elec. Power Grp.*, 830 F.3d at 1353.  Claim language, however, can only do so much: "adding one abstract idea to another abstract idea does not render the claim non-abstract." *ChargePoint*, 920 F.3d at 771 (internal citation and quotation marks omitted).  In other words, the claim language must amount to "more than a drafting effort designed to monopolize the abstract idea." *Id.* at 773 (quoting *Alice*, 573 U.S. at 221) (internal citation and quotation marks omitted).  Likewise, the additional claim elements must "involve more than performance of well-understood, routine, conventional activities

11

previously known to the industry." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

**B.**   **The Harper Patents are directed to the abstract idea of filling information gaps with stored information.**

**1.**   **The asserted claims in the Harper Patents are directed to nonpatentable subject matter.**

The Federal Circuit has made clear that "[i]nformation as such is an intangible." *Elec. Power Grp.*, 830 F.3d at 1353.  Thus, a patent that is "directed to" the collection of even a specific subset of information is "within the realm of abstract ideas." *Id.*  Likewise, "analyzing information by steps people go through in their minds" is ineligible subject matter. *Id.* at 1354.  Finally, "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.*  A combination of these abstract notions, absent the addition of some further inventive concept, remains unpatentable under Section 101. *See id.*

The Harper Patents simply claim the idea of collecting information, storing it, and then using that stored information to fill an information gap after an adverse condition has been resolved.  The concept of backfilling an information gap with previously collected data is an abstract idea that "amounts to nothing more than

12

gathering, storing, and transmitting information[.]"  *Elec. Commc'n Techs.*, 958 F.3d at 1182.

The claims asserted in the First and Seventh Causes of Action are analogous to claims the Federal Circuit has held unpatentable in previous cases.  For example, it has invalidated a number of patents directed exclusively to the abstract idea of gathering information, including information regarding the status of the system, and transmitting it wirelessly to a remote device.  Recently, in *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341, 1346-47 (Fed. Cir. 2019), the Federal Circuit found that a patent claiming a wireless garage door opening system was directed to "wirelessly communicating status information about a system[,]" a concept the court observed was "similar to abstract ideas we have found in our previous cases."  *Id.* (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)).  The representative claim in *Chamberlain* included a "wireless status condition data transmitter," which communicated a "plurality of potential status conditions[,]" *i.e.*, whether the garage door was open or closed, to a controller unit.  *Chamberlain*, 935 F.3d . at 1345.

Likewise, in *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), the Federal Circuit invalidated claims "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory."  The

*Content Extraction* court emphasized that "the concept of data collection, recognition, and storage is undisputedly well-known.  Indeed, humans have always performed these functions."  *Id.*  And in *Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), the Federal Circuit characterized the challenged claims as "directed to the abstract idea of (1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information."  *Id.* at 1337.  The Federal Circuit explained that the challenged claims described a method of routing information using "result-based functional language" but that the patent did not "sufficiently describe how to achieve these results in a non-abstract way."  *Id.*

As in these prior cases, the Harper Patents are directed to an abstract idea built on the foundational concept of collecting and transmitting information; specifically, of filling information gaps with stored information.  The fact that the data involved are limited to either analyte levels or glucose levels, depending on the patent, does not transform the claims into patentable subject matter.  *See Elec. Power*, 830 F.3d at 1353.

Moreover, the Harper Patents simply describe a common process of information sharing that humans engage in every day, "a telltale sign of abstraction."  *PersonalWeb Techs. LLC v. Google LLC*, —F.4th—, 2021 WL

14

3556889, at *4 (Fed. Cir. Aug. 12, 2021).  Imagine a lawyer's assistant who answers the phone before passing calls through to the lawyer.  When the lawyer is away from the office or otherwise unable to take the call (in a meeting with a client, for example), the assistant takes a message.  Then, when the lawyer is available to receive the information, the assistant communicates the message to the lawyer.  This process of collecting information, identifying a failure mode condition, and then transmitting the information after the failure mode condition is resolved, is commonplace human behavior.  As the Federal Circuit has explained, the concept of including stored information in a later communication is an abstract idea that is simply not patentable under Section 101.  *See Elec. Commc'n Techs.*, 958 F.3d at 1182.

And unlike claims involving computer processes that the Federal Circuit has found patentable under Section 101, *see, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016), the Harper Patents are not directed to a concrete improvement of the capabilities of the various component elements used to carry out the claims, like the processor or memory used to store and analyze the glucose data.  Instead, they use conventional components to perform the claimed abstract idea.  In other words, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper."  *Intellectual Ventures I LLC v.*

*Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).  That the claimed abstract idea occurs "in a computer environment . . . doesn't transfigure an idea out of the realm of abstraction." *PersonalWeb Techs.*, 2021 WL 3556889, at *4.  Here, "the focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017).

The Federal Circuit has recently explained that, at *Alice* Step One, if "the bulk of the claim provides an abstract idea, and the remaining limitations provide only necessary antecedent and subsequent components, the claim's character as a whole is directed to that abstract idea." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020).  Here, the Harper Patents contain only generic references to technical elements that do not transform the claimed abstract idea into patentable subject matter.  Claim 14 of the Harper '842 Patent, for example, includes "one or more processors" as an element, without claiming any specific type of processor or improvement in processing hardware or techniques.  *See* A 23, at 16:31.  Likewise, Claim 1 of the Harper '653 Patent claims a "processor coupled to a memory," but nothing in the claims or the specification illuminates these generic terms.  *See id.*, A 47, at 15:37-38.  These elements are "antecedent and subsequent components" that do not change the claims' essential abstract character.

