IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-977 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE OF SUBPOENA**

Pursuant to Fed. R. Civ. P. 45, Plaintiffs Abbott Diabetes Care Inc. and Abbott

Diabetes Care Limited will serve the subpoena attached as Exhibit 1 on Stress Engineering

Services, Inc.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Edward A. Mas II
Leland G. Hansen
James M. Hafertepe
Sharon A. Hwang
Michael J. Carrozza
Manuela Cabal
MCANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, IL  60661
(312) 887-8000

Ellisen Shelton Turner
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
(310) 552-4200

*Attorneys for Plaintiffs*

Amanda J. Hollis
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
(312) 862-2000

Benjamin A. Lasky
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

May 27, 2022

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
District of Delaware

| | |
|---|---|
| Abbott Diabetes Care, Inc., et al., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 21-cv-977-KAJ |
| Dexcom, Inc. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Stress Engineering Services, Inc., 13800 Westfair East, Houston, TX 77041-1101
c/o Angela Dunlap, Corporate Counsel, Stress Eng'g Services, Inc., 13800 Westfair East, Houston, TX 77041-1101

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A. Additionally, the Discovery Order is attached as Attachment B and the Protective Order is attached as Attachment C. Under an agreement with counsel, objections to be provided by June 24, 2022.

| Place: SB Company<br>1980 Post Oak Blvd., Suite 100<br>Houston, TX 77056 | Date and Time:<br><br>07/08/2022 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/27/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Manuela Cabal |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Abbott Diabetes Care, Inc., et al. _____, who issues or requests this subpoena, are:

Manuela Cabal, McAndrews, 500 W. Madison St., Chicago, IL 60661; mcabal@mcandrews-ip.com; 312-775-8036

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 21-cv-977-KAJ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**DEFINITIONS**

The terms listed below have the following meanings:

1.   "DexCom" or "Defendant" means DexCom, Inc. and all present and former parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns thereof, and all directors, officers, employees, agents, consultants, representatives, or persons acting or purporting to act on behalf of, or under the control of, any of the foregoing entities; and all other Persons, acting or purporting to act under DexCom's control or on DexCom's behalf, and/or under the control of or on behalf of DexCom's present and former parent companies, subsidiaries and affiliates, predecessors and successors in interest, present and former directors, officers, employees, attorneys, agents, and any other representatives.

2.    "You", "Your", or "Respondent" means the entity that this subpoena is directed to, and all present and former parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns thereof, and all directors, officers, employees, agents, consultants, representatives, or persons acting or purporting to act on behalf of, or under the control of, any of the foregoing entities; and all other Persons, acting or purporting to act under Respondent's control or on Respondent's behalf, and/or under the control of or on behalf of Respondent's present and former parent companies, subsidiaries and affiliates, predecessors and successors in interest, present and former directors, officers, employees, attorneys, agents, and any other representatives.

3.   "Abbott" or "Plaintiffs" means Abbott Diabetes Care Inc. and Abbott Diabetes Care Ltd.

1

Schedule A - Stress Engineering Services, Inc.

4.      "Person" or "persons" means, unless otherwise specified, any natural person, firm, entity, company, corporation, partnership, trust, proprietorship, association, joint venture, government or government agency or other form of business organization or arrangement of every nature and type, and any director, officer, employee or agent working or acting on behalf thereof, and means both the singular and plural.

5.      The "842 Patent" refers to United States Patent No. 10,820,842.

6.      The "954 Patent" refers to United States Patent No. 10,827,954.

7.      The "338 Patent" refers to United States Patent No. 10,874,338.

8.      The "341 Patent" refers to United States Patent No. 10,881,341.

9.      The "647 Patent" refers to United States Patent No. 10,945,647.

10.      The "649 Patent" refers to United States Patent No. 10,945,649.

11.      The "653 Patent" refers to United States Patent No. 10,952,653.

12.      The "654 Patent" refers to United States Patent No. 10,959,654.

13.      The "644 Patent" refers to United States Patent No. 10,966,644.

14.      The "443 Patent" refers to United States Patent No. 10,973,443.

15.      The "216 Patent" refers to United States Patent No. 11,000,216.

16.      The "440 Patent" refers to United States Patent No. 11,013,440.

Schedule A - Stress Engineering Services, Inc.

17.    "Patents-in-Suit" refers to the 842, 954, 338, 341, 647, 649, 653, 654, 644, 443, 216, and 440 Patents, collectively.

18.    "Related Patent Application" means any provisional, utility, continuation, continuation-in-part, divisional, reexamination, or reissue application, whether issued, pending, expired, or abandoned, whether domestic or foreign, that claims priority to any application leading to any of the Patents-in-Suit or to which the application for any of the Patents-in-Suit claims priority.

19.    "Related Patent" means any patent that has issued from a Related Patent Application.

20.    "STS" means DexCom's STS glucose monitoring system, all components thereof (including, as applicable, any applicator, sensor, transmitter holder, transmitter, on-body unit, adhesives, receiver/reader, iOS app, and Android app) and all features thereof (including, as applicable, any alarms, alerts, notifications, calibration, backfilling, and drift correction), and any versions or prototypes thereof.

21.    "Seven" means DexCom's Seven glucose monitoring system, all components thereof (including, as applicable, any applicator, sensor, transmitter holder, transmitter, on-body unit, adhesives, receiver/reader, iOS app, and Android app) and all features thereof (including, as applicable, any alarms, alerts, notifications, calibration, backfilling, and drift correction), and any versions or prototypes thereof.

22.    "Seven Plus" means DexCom's Seven Plus glucose monitoring system, all components thereof (including, as applicable, any applicator, sensor, transmitter holder, transmitter, on-body unit, adhesives, receiver/reader, iOS app, and Android app) and all features thereof

3

(including, as applicable, any alarms, alerts, notifications, calibration, backfilling, and drift correction), and any versions or prototypes thereof.

23.   "G4" means DexCom's G4 Platinum glucose monitoring system, all components thereof (including, as applicable, any applicator, sensor, transmitter holder, transmitter, on-body unit, adhesives, receiver/reader, iOS app, and Android app) and all features thereof (including, as applicable, any alarms, alerts, notifications, calibration, backfilling, and drift correction), and any versions or prototypes thereof.

24.   "G5" means DexCom's G5 glucose monitoring system, all components thereof (including, as applicable, any applicator, sensor, transmitter holder, transmitter, on-body unit, adhesives, receiver/reader, iOS app, and Android app) and all features thereof (including, as applicable, any alarms, alerts, notifications, calibration, backfilling, and drift correction), and any versions or prototypes thereof.

25.   "G6" means DexCom G6 Continuous Glucose Monitoring System and prototypes and variations thereof, including DexCom Pro Q Continuous Glucose Monitoring System, DexCom G6 Pro Continuous Glucose Monitoring System, DexCom G6 Glucose Program Continuous Glucose Monitoring System, and the DexCom ONE Continuous Glucose Monitoring System and including all components, features, and variations thereof (including any receivers and/or smart devices with compatible software/apps).

26.   "G7" means DexCom's G7 glucose monitoring system, all components thereof (including, as applicable, any applicator, sensor, transmitter holder, transmitter, on-body unit, adhesives, receiver/reader, iOS app, and Android app) and all features thereof (including,

as applicable, any alarms, alerts, notifications, calibration, backfilling, and drift correction), and any versions or prototypes thereof.

27.   "Clarity" means DexCom's Clarity system, including any mobile applications (e.g., Clarity app for iOS, Clarity app for Android), computer applications (e.g., DexCom Clarity Uploader program for Windows, DexCom Clarity Uploader program for macOS), websites, web browser-accessible interfaces, features of any other DexCom products or services used in conjunction with the Clarity system (e.g., automatic uploads from G6 apps), and any versions or prototypes thereof, and further including any servers, databases, or other computer systems used in conjunction with DexCom's Clarity system.

28.   "Share/Follow" means DexCom's Share system, including any mobile applications (e.g., Follow app for iOS, Follow app for Android) and features of any other DexCom products or services used in conjunction with the Share system (e.g., Share feature of apps), and any versions or prototypes thereof, and further including any servers, databases, and other computer systems used in conjunction with DexCom's Share system.

29.   "DexCom CGM Product" means any continuous glucose monitoring system or component thereof manufactured, developed, marketed, sold, offered for sale, or imported by or for DexCom, including the STS, Seven, Seven Plus, G4, G5, G6, G7, DexCom ONE, G6 Pro, G6 Pro Q, Clarity, Share/Follow, and any prototypes and variations of those products.

30.   "FreeStyle Libre" means the FreeStyle Libre 10-Day, FreeStyle Libre 14-Day, FreeStyle Libre Pro, FreeStyle Libre 2, and FreeStyle Libre 3 glucose monitoring systems, as well as any other Freestyle Libre branded product, and any component (hardware or software) or version of the aforementioned products.

31.   "Navigator" means the FreeStyle Navigator glucose monitoring system, including any component (hardware or software) or version thereof.

32.   "LibreView" means the LibreView system, including any websites or web browser-accessible interfaces, any features used in conjunction with the LibreView system that are part of other products (e.g., LibreLink apps, Libre 2 apps), and any versions thereof.

33.   "LibreLinkUp" means the LibreLinkUp system, including any mobile applications (e.g., LibreLinkUp app for iOS, LibreLinkUp app for Android), any features used in conjunction with the LibreLinkUp system that are part of other products (e.g., LibreLink apps, Libre 2 apps), and any versions thereof.

34.   "CGM" means continuous glucose monitoring or monitor.

35.   The terms "CGM system," "CGM device," and "CGM product" (or the like), as used herein, mean a system, device, or product associated with CGM, including STS, Seven, Seven Plus, G4, G5, G6, G7, Navigator, and FreeStyle Libre, or any components or sub-assembly of such a device or for use with such a device, including applicators, transmitters, sensors, and receivers and components thereof.