16

### 2.   The asserted claims are representative of all claims in the Harper Patents.

All the claims of both Harper Patents are "directed to" a non-patentable abstract idea and the Court should, accordingly, invalidate both patents in their entirety.  Both patents claim—at base—the abstract idea of filling information gaps with stored data.  All of the remaining claims are, as with Claim 14 of the Harper '842 Patent and Claim 1 of the Harper '653 Patent, "substantially similar and linked to the same abstract idea[,]" *Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks omitted) , so "analyzing representative claims is proper" here.  *Cleveland Clinic Found. v. True Health Diag. LLC*, 859 F.3d 1352, 1360 (Fed. Circ. 2017).

The Harper '842 Patent does not have any additional claim limitations that meaningfully transform or limit the abstract concept expressed in Claim 14.  There are two additional independent claims.  Claim 1 is a method claim, with elements that describe the process performed by the system taught in Claim 14.  Claim 23 is also a method claim that again describes a process for backfilling data resulting from a failure mode condition that is essentially the same as Claim 1.  Claims 2 through 4 provide further refinement to the notion of a "failure mode condition."  Claims 5 through 7 contain limitations directed to the manner of the display of stored data after the failure mode condition.  Dependent Claims 8 through 10 have elements that limit where various aspects of the method are performed (transmitter,

17

receiver, etc.).  Claims 11 and 12 concern the manner in which backfilled data are displayed.  Claim 15 limits the kind of "failure mode conditions" described in Claim 14.  Claim 16 concerns the time when the backfilled data is outputted.

The additional dependent claims in the Harper '842 Patent either contain elements that specify certain aspects of the system claimed in Claim 14, or refinements on the methods claimed in Claims 1 and 23.  None of the claims add any elements that render Claim 14 non-representative, because all of them are—at their core—directed to the idea of filling information gaps with stored data.

Like Claim 14 of the Harper '842 Patent, Claim 1 is representative of all the remaining dependent claims in the Harper '653 Patent.  The dependent claims do not contain any additional limitations that meaningfully transform them into more concrete expressions of non-abstract ideas.  For example, Claims 2 and 3 merely elaborate on the notion of a "data gap," which is itself abstract.  Claims 4 through 10 provide various examples of a "failure mode condition," but all of them are directed towards the fundamental notion of an adverse configuration resulting in missing data.  Claims 10 through 20 claim the same system as that claimed in the first ten claims, but provide additional limitations with respect to the form of the outputted data or the device on which the data is viewed.  All the claims in the Harper '653 Patent are therefore directed to the same abstract idea.

1740754

### 3.   The Harper Patents have no inventive concept that could render the claims patentable under Section 101.

Because the asserted claims in the Harper Patents are directed to an abstract idea, the inquiry moves to *Alice* Step Two.  Here, the Harper Patents lack an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *ChargePoint*, 920 F.3d at 765 (internal citation and quotation marks omitted).

Viewing the asserted claim elements "both individually and as an ordered combination," the Harper Patents do not describe or teach a "patent-eligible application of the abstract idea."  *Two-Way Media*, 874 F.3d at 1338.  The additional claim elements must "involve more than performance of well-understood, routine, conventional activities previously known to the industry[,]" *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (internal quotation marks omitted), but here the additional claim elements amount to "use a memory" or "use a processor" or "use Bluetooth."  These are commonly understood, routine practices that are well known to those of skill in the art.  Indeed, the specification explains that conventional CGM systems "generally include a small, lightweight battery powered and microprocessor controlled system" that includes a "transmitter unit" and a "receiver/monitor unit."  A 16, at 1:23-28; 1:40-43.

19

In other words, "[n]othing in the claims . . . requires anything other than conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1339. "Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 1338. Similarly, the asserted claims include elements that describe "stor[ing] sensor data" in a memory, then using a "processor" to "process" the data, without explaining how those functions should be carried out. *See, e.g.*, A 23, at 16:39-49. Likewise, the claims describe "transmitting" data without any further elaboration—any method of wireless transmission will do.

## CONCLUSION

The Harper Patents are an attempt to gain the exclusive monopoly of a patent over a basic, fundamental concept that people use every day. The patent laws do not permit such an effort; claims that are directed to abstract ideas are not patentable under Section 101. Because both Harper Patents do no more than claim an abstract idea, the Court should invalidate them and dismiss the First and Seventh Causes of Action.

1740754

                                        Respectfully submitted,

                                        */s/ David M. Fry*
OF COUNSEL:                             John W. Shaw (No. 3362)
Robert A. Van Nest                      David M. Fry (No. 5486)
Christa Anderson                        Nathan R. Hoeschen (No. 6232)
Eugene M. Paige                         SHAW KELLER LLP
Sophie Hood                             I.M. Pei Building
Elizabeth A. Egan                       1105 North Market Street, 12th Floor
Andrew S. Bruns                         Wilmington, DE 19801
Sean M. Arenson                         (302) 298-0700
Jee Young (Grace) Kim                   jshaw@shawkeller.com
Puja Parikh                             dfry@shawkeller.com
Nicholas R. Green                       nhoeschen@shawkeller.com
Yena Lee                                *Attorneys for Defendant*
Bilal Malik
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA  94111-1809
(415) 676-2276

Dated: September 13, 2021

21

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Court's November 6, 2019 Standing Order, I hereby confirm that this brief complies with the type and number limitations set forth in the Standing Order. I certify that this document contains 4,897 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, table of contents and authorities, or the counsel blocks.

*/s/ David M. Fry*
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

1740754