36.   "Sensor Session" means the period of time a sensor is implanted in a user.

37.   "Document" or "documents" means documents and things as broadly defined in Rule 34 of the Federal Rules of Civil Procedure, and includes papers of all kinds and non-paper information storage means, including by way of example and without limitation, originals and copies, however made, of letters, memoranda, notes, computer generated data, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, legal

instruments, agreements, drawings, sketches, graphs, prints, hand-written notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, videotapes, pictures, photographs, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, electronic mail messages, or any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically. This definition is subject to any order regarding document discovery to be agreed upon by the parties and/or ordered by the Court.

38.    "Thing" or "things" means any tangible item other than a document.

39.    "Concerning," "referring," "relating to," "reflecting," or any derivation thereof means, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

40.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses or documents that otherwise might be construed to be outside of its scope.

41.    "All," "any," and "each," as used herein, shall be construed to mean "each and every."

42.    "Including" (and the like) means including, without limitation.

43.    "Agreement" means a contract, arrangement, subscription, or understanding, formal or informal, oral or written between two or more persons.

Schedule A - Stress Engineering Services, Inc.

44.   "Communications" means without limitation every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written or whether face-to-face, by telephone, mail, personal delivery or otherwise, including but not limited to letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interviews, consultations, agreements and other understandings.

45.   "Date" means the exact day, month, and year, if ascertainable; and if not ascertainable, the closest approximation that can be made by means of relationship to other events, locations, or matters.

46.   The use of the singular form of any word includes the plural and vice-versa and any verbs encompass all tenses.

## DOCUMENTS REQUESTED

1.   For each project relating to CGM, requested by or undertaken for DexCom, produce documents sufficient to identify: (a) the project by name(s), (b) the subject matter and scope of the project, (c) the purpose and goals of the project, (d) the results of the project, and (e) how the results were achieved.

2.   Produce all documents concerning Agreements involving You and DexCom, including Agreements relating to intellectual property.

3.   Produce all documents concerning any analyses or studies, requested by, provided by, provided to, or undertaken for DexCom, concerning any of Navigator, FreeStyle Libre,

LibreView, LibreLinkUp, Abbott, Patents-in-Suit, Related Patents, or Related Patent Applications, including documents concerning reverse engineering.

4.      Produce all documents concerning any information, requested by, provided by, or provided to DexCom, concerning any of Navigator, FreeStyle Libre, LibreView, LibreLinkUp, Abbott, Patents-in-Suit, Related Patents, or Related Patent Applications.

5.      Produce all documents concerning any information, requested by, provided by, or provided to DexCom, concerning any of the market, market shares, distribution channels, or market preferences for CGM products, including DexCom's CGM Products.

6.      Produce all documents concerning the design, development, operation, function, specifications, requirements, criteria, materials, dimensions, form factors, human factors, usability, or manufacture of any of DexCom's CGM Products, including prototypes and comments thereof.

7.      Produce all documents concerning Clarity or Share/Follow.

8.      Produce all documents concerning the performance of each DexCom CGM Product, including any efforts and attempts to improve the performance, including by comparison to other CGM products.

9.      Produce all documents concerning any design history file for any DexCom CGM Product.

10.     Produce all documents concerning information, requested by, provided by, or provided to DexCom, concerning Abbott's intellectual property in the field of continuous glucose

monitoring, including the Patents-in-Suit, Related Patents, and Related Patent Applications.

11.     Produce each prototype made for or by DexCom.

12.     Produce each CGM product, including Navigator and FreeStyle Libre, that was studied or analyzed for or by DexCom or used as a baseline, reference device, benchmark, model, or comparison for any aspect of the development of a DexCom CGM product.

13.     Produce all documents concerning each CGM product, including Navigator and FreeStyle Libre, that was studied or analyzed for or by DexCom or used as a baseline, reference device, benchmark, model, or comparison for any aspect of the development of a DexCom CGM product.

14.     Produce any video related to DexCom or DexCom's CGM Products, including unedited original video recordings.

# ATTACHMENT B

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Wednesday, February 9, 2022 12:55 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:21-cv-00977-KAJ Abbott Diabetes Care Inc. et al v. Dexcom, Inc. SO ORDERED |

**CAUTION: External Email From: ded_nefreply@ded.uscourts.gov**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered on 2/9/2022 at 1:54 PM EST and filed on 2/9/2022
**Case Name:**      Abbott Diabetes Care Inc. et al v. Dexcom, Inc.
**Case Number:**      1:21-cv-00977-KAJ
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**SO ORDERED, re [47] Stipulation filed by Abbott Diabetes Care Inc., Abbott Diabetes Care Limited Signed by Judge Kent A. Jordan on 2/9/2022. (apk)**

**1:21-cv-00977-KAJ Notice has been electronically mailed to:**

Jack B. Blumenfeld      Jbbefiling@mnat.com

John W. Shaw      jshaw@shawkeller.com, cal@shawkeller.com

Rodger Dallery Smith, II      rdsefiling@mnat.com, rsmith@mnat.com

Amanda J. Hollis      ahollis@kirkland.com, alvaro.parrado@kirkland.com

Edward A. Mas, II      emas@mcandrews-ip.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-977 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**STIPULATION AND [PROPOSED] ORDER REGARDING DOCUMENT DISCOVERY**

The following Order (the "Discovery Order") shall apply to all discovery of Electronically-Stored Information ("ESI") and hard-copy documents in this case from the date of this Order forward, unless the parties agree in advance and in writing or if the Order is modified by the Court. The purpose of this Order is to facilitate the exchange of ESI and hard-copy documents in an efficient manner and in accordance with the Federal Rules of Civil Procedure. By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no party waives any objections to producing any particular document or category of documents on any grounds whatsoever. All terms used herein shall be defined as they are in the Sedona Conference Glossary: E-Discovery & Digital Information Management (Fourth Edition).

1. **General Provisions.**

    a. **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36 and under the Local Rules Of Civil Practice And Procedure Of The United States District Court For The District Of Delaware (last amended August 1, 2016).

b. **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

c. **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

(i)      Absent a showing of good cause by the requesting party as to specific categories of data or specific procedures, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.

(ii)      Absent a showing of good cause by the requesting party as to specific categories of data identified in Schedule A, the categories of ESI identified in Schedule A attached hereto need not be preserved or produced.

(iii)      If good cause is agreed by the parties or ordered by the Court, failure to have modified the back-up and archiving procedure(s) at issue or to have preserved or produced from the Schedule A category/categories at issue before the date of such agreement or order shall not constitute violation of this Order or a basis for a spoliation allegation.

---

[1]      Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

d.    **Confidentiality.**  The parties' designations of confidentiality are governed by the Protective Order to be entered in this Action.  Nothing herein precludes the parties from seeking changes to the Protective Order in accordance with its terms.

e.    **Privilege Logs & Redaction.**

(i)    A party that withholds or redacts ESI or documents on the grounds of attorney-client privilege and/or work-product protection shall provide a privilege log in a native Excel format that contains the following for each document withheld or redacted:

(1)    A document control number (which can be a Bates number in the case of redacted documents);

(2)    A description of the subject matter of the document (which does not reveal privileged or protected information);

(3)    File type (.msg, .doc, .pdf, etc.);

(4)    Date;

(5)    Author (or sender in the case of email);

(6)    Recipient(s) (or "TO" recipients in the case of email);

(7)    CC recipient(s);

(8)    BCC recipient(s);

(9)    An indication of the privilege and/or protection being asserted (ACP, AWP, etc.).

(ii)    In the case of email, any email family where the entire family is withheld in full based on privilege grounds may be logged as a single entry, provided that the privilege description includes sufficient information to identify both the parent email and its attachments;

(iii)    The parties shall identify on their privilege logs where an author or recipient of a withheld document is an attorney (e.g., with an asterisk or similar).  Where counsel creating the privilege is not readily ascertainable from the author/recipient fields, the parties shall identify involved counsel in the privilege description column.

(iv) **Timing.**  The parties shall provide a privilege log within thirty (30) days after the deadline for substantial completion of document production.

(v) **Exceptions.**  Parties are not required to log documents withheld on the basis of privilege/protection in the following categories:

(1) Information generated after March 31, 2021.

(2) Communications between the parties and their respective outside counsel involved in litigation (including inter partes review, oppositions, etc.) between the parties (and affiliated companies), including Kirkland & Ellis LLP; McAndrews, Held & Malloy, Ltd.; Taylor Wessing; Tom Mitcheson QC; Daniel Alexander QC; James Abrahams QC; Boult Wade Tennant; Mathys & Squire; Kelly Hart & Hallman; and Morris, Nichols, Arsht & Tunnell LLP for Abbott, and including Shaw Keller LLP; Keker, Van Nest & Peters LLP; Quinn Emanuel Urquhart & Sullivan, LLP; Bird & Bird LLP; Klarquist Sparkman, LLP; Wolf, Greenfield & Sacks, P.C., and Parker, Bunt & Ainsworth, PC for Dexcom, Inc.

(3) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

(vi) The parties' Fed. R. Evid. 502(d) agreement is stated in the Protective Order.

2. **Custodian and Non-Custodian Data Source Disclosures.**  Within seven (7) days after the entry of this Order, each party shall disclose:

a. **Custodians.**  The ten (10) custodians most likely to have discoverable information in his/her possession, custody, or control, ordered from the most likely to the least likely.  The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.  The receiving party shall identify eight (8) of those ten (10) custodians whose email—along with the custodian's other relevant documents—will be produced according to the procedures and formatting requirements in paragraph 4 below.  For the remaining two (2) custodians, email does not need to be produced absent a showing of good cause.

4

b.      **Non-Custodial Data Sources.**[2]  A list of the non-custodial data sources that are most likely to contain non-duplicative, discoverable information for preservation and potential production, ordered from the most likely to the least likely.

c.      **Notice**.  The parties shall identify any issues relating to:

(i)      Any ESI (by type, date, custodian, electronic system or other criteria) other than those listed in Schedule A that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)      Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and that is subject to foreign laws.

(iii)      Notice shall be given under this provision without prejudice to the parties' right to supplement or amend such notice to reflect information that further investigation may uncover.

3.      **Initial Discovery in Patent Litigation.**   The schedule and requirements for patent disclosures are stated in the Scheduling Order (D.I. 35).  Absent a showing of good cause, subsequent discovery shall be limited to a term of six (6) years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

---

[2]      That is, a system or container that stores ESI, but that an individual custodian does not organize, manage, or maintain the ESI in the system or container (*e.g.*, an enterprise system or database).  For example, a network attached file share directory that is used by multiple users in a department or work group is a non-custodial data source.  A network attached file space that is normally accessed only by a single user, or a local disk drive associated with a user's local or portable computer, is a custodial data source.

4. **Specific e-Discovery Issues**.

    a.    **On-Site Inspection of Electronic Media**. Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

    b.    **Search Methodology**.

        (i)    The parties may apply TAR or other machine filtering strategies as a mechanism to identify responsive or potentially responsive documents, but are not required to do so.

        (ii)    If a TAR method is used[3] to determine responsiveness for document production, the producing party shall identify the sources and characteristics of the collection(s) to which TAR methods were applied, the specific TAR method used to filter the collection, and the metrics used to determine the endpoint of the TAR process.

        (iii)    If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose to the requesting party both the search terms and a description of the repositories to which they are being applied, including the size and characteristics of the repository.  Absent a showing of good cause, a requesting party may request no more than ten (10) additional terms to be used in connection with the electronic search, which shall be proposed within five (5) business days of the receipt of the producing party's disclosure of search terms.

        (iv)    The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not proportional to the needs of the case under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.

---

[3]    TAR refers to a process for prioritizing or coding a collection of ESI using a computerized system that harnesses human judgments of subject matter expert(s) on a smaller set of documents and then extrapolates those judgments to the remaining documents in the collection.

The parties agree that in the event applying the combination of search terms proposed by the producing party and the receiving party produces results of more than ten-thousand (10,000) electronically stored documents for a single individual custodian, emails and all attachments included, the receiving party must propose revised search terms or narrowed search parameters resulting in ten-thousand (10,000) or fewer results.

   (v) If the producing party elects to use TAR or search terms to locate potentially responsive ESI in the data of any of the eight (8) custodians identified in accordance with paragraph 2(a) or any given non-custodian data source, that shall not obligate the producing party to use TAR or search terms—including the requesting party's additional terms—on any other custodian or non-custodial data source.

   (vi) When a requesting party requests additional terms be used in connection with an electronic search under paragraph 4(b)(iii), focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed.

   (vii) A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") will count as a single search term.  For a disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system"), each word or phrase will count as a separate search term unless they are variants of the same word.

   (viii) The appearance of a search term in a particular email or document shall not be dispositive of whether that document is responsive or must be produced.

   (ix) Nothing in this Order shall alter the parties' obligations under Fed. R. Civ. P. 26 or otherwise to make reasonable, proportional, and good-faith efforts to locate responsive documents (including but not limited to ESI), and to produce responsive documents of which they are reasonably aware or become aware.

c.      **Production Format for ESI.**

(i)      **General Provisions.**  ESI and non-ESI shall be produced to the requesting party with TIFF images and named according to the Bates number of the corresponding TIFF image.  Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image.  All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI.  Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image.  These .TIFF images should be provided in a separate folder and the number documents corresponding to a set of TIFF files should be limited to one thousand (1,000) per folder.   The parties shall produce their information in the following format: black-and-white single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information, including the metadata set forth in Schedule B (subject to paragraphs 4(h–i) below).  A producing party that intends to rely upon a color version of the document in any filing, hearing, deposition, or at trial must produce the document in color as a single page TIFF image, JPEG, or native file (at the producing party's discretion).  In addition, the producing party shall also produce such color versions of documents in response to reasonable, good faith, and proportional requests for color versions of documents.

(ii)      **Document Text.**  All unredacted documents should be provided with complete document-level extracted text files.  Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents.  The extracted full text and/or OCR text for all deliverables should be in separate document-level, UTF-8 encoded TXT files provided in a separate folder.  The number of TXT files per folder should be limited to one thousand (1,000) files.

(iii)   **Parent-Child Relationships.**   For email collections, the parent-child relationships (the association between emails and attachments) should be preserved.   Email attachments should be consecutively produced with the parent email record.

(iv)   **Dynamic Fields.**   Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

(v)   **Time Zone.**   The parties contemplate collecting ESI from multiple time zones.   Accordingly, where applicable, time and date will be processed using Central Standard Time ("CST") date and time.

(vi)   **Non-Redacted Spreadsheet Files.**   Spreadsheet files—including without limitation Microsoft Excel files—that do not require redactions will be produced as native files showing comments and similar data.   A UNC file path must be included in the ESI load file. Additionally, a Bates-stamped *.tiff placeholder matching the Bates number of the native file must be included in the production and reflected in the image load file.   To the extent parties prefer native file redaction of spreadsheet files, the parties will meet and confer to discuss the form of production.

(vii)   **Database Records and Structured Data.**   To the extent that any party requests data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the opposing party will make reasonable efforts to determine whether such data can be produced and, if so, make a production in existing report formats, or report formats that can be developed without undue burden.   Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file

(for example, *.csv and/or *.xls formats) for review by the requesting party, containing fields and reference points requested by producing party to the extent they exist, are responsive, and are reasonably accessible.  To the extent this production format is not feasible or causes the producing party undue burden, the parties agree to meet and confer to discuss a different form of production.

(viii)  **Embedded Files.**  Embedded files are produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

(ix)  **Bates Numbering.**  Files will be named according to the Bates number of the corresponding *.tiff image.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.  The Bates number will:

    (1)    be consistent across the production;

    (2)    contain no special characters; and

    (3)    be numerically sequential within a given document.

(x)  **Load File Formats.**  ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format.  The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

(xi)  **De-duplication.**  The parties shall make reasonable efforts to de-duplicate ESI.  ESI shall be globally de-duplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (*i.e.*, family or stand-

10

alone file).   The names of all custodians who were in possession of a document prior to deduplication will be populated in the ALL_CUSTODIANS metadata field.

     d.    **Production Format for Hard-Copy Documents.** Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth on Schedule B.   Hard copy documents that are not text-searchable shall be made searchable by Optical Character Recognition (OCR) prior to production at the cost of the producing party.   In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).   In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.   The parties will make their best efforts to unitize the documents correctly.

     e.    **Native Files.**  Files that are not easily converted to image format, such as Excel, Access and some PowerPoint files should be produced in native format. The parties will cooperate to identify non-proprietary viewers for proprietary application files.

     f.    **Production Specifications For Native Files.**  When producing a file in native format, a producing party shall:

     (i)    Provide a corresponding single-page TIFF placeholder stating "Document Produced in Native."  The placeholder shall be branded with a Bates number and confidentiality stamp, if applicable.

(ii)     Replace the file name of the produced version of the electronic file so that it is composed of the Bates number and confidentiality designation (if any) affixed to the TIFF placeholder corresponding to the electronic file (e.g., ABC000000001_AEO.xls).

(iii)    Provide the text and metadata, including the original file name of the underlying electronic file as required by this order.

g.     **Hidden Text, Track Changes, and Speaker Notes.**  With respect to Word, PDF, PowerPoint, and similar documents that contain hidden text, track changes, annotations, comments, speaker notes, or other similar data, a producing party shall have the option to produce the document (i) as TIFF images as set forth in this order using industry-standard software that will make visible hidden text, track changes, annotations, comments, or other similar data, or (ii) in native format as set forth in this order.

h.     **Metadata Fields.**  The parties are only obligated to provide the metadata listed on Schedule B (to the extent reasonably available).

i.     **Preservation of Metadata.**   A producing party shall use industry-standard technology and processes to ensure that metadata specified by this order is preserved during the collection, processing, and production of documents under this order.   However, the parties acknowledge that in some circumstances it may be more efficient to collect electronically stored information informally, such as by making a simple electronic copy of a file discovered during the course of a witness interview.   Accordingly, a producing party may collect and produce a reasonable number of documents utilizing informal collection methods even though such collection methods may alter certain aspects of those files' metadata as they exist at the time of collection (e.g., created date).   Similarly, the parties acknowledge that certain documents or data may exist in electronic form (e.g., data in a database or technical documents managed by document

management software) yet they are more reasonably created or collected for review and/or production in a manner that may result in the loss or alteration of metadata (if there was original metadata to begin with) or that the documents and/or data are more appropriately produced as hard copy documents. If the original metadata associated with such data or documents (if any) becomes of material importance during the course of the litigation, the parties shall meet and confer regarding how to address that issue and will promptly raise any unresolved issues with the Court.

j. **Encryption.** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

5. **Third Parties.**

a. A party that issues a third-party subpoena (the "Issuing Party") shall include a copy of this Discovery Order with the subpoena and request that third-parties produce data and documents in accordance with the specifications set forth herein.

b. The Issuing Party shall immediately provide a copy of the subpoena to the opposing side. A party who receives documents from a third party pursuant to a subpoena served in this matter will reproduce those documents to the opposing side within five (5) business days where practicable. When reproduction of documents within five (5) business days is not practicable, the party that received the documents will provide prompt notice to the opposing side and will work in good faith to resolve the issue on a case-by-case basis. The Issuing Party shall not be obligated to modify the format in which the files were produced from the third-party to the party receiving those documents, but may, if it chooses, reproduce the documents in the format agreed upon by the parties for their own productions. If the third-party production is not Bates-stamped, the

Issuing Party will apply unique prefixes for the third-party production and Bates numbers prior to producing them to the opposing party.

      c.      Nothing in this Discovery Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of third parties to object to a subpoena.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Plaintiffs Abbott Diabetes Care Inc.*
*and Abbott Diabetes Care Ltd.*

February 4, 2022

SHAW KELLER, LLP

*/s/ Nathan R. Hoeschen*
_____
John W. Shaw (No. 3362)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant Dexcom, Inc.*

      SO ORDERED this _____ day of February 2022.

_____
The Honorable Kent A. Jordan

## SCHEDULE A

1.  Deleted, slack, fragmented, or other data only accessible by forensics.

2.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5.  Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.  Voice messages.

7.  Text messages and other instant messages (including messages from third-party applications such as Messenger and WhatsApp) that are not ordinarily printed or maintained by a party in a server dedicated to instant messaging.

8.  Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.  Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.

**SCHEDULE B**

The metadata fields detailed in this Schedule should be produced for each document to the extent that such information is available at the time of collection and processing, except that if a field (such as subject line, document name, etc.) contains privileged information, that privileged information may be withheld.

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Prod Vol | Production volume number | X | X | X | X | ADC001 |
| Prod Beg | Start Bates (including prefix) - - No spaces or special characters | X | X | X | X | ADC0000001 |
| Prod End | End Bates (including prefix) - No spaces or special characters; Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails | X | X | X | X | ADC0000015 |
| Prod Beg Attach | First Bates number of attachment range | X | X | X | X | ADC0000001 |
| Prod End Attach | Last Bates number of attachment range | X | X | X | X | ADC0000015 |
| Author | Original composer of document or sender of email message | | X | X | X | John Smith |
| Confidentiality | Indicates if the document is designated confidential and if so, at what level. | X | X | X | X | No, or agreed codes based on levels in the Protective Order |

**SCHEDULE B**

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Redacted | Whether the document contains redactions | X | X | X | X | Yes/No |
| Custodian | Custodian(s) / source(s) - format: *Last, First* or *ABC Dept* | X | X | X | X | Last, First or non-custodial source (*e.g.*, Project XYZ Sharepoint Site) |
| All Custodians | The names of all custodians who were in possession of a document prior to deduplication | | X | X | X | Last, First; Last, First; Last, First |
| File Name | Native: Name of the original native file, including extension | | X | X | X | BoardMeeting Minutes.docx |
| Document Author | Email: (empty) Native: Author of the document/Author field value extracted from the metadata of a native file | | | X | | John Smith |
| File Path | Full original file path of the document | | X | X | X | Outlook.pst\Inbox |
| Email Subject | Email or calendar subject | | X | | X | |
| Email To | Main recipient(s) of the e-mail message | | X | | X | Coffman, Janice; LeeW[mailto: LeeW@MSN. com] |
| Page Count | Number of pages in imaged document | X | X | X | X | 1 |

**SCHEDULE B**

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Email BCC | Names of the individuals who were blind-copied on the Email (as formatted on the original) | | X | | X | ADC0000001 |
| Email From | Author of the Email or Calendar item (as formatted on the original) | | X | | X | |
| Email CC | Names of the individuals who were copied on the Email (as formatted on the original) | | X | | X | Frank Thompson [mailto: frank_Thompson@cdt.com ] |
| Date Sent | Email: Date the email was sent Native: (empty) | | X | | X | 10/12/2010 |
| Time Sent | Time Email was sent -- Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; timezone indicators cannot be included) / Time the e-mail message was sent. Must be separate from DateSent field | | X | | X | 8:47 AM |
| Date Created | Email: (empty) Native: Date the document was created | | | X | | 10/10/2010 |

## SCHEDULE B

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Date Modified | File modification date. Format: MM/DD/YYYY | | X | X | X | 10/15/2010 |
| Time Modified | File modification time. Format: HH:MM:SS AM/PM | | X | X | X | 04:43:44 AM |
| MD5HASH | MD5 Hash value of the document | | X | X | X | d131dd02c5e 6eec4693d9a0 698aff95c2fca b58712467ea b4004583eb8f b7f89 |
| Doc Link | File path location to the current native file location on the delivery medium; linked file must be named per the FIRSTBATES number | | | X | | D:\001\ ADC0000001 .msg |
| OCR Path | Path to extracted text of the native file | | | | | TEXT/001/A DC0000001.t xt |
| Attachment IDs | Child document list: BEGDOC# of each child (populated ONLY in parent records) | X | X | X | X | ADC0000002 ; ADC0000014 |
| File Extension | File extension of native file | | X | X | X | MSG |
| Conversation Index | Email Thread Identification | | X | | X | |

**SCHEDULE B**

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Attach Range | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document | X | X | X | X | ADC0000001 - ADC0000015 |
| Num Attach | Total number of records attached to the document. The value will always be 0 (zero) for the actual attachment records. | | | | | |
| Record Type | Displays the record type for each entry in the load file. | | | | | Hard Copy; Email; Attachment |
| File Size | Size of native file document/email in KB; File size in Bytes (integer value only - do not include unit of measure or decimal places - e.g., 568) | | X | X | X | 5,952 |
| Date Received | Date Email was received. | | X | | X | |
| Time Received | Time Email was received. Format: HH:MM:SS (use 24 hour times, e.g., 13:32 for 1:32 pm; timezone indicators cannot be included) | | X | | X | |

**SCHEDULE B**

| Field Name | Field Description | Hard Copy | Email | Other ESI | Calendar Items | Sample Data |
|---|---|---|---|---|---|---|
| Time Zone | The TimeZone from which the native file was processed | | X | X | X | CST |
| SHA1HASH | Document SHA1 hash value (used for deduplication or other processing) | | X | X | X | |
| Parent ID | Parent record's BEGDOC#, including prefix (populated ONLY in child records) | | | | | |
| Application | Application used to create native file | | X | X | X | Excel |
| Date Hard Copy | Date of hard copy documents, if coded. | X | | | | |
| Doc Date | This is a multipurpose date field.  Populate with: DATESAVED for E-Docs; DATESENT for Emails; DATEAPPTSTART for calendar appointments; DATE_HC for hard copy documents, if available. | X | X | X | X | |

# ATTACHMENT C

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Monday, April 4, 2022 11:23 AM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:21-cv-00977-KAJ Abbott Diabetes Care Inc. et al v. Dexcom, Inc. SO ORDERED |

**CAUTION: External Email From: ded_nefreply@ded.uscourts.gov**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered on 4/4/2022 at 12:22 PM EDT and filed on 4/4/2022

**Case Name:**      Abbott Diabetes Care Inc. et al v. Dexcom, Inc.
**Case Number:**    1:21-cv-00977-KAJ
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**SO ORDERED, re [64] Proposed Order filed by Abbott Diabetes Care Inc., Abbott Diabetes Care Limited. Signed by Judge Kent A. Jordan on 04/4/2022. (apk)**

**1:21-cv-00977-KAJ Notice has been electronically mailed to:**

Jack B. Blumenfeld     Jbbefiling@mnat.com

John W. Shaw     jshaw@shawkeller.com, cal@shawkeller.com

Rodger Dallery Smith, II     rdsefiling@mnat.com, rsmith@mnat.com

Amanda J. Hollis     ahollis@kirkland.com, alvaro.parrado@kirkland.com

Edward A. Mas, II     emas@mcandrews-ip.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-977 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### [PROPOSED] PROTECTIVE ORDER ON CONFIDENTIALITY

Pursuant to Federal Rule of Civil Procedure 26(c), the Court hereby orders the parties to abide by this Protective Order on Confidentiality (the "Protective Order").

This Protective Order shall govern disclosures, production and handling of documents, answers to interrogatories, responses to requests for admissions, depositions, testimony at hearings or trial, pleadings, exhibits, and other information or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), exchanged by the parties, produced by third parties, or filed with the Court in this Action (collectively, "Exchanged Information").

### SCOPE

1.       The protections conferred by this Order cover not only Exchanged Information, but also (1) any information copied or extracted from Exchanged Information; (2) all copies, excerpts, summaries, or compilations of Exchanged Information; and (3) any testimony, conversations, or presentations by parties or their counsel that might reveal Exchanged Information. However, the protections conferred by this Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a receiving

party or becomes part of the public domain after its disclosure to a receiving party as a result of publication not involving a violation of this Order, including information that has become part of the public record through trial or otherwise; and (b) any information known to the receiving party prior to the disclosure or obtained by the receiving party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the designating party.

2.     Any party or non-party may designate as confidential under this Protective Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the party or a non-party to whom the party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material").

3.     A party or non-party may designate any Protected Material as "CONFIDENTIAL."

4.     A party or non-party may designate Protected Material as "HIGHLY CONFIDENTIAL" if the party or non-party reasonably believes that the document, information, or material contains or discloses extremely sensitive information, the disclosure of which to another party or non-party would create a substantial risk of serious harm that could not be avoided by less restrictive means.  The following material, if non-public, shall be presumed to merit the HIGHLY CONFIDENTIAL designation: trade secrets; commercially sensitive competitive information;  financial data; sales data; sales or marketing forecasts or plans; business plans; sales or marketing strategy; customer identification data; product development information; product formula information; product design information; engineering documents; testing documents;

employee information; and other non-public information of similar competitive and business sensitivity.

5.      A party or non-party may designate Protected Material as "HIGHLY CONFIDENTIAL – PROSECUTION BAR" if the party or non-party reasonably believes that the document, information, or material (i) satisfies the criteria for designation as HIGHLY CONFIDENTIAL, under paragraph 4 above, and (ii) could be material to the prosecution of a patent application relating to analyte monitoring.  The following material, if non-public, shall be presumed to merit the HIGHLY CONFIDENTIAL – PROSECUTION BAR designation: technical trade secrets; product development information; product formula information; product design information; engineering documents; testing documents; and other non-public technical information of similar sensitivity.

6.      A party or non-party may designate Protected Material as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" if it contains or discloses information of the highest sensitivity that cannot be disclosed to any employees of another party or non-party without substantial risk of serious harm that could not be avoided by less restrictive means.  The following material, if non-public, shall be presumed to merit the HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY designation: pricing and cost information; research and development information relating to unreleased products (i.e., products that have not been marketed anywhere in the world); proprietary algorithms; commercial agreements, license agreements, settlement agreements, and related communications; pending but unpublished patent applications; information regarding functions, algorithms, or processes for calibrating analyte monitoring systems (including calibrating sensors and sensor data, and input parameters and measurements used in the same); technical information relating to calibrating

analyte monitoring systems (including calibrating sensors and sensor data); information regarding analyte monitoring system manufacturing processes and practices; and information regarding material specifications for product components.

7.      A party or non-party may designate Protected Material as "HIGHLY CONFIDENTIAL – SOURCE CODE" if the party or non-party reasonably believes that the document, information, or material contains Source Code Material that meets the criteria for the HIGHLY CONFIDENTIAL designation.  Source Code Material is defined as source code, object code, or other computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator, as well as any and all programmer notes, annotations, and other comments of any type related thereto and accompanying the code, including source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

8.      Any document, information, or material that is designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL, HIGHLY CONFIDENTIAL – PROSECUTION BAR, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE under this Protective Order may be referred to as "Designated Material" throughout this Protective Order.

## DISCLOSURE AND USE OF DESIGNATED MATERIAL

9.      Except as provided in paragraphs 11 and 54 below, Designated Material of the producing party may be used by receiving parties solely for purposes of this Action, and a receiving party may not disclose a producing party's Designated Material to counsel handling any foreign actions, agency proceedings, or other litigations between the parties.  For avoidance of

doubt, this provision does not restrict the use of Designated Material for any purpose if that Designated Material was rightfully obtained by means other than through discovery in this Action.

10.    Designated Material shall be initially produced only to outside counsel of record representing the parties in this Action (*i.e.*, counsel that has made an appearance in this Action).

11.    Outside counsel of record may disclose the respective categories of Designated Material to the following persons for use in connection with this Action under the conditions set forth in this Protective Order:

(a)    Material designated as CONFIDENTIAL:

(1)    Outside counsel of record in this Action for the parties and employees (including contract attorneys) of outside counsel of record assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(2)    In-house counsel for the parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action, and support staff (e.g., paralegals and secretaries but not experts or consultants), who are working under the supervision of such in-house counsel;

(3)    Experts, as defined in paragraph 18 and subject to the provisions of paragraphs 19-21;

(4)    Court reporters present in their official capacity at a hearing, deposition, or other proceeding in this Action;

(5) Vendors retained by counsel and reasonably necessary to assist counsel with the litigation of this Action, including graphics or design services, and photocopy, document imaging, database services, who have signed the Declaration (Attachment A), which does not need to be disclosed to the designating party unless the Court orders otherwise;

(6) Professional jury or trial consultants who have signed the Declaration (Attachment A), which does not need to be disclosed to the designating party unless the Court orders otherwise, and mock jurors who have agreed to hold confidential any information disclosed to them; and

(7) The Court and its personnel.

(b) Information designated as HIGHLY CONFIDENTIAL:

(1) The individuals specified in paragraphs 11(a)(1), 11(a)(3), 11(a)(4), 11(a)(5), and 11(a)(7);

(2) Designated In-House Counsel of each of the parties, as defined in paragraph 13 and subject to the provisions of paragraph 17, and support staff (e.g., paralegals and secretaries but not experts or consultants), who are working under the supervision of such Designated In-House Counsel; and

(3) The individuals specified in paragraph 11(a)(6), provided that adequate precautions are taken to ensure that disclosing this information to the individuals specified in paragraph 11(a)(6) does

not result in the information being disclosed to any other individuals not specified in paragraph 11(b)(1) or 11(b)(2).

(c)     Information designated as HIGHLY CONFIDENTIAL – PROSECUTION BAR:

(1)     The individuals specified in paragraphs 11(a)(1), 11(a)(3), 11(a)(4), 11(a)(5), and 11(a)(7);

(2)     Designated In-House Non-Prosecution Counsel of each of the parties, as defined in paragraph 14 and subject to the provisions of paragraph 17, and support staff  (e.g., paralegals and secretaries but not experts or consultants), who are working under the supervision of such Designated In-House Non-Prosecution Counsel; and

(3)     The individuals specified in paragraph 11(a)(6), provided that adequate precautions are taken to ensure that disclosing this information to the individuals specified in paragraph 11(a)(6) does not result in the information being disclosed to any other individuals not specified in paragraph 11(c)(1) or 11(c)(2).

(d)     Information designated as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY:

(1)     The individuals specified in paragraphs 11(a)(1), 11(a)(3), 11(a)(4), 11(a)(5), and 11(a)(7); and

(2)     The individuals specified in paragraph 11(a)(6), provided that adequate precautions are taken to ensure that disclosing this information to the individuals specified in paragraph 11(a)(6) does

7

not result in the information being disclosed to any other individuals not specified in paragraph 11(d)(1).

(e)     Information designated as HIGHLY CONFIDENTIAL – SOURCE CODE:

(1)     The individuals specified in paragraphs 11(a)(1), 11(a)(3), 11(a)(4), 11(a)(5), and 11(a)(7), subject to the limitations in paragraphs 28-29; and

(2)     The individuals specified in paragraph 11(a)(6), subject to the limitations in paragraphs 28-29 and provided that adequate precautions are taken to ensure that disclosing this information to the individuals specified in paragraph 11(a)(6) does not result in the information being disclosed to any other individuals not specified in paragraph 11(e)(1).

12.     Persons receiving Designated Material are prohibited from disclosing it, or any information derived therefrom, to any person except in conformance with this Protective Order.

## DESIGNATED IN-HOUSE COUNSEL

13.     Designated In-House Counsel shall be defined as an attorney employed by a party who (i) either has responsibility for making decisions dealing directly with the litigation of this Action, or who is assisting outside counsel in the litigation of this Action and (ii) pursuant to paragraphs 15 or 17 has been consented to by the other party or approved by the Court.

14.     Designated In-House Non-Prosecution Counsel shall be defined as a Designated In-House Counsel as defined in paragraph 13 who is not actively involved in or otherwise responsible for prosecuting patent applications.

15.     The individuals in this paragraph shall be the initial Designated In-House Counsel for the parties:

    (a)     For Plaintiffs:

        (1)     Hubert Allen, Executive Vice President, General Counsel and Secretary, Abbott Laboratories;

        (2)     David Mendelson, Divisional Vice President and Associate General Counsel, Litigation, Abbott Laboratories;

        (3)     Rachel Bach, Senior Counsel, Intellectual Property Litigation, Abbott Laboratories;

        (4)     Gary Schneiderman, fmr. Division Counsel, Patent Litigation, Abbott Laboratories;

        (5)     Paul Yasger, Divisional Vice President, Associate General Counsel, and Chief Patent Counsel, Abbott Laboratories; and

        (6)     Susan Tall, Division Counsel, IP Strategy, Abbott Laboratories.

    (b)     For Defendants:

        (1)     Kellin Chatfield, Vice President, General Counsel, EMEA, APAC, LATAM, Employment and Litigation;

        (2)     Nikki Wyll, Interim Litigation Manager – Products and Intellectual Property;

        (3)     Michael Brown, Executive Vice President, Chief Legal Officer; and

        (4)     Kaare Larson, Vice President, Global Intellectual Property.

16.     The individuals in this paragraph shall be the initial Designated In-House Non-Prosecution Counsel for the parties:

9

(a)    For Plaintiffs:

    (1)    Hubert Allen, Executive Vice President, General Counsel and Secretary, Abbott Laboratories;

    (2)    David Mendelson, Divisional Vice President and Associate General Counsel, Litigation, Abbott Laboratories;

    (3)    Rachel Bach, Senior Counsel, Intellectual Property Litigation, Abbott Laboratories; and

    (4)    Gary Schneiderman, fmr. Division Counsel, Patent Litigation, Abbott Laboratories.

(b)    For Defendants:

    (1)    Kellin Chatfield, Vice President, General Counsel, EMEA, APAC, LATAM, Employment and Litigation;

    (2)    Nikki Wyll, Interim Litigation Manager – Products and Intellectual Property; and

    (3)    Michael Brown, Executive Vice President, Chief Legal Officer.

17.    The parties may in good faith request the other party's consent to designate one or more additional and/or substitute Designated In-House Counsel and/or Designated In-House Non-Prosecution Counsel according to the provisions of this Protective Order.  Prior to disclosure of HIGHLY CONFIDENTIAL or HIGHLY CONFIDENTIAL – PROSECUTION BAR information to such persons pursuant to paragraph 11, the party seeking disclosure shall provide written notice to the producing party identifying the names of additional designee(s) and certifying that the designated individual meets the definition of Designated In-House Counsel provided in paragraph 13 and/or the definition of Designated In-House Non-Prosecution Counsel

in paragraph 14, and if applicable, the name of the previous designee(s) being substituted.  If the producing party objects to the disclosure of HIGHLY CONFIDENTIAL or HIGHLY CONFIDENTIAL – PROSECUTION BAR information to such additional designees, the producing party shall object in writing within five (5) business days of receipt of the written notice and state the basis for its objection.  Within five (5) business days of the written objection, the parties shall meet and confer.  If the parties do not reach resolution, the party seeking disclosure shall follow the procedures set forth by the Court for raising discovery disputes.

## **EXPERTS**

18.  An Expert shall be defined as an outside consultant or expert, not presently employed by any party or an affiliate of any party for purposes other than this Action, retained for the purpose of this litigation.

19.  Before Designated Material is disclosed to an Expert, the party seeking to disclose Designated Material of another party or non-party to the Expert ("Retaining Party") first must provide to all attorneys of record for the other parties a written notice that: (1) attaches the Expert's signed Declaration (Attachment A hereto); (2) sets forth the full name of the proposed expert and the city and state of his or her primary residence; (3) attaches a copy of the proposed Expert's current resume; (4) identifies the proposed Expert's current employer(s); (5) identifies, to the extent permitted without violating any third-party confidentiality obligation, each person or entity from whom the proposed Expert has received compensation or funding for work or professional services, including in connection with litigation, at any time during the preceding five years in the areas of (a) analyte monitoring or (b) medical devices for the treatment or monitoring of diabetes; and (6) identifies (by name and number of the case, filing date, and location of court, if known) any litigation in connection with which the Expert has offered expert testimony,

including through a declaration, report, or testimony at a deposition or at trial during the preceding four years.[1]

20.     If, after providing the disclosures required by paragraph 19, an Expert accepts new employment or consulting work (including in connection with litigation but excluding sponsored research or research grants) in the areas of (a) analyte monitoring or (b) medical devices for the treatment or monitoring of diabetes ("New Engagement"), the Retaining Party shall promptly provide a written notice to the attorneys of record for the other parties to this Action identifying, to the extent permitted without violating any third-party confidentiality obligation, the individual or entity for whom the Expert has accepted the New Engagement.  The disclosure obligation in this paragraph shall terminate after the Expert certifies the return or destruction of all Designated Materials in their possession.

21.     Unless counsel for the party that produced the Designated Material notifies the proposing attorney in writing of an objection to the proposed Expert within five (5) business days of receipt of notification, such proposed Expert shall be deemed qualified to receive Designated Material.  In the event of an objection, the parties shall first informally try to resolve the objection in good faith within five (5) business days.  If the objection cannot be resolved, the parties may request appropriate relief from the Court through the Court's procedures for resolving disputes regarding discovery matters.  The parties specifically reserve the right to object to the

---

[1]     If the Expert believes any of the information contemplated by paragraph 19 or paragraph 20 is subject to a third-party confidentiality obligation, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements. The Retaining Party should notify the other party that information has been withheld and describe the nature of the withheld information, and the parties shall meet-and-confer regarding whether the Expert should be qualified under this Protective Order notwithstanding the withholding of information. Any disputes should be resolved in accordance with the provisions of paragraph 21.

disclosure of Designated Material to a proposed Expert should the proposed Expert be employed by the objecting party's competitor.  The burden of proving that the designated person should not be designated is on the objecting party.

## DESIGNATION OF PROTECTED MATERIAL

22.     Each party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

23.     To the extent it is practical to do so, the designating party must designate for protection only those parts of court filings, expert reports, or transcripts that qualify so that other portions for which protection is not warranted are not unjustifiably included within the ambit of this Order.  Notwithstanding the foregoing, to the extent that only a portion of a court filing, expert report, or transcript qualifies as CONFIDENTIAL, HIGHLY CONFIDENTIAL, HIGHLY CONFIDENTIAL – PROSECUTION BAR, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE, the parties agree to provide the other side with a copy upon request that identifies the portion of the filing, expert report, or transcript that contains CONFIDENTIAL, HIGHLY CONFIDENTIAL, HIGHLY CONFIDENTIAL – PROSECUTION BAR, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE information on the following schedule:

(a)     for court filings (except exhibits), by 6 PM ET on the next business day after the non-designating party makes the request;

(b)     for exhibits to court filings, within seven (7) calendar days after the non-designating party makes the request; and

(c)      for expert reports, within three (3) calendar days after the non-designating party makes the request.

24.      For production documents, the producing party may designate the entire document as CONFIDENTIAL, HIGHLY CONFIDENTIAL, HIGHLY CONFIDENTIAL – PROSECUTION BAR, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE.

25.      Parties and non-parties shall designate Protected Material as follows:

(a)      In the case of information in documentary form (*e.g.*, paper or electronic documents, but excluding transcripts of depositions, hearings, or other pretrial or trial proceedings), designation shall be made by placing prior to production the following legends on each page of such document (or each page that contains Protected Material if that can be practically determined): "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," "HIGHLY CONFIDENTIAL – PROSECUTION BAR," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."  For pleadings and discovery responses, such marking need only appear on the first page of the document.

(b)      To the extent that a party initially produces documents for inspection (*i.e.*, prior to making copies), no marking need be made by the producing party in advance of the inspection.  For purposes of the inspection, all documents shall be treated as containing HIGHLY CONFIDENTIAL – SOURCE CODE information.  After the receiving party selects specified documents for copying, the producing party shall appropriately mark the copies of the selected documents by placing prior to production the following legends on each page of such document that contains Protected Material: "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," "HIGHLY

CONFIDENTIAL – PROSECUTION BAR," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

(c)     In the case of transcripts of depositions, hearings, or other pretrial or trial proceedings, designation of the portion of the original and all copies of any transcript (including exhibits) which contain Protected Material shall be made by a statement to such effect on the record in the course of the proceeding or upon review of such transcript by counsel for the party whose Protected Material is discussed in the transcript.  Such designation shall be provided to opposing counsel within ten (10) days after counsel's receipt of the final transcript of the proceeding.  Unless otherwise agreed by the parties in writing or on the record at the proceeding, all transcripts shall be treated as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY from the date of the proceeding until the end of such ten (10) day period.  Transcripts containing Protected Material shall have an obvious legend with the appropriate designation on the title page and every subsequent page that the transcript contains Protected Material.  If only portions of a transcript are designated as Protected Material, then the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the designating party.  The designating party shall inform the court reporter of these requirements.

(d)     For material produced in some form other than documentary and for any other tangible items, designation shall be made by affixing in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," "HIGHLY CONFIDENTIAL – PROSECUTION BAR," "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."  If only a portion or portions of the

information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

(e)     Any Protected Material to be designated under this Protective Order which cannot practically be labeled with an appropriate legend shall be designated by a party by serving a written notification on the receiving party within a reasonable amount of time after disclosure.

26.     A failure to designate qualified information or items, whether inadvertently or otherwise, does not, standing alone, waive in whole or in part the designating party's right to secure protection under this Protective Order for such material.  Upon subsequent correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with any revised designations under the provisions of this Protective Order and promptly collect any copies of the material that have been provided to individuals other than those authorized under paragraph 11 of this Protective Order.  The designating party may also request the individuals to execute the Declaration (Attachment A).

27.     A party shall not be obligated to challenge the propriety of any confidentiality designation at the time made, and failure to do so shall not preclude a subsequent challenge.  In the event that any party to this Action disagrees at any stage of the proceedings with a confidentiality designation, such party shall provide to the producing party written notice of its disagreement with the designation.  The parties shall first try to informally resolve such dispute in good faith.  If the dispute cannot be resolved within five (5) business days of the written notice, the party challenging the designation may request appropriate relief from the Court, pursuant to Paragraph 3(h) of the Scheduling Order (D.I. 35).  The burden of proving that information has been properly designated is on the party making such designation.

Notwithstanding any dispute as to the confidentiality of information, such information shall nevertheless be treated in accordance with the designation that was proposed in accordance with the provisions of this Protective Order unless and until such designation is removed or amended by order of the Court or by written consent of the designating party.

## **ADDITIONAL PROTECTIONS FOR SOURCE CODE MATERIAL**

28.     Nothing in this Order should be interpreted as an admission by either party (or non-party) that Source Code Material is relevant to any claims or defenses in this Action or should otherwise be discoverable.  Furthermore, the parties agree that machine code shall not be discoverable in this Action.

29.     In the event that Source Code Material is produced in this litigation, it shall be produced as follows:

(a)     The designating party will produce the Source Code Material and all related files in native, computer-searchable format and, if applicable, broken out by version number and product name and/or product model number.  The production of a given version of Source Code Material and related files will preserve the metadata that is kept in the ordinary course of business for such files.  The designating party will produce Source Code Material on a secure, stand-alone, non-networked computer at the offices of the designating party's outside counsel or its vendors and will identify or supply software and/or programming tools that can be used to view the Source Code Material.

(b)     For Source Code Material or related files that are not available in native format (because, *e.g.*, it is a printout of source code with handwritten remarks), the document may be produced in accordance with the parties' agreements, or any orders by this Court, regarding other types of Designated Material.

(c)     To the extent that total compliance with paragraph 29(a) would be infeasible or burdensome for a designating party with respect to non-Source Code Material documents or information (*e.g.*, with respect to source code management or revision system files), the designating party and receiving party will discuss solutions whereby the documents or information are produced electronically and reasonably in compliance with paragraph 29(a).  This paragraph does not exempt production of Source Code Material from compliance with paragraph 29(a).

(d)     The receiving party shall make reasonable efforts to restrict its requests for access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 AM through 6:00 PM on business days (*i.e.*, weekdays that are not Federal holidays).  However, upon reasonable notice from the receiving party, the designating party shall make reasonable efforts to accommodate the receiving party's request for access to the stand-alone computer(s) outside of normal business hours.  The receiving party shall provide five (5) business days' notice of its intent to inspect for its initial inspection of the Source Code Material that has been produced by the designating party and identify in writing all qualified persons who will review the Source Code Material.  The receiving party shall provide notice at least 24 hours prior to any additional inspection and identify in writing all qualified persons who will review the Source Code Material.  The designating party shall be reasonable in accommodating requests for inspection on shorter notice.

(e)     Unless otherwise agreed by the parties or ordered by the Court, the receiving party may not bring any electronic devices into the room where stand-alone computer is provided, including, but not limited to, cameras, cellular phones, recordable media, or recording devices.  During review, the receiving party shall be entitled to take hand-written notes.  The

receiving party will not copy, remove, or otherwise transfer or transmit any Source Code Material from the stand-alone computer. The receiving party will not create any other written or electronic record of the Source Code Material. Should the need arise, the parties shall meet and confer regarding an exception to this rule in order to minimize the burden to the parties. If the parties are unable to reach agreement, a party seeking an exception may present the dispute to the Court according to the Court's discovery dispute procedures. Upon any such application to the Court, the burden shall be on the party seeking the exception to show good cause why the exception should be provided.

(f)     The receiving party may, at its own expense, request that the designating party install software on the stand-alone computer provided that such other software is necessary for the receiving party to perform its review of the Source Code Material consistent with all of the protections herein. The receiving party must provide the designating party with appropriate access to such software tools(s) at least five (5) days in advance of the date upon which the receiving party wishes to have the additional software available for use on the stand-alone computer. Timely requests for the installation of such search software will not be unreasonably denied. In no event shall tools be installed on the stand-alone computer that have the effect of altering, modifying, deleting, copying, or otherwise permitting the reproduction or removal of any Source Code Material.

(g)     A receiving party may request that the producing party make a standalone computer with its produced Source Code Material available for depositions to the extent reasonably necessary for the furtherance of claims and defenses in this case. The receiving party shall make such requests at least seven (7) calendar days before the date of the deposition, or in

19

the case of a deposition scheduled less than seven (7) calendar days in advance, no later than 24 hours after scheduling such deposition.

(h)    Outside counsel of record and their staff or an Expert for the receiving party, shall be entitled to take notes relating to produced Source Code Material but may not copy material designated HIGHLY CONFIDENTIAL – SOURCE CODE into the notes.  Any such notes shall be maintained at all times in a secure location under the direct control of an individual authorized to view material designated HIGHLY CONFIDENTIAL – SOURCE CODE, and shall be destroyed within ninety (90) days of the conclusion of this action by settlement or final judgment, including exhaustion of all appeals, as required under paragraph 51.

(i)    Except as provided in this Order, absent written permission from the producing party, the receiving party may not create electronic images, or any other images, or make electronic copies, of Source Code Material for use in any manner (including by way of example only, the receiving party may not scan the Source Code Material to a PDF or photograph the code).  The receiving party shall not include excerpts of material designated HIGHLY CONFIDENTIAL – SOURCE CODE (either graphical copies or copied text) in correspondence between the parties (references to production numbers shall be used instead).  Only if it is necessary, the receiving party may include excerpts of material designated HIGHLY CONFIDENTIAL – SOURCE CODE in a pleading, exhibit, expert report, discovery document, deposition transcript, or other Court document, provided that such documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, include the minimal amount of such material designated HIGHLY CONFIDENTIAL – SOURCE CODE that is reasonably necessary, and, if filed with the Court, filed under seal.

Wherever possible, the receiving party will make a reasonable and good-faith effort to limit this information to references to production numbers, file names, and line numbers.

(j)     Outside counsel of record and their staff or an Expert for the receiving party may print limited portions of Source Code Material as reasonably necessary to facilitate the receiving party's furtherance of its claims and defenses in this case. Each page printed from material designated HIGHLY CONFIDENTIAL – SOURCE CODE will bear the legend "HIGHLY CONFIDENTIAL – SOURCE CODE." Unless otherwise agreed to by the producing party, any printed portion of Source Code Material that consists of more than thirty (30) pages of a continuous block of Source Code Material shall be presumed to be excessive, and the burden shall be on the receiving party to demonstrate the need for such a printed copy. The receiving party may request printed Source Code Material of no more than five-hundred (500) pages total, subject to further agreement between the producing party and receiving party or order by the Court. The producing party shall Bates number, copy, and mark as "HIGHLY CONFIDENTIAL – SOURCE CODE" any pages printed by the receiving party. Within three (3) business days, the producing party shall either (i) ship one copy set of such pages to the receiving party or (ii) inform the receiving party that it objects that the printed portions are excessive and/or not done for a permitted purpose. The parties agree to promptly confer in good faith to resolve any such objection. If the parties are unable to resolve any objection, the receiving party shall within (5) business days of the producing party's objection, or within such other time as the parties may agree, present the dispute to the Court. Upon any such application to the Court, the burden shall be on the producing party to show good cause for why the requested printed Source Code Material should not be provided. However, as discussed above, in the case of disputes related to the printing of continuous blocks of Source Code Material longer than 30 pages, the receiving party shall within

(5) business days of the producing party's objection, or within such other time as the parties may agree, present the dispute to the Court, and the burden shall be on the receiving party to demonstrate the need for a printed copy that exceeds 30 pages of a continuous block of Source Code Material.  Although the receiving party may print entire file(s) that have been identified as of interest, the receiving party shall not print Source Code Material in order to review blocks of Source Code Material outside the stand-alone computer(s) in the first instance, *i.e.*, as an alternative to reviewing that Source Code Material electronically on the stand-alone computer(s).

(k)     Except on a temporary basis in connection with a particular deposition, hearing, or specific Court proceeding, the receiving party's outside counsel of record may make no more than five (5) copies of any printed page of the Source Code Material received from a producing party.  All such copies shall be designated and clearly marked "HIGHLY CONFIDENTIAL – SOURCE CODE."

(l)     Copies of printed Source Code Material that are marked as deposition exhibits, may be provided to the court reporter during the deposition, but shall not be retained by the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

(m)     Any printouts of Source Code Materials shall be maintained at all times in a secure location under the direct control of an individual authorized to view material designated as HIGHLY CONFIDENTIAL – SOURCE CODE, and shall be destroyed within ninety (90) days of the conclusion of this Action by settlement or final judgment, including exhaustion of all appeals.

(n)     The parties shall cooperate to take such steps as are reasonably necessary to protect information which contains or discloses the substance of any portion of Source

Code Materials from disclosure to the public, including (subject to this Court's rules) in the course of the trial of this Action, during any hearing in this Action, and in any briefing or other filing in this Action.

## PROSECUTION BAR

30.     For purposes of this paragraph, Prosecution Bar Information is information that is designated as HIGHLY CONFIDENTIAL – PROSECUTION BAR, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, or HIGHLY CONFIDENTIAL – SOURCE CODE under this Protective Order.

31.     Absent written consent from the producing party or an order by the Court, every Designated In-House Counsel, Designated In-House Non-Prosecution Counsel, Expert, and outside counsel of record, and every other person who receives and reviews or otherwise learns, in whole or in part, Prosecution Bar Information, is precluded from performing or providing (verbally or in tangible form, in whole or in part) such information to any person involved in performing the following tasks: drafting, prosecuting, or supervising or providing advice regarding the drafting or prosecution, of any patent applications with the United States Patent and Trademark Office ("USPTO") or any similar proceedings in any other country, involving any patent application having claims or disclosures directed to methods, apparatuses, or systems for analyte (including, but not limited to, glucose) monitoring, including, but not limited to, sensors, insertion technology, electronics, calibration, manufacturing, or related software. This preclusion is limited to proceedings involving patents, patent applications, and utility models having an effective filing date before this Action, during this Action, or within two (2) years after the final termination of this Action.  For purposes of clarity, (1) "prosecution" does not include reexamination, reissue, interference proceedings, or equivalent proceedings (*e.g.*, post-grant review, *inter partes* review,

oppositions), nullity proceedings, limitation proceedings, or any similar proceedings in any other country, except for claim amendments in such proceedings; and (2) "supervising" refers to directing others how to draft, prosecute, or provide advice regarding the drafting or prosecution, of any patents and applications in the scope of the Prosecution Bar; merely having authority to perform the prohibited tasks does not amount to "supervising" or being "involved in" such tasks for purposes of this Prosecution Bar. This Prosecution Bar shall begin when Prosecution Bar Information is first received and reviewed by the affected individual. This Prosecution Bar shall end two (2) years after final termination of this Action or two (2) years after the affected individual no longer has access to Prosecution Bar Information, whichever is earlier.

## INADVERTENT DISCLOSURES

32.     Inadvertent disclosures by the producing party of Protected Material— regardless of whether the material was designated as confidential under this Protective Order at the time of disclosure—shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating to the same or related subject matter, provided that the producing party shall promptly upon discovery of the inadvertent disclosure notify the receiving party in writing that the information is Protected Material and was inadvertently disclosed, and that the information shall be designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL, HIGHLY CONFIDENTIAL – PROSECUTION BAR, HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE, as appropriate. Upon such notification, counsel shall reasonably cooperate to restore the confidentiality of the Protected Material to the extent possible. Upon subsequent correction of a designation, the receiving party must make reasonable efforts to assure that the material is treated in accordance with any revised designations

under the provisions of this Protective Order and promptly collect any copies of the material that have been provided to individuals other than those authorized under paragraph 11 of this Protective Order. The designating party may also request the individuals to execute the Declaration (Attachment A).

33.     Should any Protected Material be disclosed, inadvertently or otherwise, by a receiving party to any person not duly authorized to receive such information under this Protective Order, the receiving party must immediately (a) notify in writing the designating party of the unauthorized disclosures; (b) use its best efforts to retrieve all unauthorized copies of the Protected Material; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order; and (d) request such person or persons to execute the Declaration (Attachment A).

34.     The production of material protected by the attorney-client privilege or the work-product doctrine or any other applicable privilege ("Privileged Material"), whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this Action or in any other federal or state proceeding, provided that the producing party notifies the receiving party in writing promptly upon discovery of such information. Upon such notice by the producing party, the receiving party shall not review the Privileged Material in any respect. Within five (5) business days of receiving such notice, the receiving party shall return such information or documents or confirm in writing that it has taken reasonable steps to permanently delete all electronic copies of such documents from electronic records and to destroy all paper copies. If the receiving party has disclosed the information to others before being notified of the claim of privilege or protection, the receiving party must take reasonable steps to retrieve and return or destroy the disclosed information. No use shall be made of such documents or

information during deposition or at trial, nor shall such documents or information be shown to anyone after the request that they be returned.  The receiving party may move the Court for an order compelling production of such information (based on information independent of the content of the allegedly privileged materials in question), but the motion shall not assert as a ground for production the fact or circumstances of the inadvertent production.  The producing party must preserve any Privileged Material until all disputes regarding the discoverability of the document(s) have been resolved.  If a claim is disputed, the receiving party shall not use or disclose a document or information for which a claim of privilege or immunity is made pursuant to this paragraph for any purpose until the matter is resolved by agreement of the parties or by a decision of this Court.

35.     If a party becomes aware that it has received documents that are clearly privileged, the party receiving the privileged documents will promptly notify the producing party of receipt of the documents and return or destroy all copies of the privileged documents, if the producing party so requests within five (5) business days after being advised of the inadvertent production.  If the producing party does not request return or destruction of the identified privileged documents within this 5-day time period, the producing party will be deemed to have waived the privilege, but only with respect to the specific documents identified.

36.     Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege or work-product immunity or other applicable privilege or immunity designation by submitting a written challenge to the Court.  Absent good cause, the receiving party must object to the producing party's designation of disclosed information as Privileged Material by providing written notice of such objection within ten (10) business days of its receipt of a written demand for the return of the disclosed Privileged Material.

## USE OF DESIGNATED MATERIAL IN COURT FILINGS AND FORMAL PROCEEDINGS

37.     Designated Material must be filed under seal in accordance with the provisions of the United States District Court for the District of Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic Means.

38.     The protections afforded to Designated Material at trial will be determined by the Court upon an application by any party.

39.     In the event that any Designated Material is otherwise used in any Court proceeding in connection with this Action, the parties shall take all steps reasonably required to protect its confidentiality during such use.

40.     Any party wishing to disclose Designated Material during trial or at any hearing in this litigation shall do so only after exercising its best efforts to give the producing party notice and an opportunity to respond.  Notwithstanding the foregoing, nothing contained in this Protective Order shall be construed to prejudice any party's right to use any Designated Material in taking testimony at any deposition or hearing provided that the Designated Material is only disclosed to a person(s) who is: (i) eligible to have access to the Designated Material by virtue of his or her employment with the designating party; (ii) identified in the Designated Material as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such Designated Material, has, in the ordinary course of business, seen such Designated Material; (iv) a current or former officer, director or employee of the producing party or a current or former officer, director, or employee of a company affiliated with the producing party; or (v) entitled to access the Designated Material pursuant to paragraph 11 of this Protective Order.

27

41. Attendance at depositions at which Designated Material is to be used shall be governed by D. Del. LR 30.3.

## **MISCELLANEOUS**

42. The recipient of any Designated Material agrees to subject himself/herself to the jurisdiction of this Court for the purpose of any proceedings relating to the performance under, compliance with, or violation of this Protective Order.

43. The recipient of any Designated Material that is provided under this Protective Order shall maintain such information in a secure and safe area and shall exercise the same standard of due and proper care, but no less than a reasonable degree of care, with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information.

44. By entering this Protective Order and limiting the disclosure of certain information in this Action, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who becomes subject to a motion to disclose another party's Designated Material under this Protective Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

45. The restrictions provided herein shall not terminate upon the conclusion of this Action but shall continue until further order of this Court, provided that this Protective Order shall not be construed to: (a) prevent any party or its counsel from making use of information that was lawfully in its possession prior to its disclosure by the producing party; (b) apply to information that appears in issued patents or printed publications or otherwise becomes publicly known without fault of any party other than the producing party; or (c) apply to information that

any party or its counsel has, since disclosure by the producing party, lawfully obtained from a third party having the right to disclose such information.

46.     Nothing in this Protective Order shall preclude any party to this Action or their attorneys from: (a) showing a document containing Designated Material to an individual who either prepared or reviewed the document prior to the filing of this Action; or (b) disclosing or using, in any manner or for any purpose, any information or documents from the party's own files which the party itself has designated as confidential under this Protective Order.

47.     Nothing in this Protective Order shall bar or otherwise restrict any counsel from providing legal advice to his or her client solely with respect to this Action and, in the course thereof, relying upon his or her examination of Designated Material, provided that, in providing such advice and in otherwise communicating with his or her client, such person shall not make any disclosure of Designated Material or information derived therefrom to any person not entitled to have access to it.

48.     Nothing in this Protective Order shall prejudice the right of any party to oppose production of any information for lack of relevance, privilege, or any ground other than confidentiality.

49.     In the event that a party seeks discovery from a non-party to this Action, the non-party may invoke the terms of this Protective Order by advising all parties to this Action in writing.

(a)     The terms of this Protective Order are applicable to Protected Material produced by a non-party in this Action and designated as confidential under this Protective Order.  Such information produced by non-parties in connection with this litigation is

protected by the remedies and relief provided by this Protective Order. Nothing in these provisions should be construed as prohibiting a non-party from seeking additional protections.

(b)     All parties to this Action shall be treated as a receiving party with respect to any information produced by a non-party in this Action. To the extent that a party obtains information from a non-party via subpoena or otherwise, the party shall produce the information to the other party or parties within three (3) business days unless the receiving party can demonstrate good reason why it is not possible to do so.

50.     In the event that a party is required, by a valid discovery request, to produce a non-party's Protected Material in its possession (other than information produced in this litigation by a non-party), and the party is subject to an agreement with the non-party not to produce the non-party's Protected Material, then the party shall: (i) promptly notify in writing the requesting party and the non-party that some or all of the information requested is subject to a confidentiality agreement with a non-party; (ii) promptly provide the non-party with a copy of the Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and (iii) make the information requested available for inspection by the non-party. If the non-party fails to object or seek a protective order from the Court within fourteen (14) days of receiving the notice and accompanying information, the receiving party may produce the requested non-party's Protected Material responsive to the discovery request. If the non-party timely seeks a protective order, the receiving party shall not produce any information in its possession that is subject to the confidentiality agreement with the non-party before a determination by the Court. Absent a court order to the contrary, the non-party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

51.    Within ninety (90) days of the termination of this Action (including any appeals), all Designated Material of a producing party; all documents containing, describing, or summarizing such Designated Material; and all copies thereof (including without limitation electronic records of documents or information, document coding databases, and other database information), shall, at the election of the receiving party, be returned to the party that produced the same or destroyed (in which case the receiving party shall certify in writing that destruction has taken place within the ninety (90) day time period).  Notwithstanding the foregoing, outside counsel of record may retain an archival copy of any materials filed with the Court, correspondence, deposition transcripts, and/or attorney work product which contains Confidential Information.  Such archival documents shall be retained and treated in accordance with this Protective Order.

52.    This Protective Order is without prejudice to the right of any party to seek relief from the Court from any of its provisions, or to bring before the Court at any time the question of whether any greater or lesser restrictions should be placed upon the disclosure of Designated Material.

53.    No party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order.  Similarly, no party waives any right to object on any ground to the use in evidence of any of the material covered by this Protective Order.

54.    Subject to the provisions of this Protective Order, and any protective order entered in *DexCom, Inc. v. Abbott Diabetes Care Inc. et al.*, Case No. 6:21-cv-690-ADA ("the Texas Action"), documents and things produced in this Action by a party or non-party under this

Protective Order may also be used and disclosed by the parties in the Texas Action once the fact discovery period opens as if they had been produced in that action.

55.    This Protective Order may be amended as need may arise by written agreement of the parties, subject to court approval.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Rodger D. Smith II
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com

*Attorneys for Plaintiffs*

March 28, 2022

SHAW KELLER LLP

/s/ Nathan R. Hoeschen
_____
John W. Shaw (#3362)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendant*

SO ORDERED:

United States District Court, District of Delaware

 Dated: _____, 2022

_____
The Honorable Kent A. Jordan

**ATTACHMENT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT DIABETES CARE INC. and | ) | |
| ABBOTT DIABETES CARE LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-977 (KAJ) |
| | ) | |
| DEXCOM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION REGARDING PROTECTIVE ORDER ON CONFIDENTIALITY**

In consideration of the disclosure to me of certain information which is subject to the Protective Order on Confidentiality of this Court (the "Protective Order"), I declare and state under penalty of perjury as follows:

1. I have read the Protective Order and I agree to be bound by its terms and to comply with all of its provisions. I will hold in confidence, will not disclose to anyone other than those persons specifically authorized by the Protective Order, and will not copy or use for purposes other than for this lawsuit, any information designated under the Protective Order, except as expressly permitted in the Protective Order. I agree to take reasonable steps to return or destroy and certify destruction of all materials designated under the Protective Order which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the party for whom I was employed or retained. I will do this immediately upon receiving a request from the counsel for the party for whom I was employed or retained or, in any event, by no later than thirty (30) days after I have been notified that litigation between the parties has ended.

I accept full responsibility for taking measures to ensure that staff members working under my supervision comply with the terms of this Protective Order.

2.      I understand that if I violate the terms of the Protective Order, I will be in violation of a court order and subject to sanctions or other remedies that may be imposed by the court and potentially liable in a civil action for damages.

3.      I agree to submit myself to the personal jurisdiction of this Court for the purpose of enforcement of this Protective Order, even if such enforcement proceedings occur after termination of this action.


Dated: _____

By: _____

Name: _____

Address: _____

_____

_____

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 27, 2022, upon the following in the manner indicated:

John W. Shaw, Esquire                                    *VIA ELECTRONIC MAIL*
Nathan R. Hoeschen, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Defendant*

Christa Anderson, Esquire                               *VIA ELECTRONIC MAIL*
Eugene M. Paige, Esquire
Sophie Hood, Esquire
Elizabeth A. Eagan, Esquire
Andrew S. Bruns, Esquire
Sean M. Arenson, Esquire
Puja Parikh, Esquire
Nicholas R. Green, Esquire
Yena Lee, Esquire
Bilal Malik, Esquire
Stephanie J. Goldberg, Esquire
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
*Attorneys for Defendant*

*/s/ Rodger D. Smith II*
_____

Rodger D. Smith II (#3778)