IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABBOTT DIABETES CARE INC. and ABBOTT DIABETES CARE LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 21-977 (KAJ) |
| v. | ) ) | |
| DEXCOM, INC., | ) ) | |
| Defendant. | ) | |

**[JOINT PROPOSED] PRELIMINARY JURY INSTRUCTIONS**

## TABLE OF CONTENTS

I.     INTRODUCTION; ROLE OF THE JURY ................................................................ 1

II.    SUMMARY OF CONTENTIONS ........................................................................... 2

III.   WHAT A PATENT IS AND HOW ONE IS OBTAINED ...................................... 6

IV.   OVERVIEW OF APPLICABLE LAW ................................................................... 7

V.    BURDEN OF PROOF ........................................................................................... 9

VII.  SUMMARY OF PATENT ISSUES ..................................................................... 10

VIII. MEANINGS OF CERTAIN CLAIM TERMS ..................................................... 11

IX.   CONDUCT OF THE JURY .................................................................................. 13

X.    JUROR BINDERS ............................................................................................... 14

XI.   EVIDENCE ........................................................................................................... 15

XII.  CREDIBILITY OF WITNESSES ........................................................................ 17

XIII. OPINION TESTIMONY ...................................................................................... 18

XIV. DEPOSITION TESTIMONY ............................................................................... 19

XV.  NOTE TAKING BY JURORS ............................................................................. 20

XVI. OUTLINE OF TRIAL ......................................................................................... 21

## I.    INTRODUCTION; ROLE OF THE JURY

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

My role is to be the judge of the law. I will explain to you the legal principles, and make legal decisions, that you must follow, whether you agree with them or not.

[22-605 Preliminary Instruction 1; Third Circuit Model Jury Instruction 1.1]

## II.      SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are plaintiffs Abbott Diabetes Care Inc. and Abbott Diabetes Care Limited and defendant DexCom, Inc. Unless otherwise specified, I may refer to Abbott Diabetes Care Inc. as "Abbott Diabetes Care," and I may refer to Abbott Diabetes Care and Abbott Diabetes Care Limited collectively as "Abbott" or "Plaintiffs." I may refer to DexCom, Inc. as "DexCom" or "Defendant." Both Abbott and DexCom sell medical devices called "continuous glucose monitors," which are sometimes called "CGMs." CGMs monitor sugar (specifically, glucose) levels in the interstitial fluid and can help people with diabetes who need to monitor those sugar levels.

The case involves United States Patent Nos. 10,874,338, 10,945,647, 10,945,649, 10,959,654, 10,973,443, 11,000,216, and 11,013,440 (collectively, "the Asserted Patents"). A copy of each of these patents will be given to you. For your convenience, the parties and I will often refer to each patent by the last three numbers of its patent number. For example, U.S. Patent No. 10,874,338 is referred to as "the 338 patent."

Abbott filed suit in this court seeking money damages from DexCom for allegedly infringing the 338, 647, 649, 654, 443, 216, and 440 patents by making, using, selling, and offering for sale products in the United States that Abbott argues are covered by claim 22 of the 338 patent, claim 3 of the 647 patent, claim 29 of the 649 patent, claim 10 of the 654 patent, claims 1 and 18 of the 443 patent, claim 2 of the 216 patent, and claim 24 of the 440 patent. These specific claims that Abbott contends are infringed may be referred to collectively as "the Asserted Claims." Abbott also argues that DexCom has actively induced infringement of the Asserted Claims and/or contributed to the infringement of the Asserted Claims by others.

The products that are alleged to infringe are the DexCom G6 Continuous Glucose Monitoring System ("G6"), DexCom Pro Q Continuous Glucose Monitoring System ("Pro Q"), DexCom G6 Pro

Continuous Glucose Monitoring System ("G6 Pro"), DexCom G6 Glucose Program Continuous Glucose Monitoring System ("G6 Glucose Program"), and the DexCom ONE Continuous Glucose Monitoring System ("ONE") (collectively, "the Accused Products"). The parties have agreed that the G6 is representative of all of the Accused Products.

DexCom denies that it has infringed any of the Asserted Claims. DexCom also argues that certain of the Asserted Claims are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is obvious in view of the state of the art at the relevant time, or if the written description in the patent does not meet certain requirements [or if the patent suffers from improper inventorship].[1,2]

---

[1] [**Abbott's position:** Abbott does not believe inventorship should be tried to the jury, and will raise this issue separately with the Court.]

[2] [**DexCom's position:** Improper inventorship under 35 U.S.C. § 102(f) is an issue that should be tried to the jury. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348-49 (Fed. Cir. 1998) ("[T]he district court erred by not sending the inventorship issue to the jury."). The existence of a Federal Circuit Bar Association model jury instruction on invalidity under § 102(f) further confirms it is an issue for the jury. *See* Federal Circuit Bar Association Instruction B.4.3d. Indeed, throughout this litigation, until the exchange of jury instructions, Abbott itself has acknowledged that inventorship is a question for the jury. *See, e.g.*, D.I. 340 at 73 (stating "[n]o reasonable jury" could rely on DexCom's expert's analysis of inventorship); D.I. 414 at 28 (same).

DexCom's preliminary jury instruction proposal adopts the model jury instruction from the Federal Circuit Bar Association, with some supplementations to account for the parties' arguments and contentions. *See* Federal Circuit Bar Association Instruction B.4.3d; *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. 2022) ("While inventorship is evaluated on a claim-by-claim basis, the failure to join an inventor of any claim invalidates the entire patent."); *Burroughs Wellcome Co v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1228 (Fed. 1994) ("[C]onception is not complete if the subsequent course of experimentation, especially experimental failures, reveals uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice."); *Monsanto Co. v. Kamp*, 269 F. Supp. 818, 824 (D.D.C. 1967) ("The fact that each of the inventors play a different role and that the contribution of one may not be as great as that of another does not detract from the fact that the invention is joint, if each makes some original contribution, though partial, to the final solution of the problem."); *Spectralytics, Inc. v. Cordis Corp.*, 576 F. Supp. 2d 1030, 1043 (D. Minn. 2008) ("The PTO examines an applicant's affidavit for compliance with this rule, but the PTO does not otherwise investigate the applicant's assertions about his invention date. . . . Given the limited nature of the PTO's scrutiny of an inventor's Rule 131 affidavit, there is little reason for courts to defer to findings about invention dates made by the PTO during patent prosecution.").

Abbott incorrectly asserts that because Abbott may seek to correct inventorship at some future time by adding Bradley Kelemen back as an inventor on the '443 Patent, no instruction on inventorship is warranted. This position is plainly contrary to the law. First, cases are clear that the possibility of the patentee seeking to correct inventorship at some future point in time does not affect the presentation of the issue to the jury in the first instance. *See Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 1512334, at \*4 (E.D. Tex. Apr. 27, 2017) (Bryson, J., by designation) ("As occurred in the *Cassidian Communications* case, the defendants could win on their inventorship defense, but Allergan could move to correct inventorship under section 256 and, if prevailing on that motion, move to vacate the judgment of invalidity."); *Pannu*, 155 F.3d at 1350 ("When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should *first* determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor. … (emphasis added))); *id.* ("[A] patent with improper inventorship does not avoid invalidation simply because it might be corrected under section 256. … Rather, the patentee must claim entitlement to relief under the statute …"); *see also Allergan*, 2017 WL 1512334, at \*4 ("The Court will not bar the defendants from asserting their rights under section 102(f) simply because [patent owner] has the potential for correcting inventorship under section 256 and thereby avoiding invalidation of its asserted patents."). Second, correction of inventorship is not automatically granted, particularly in circumstances such as those here where Abbott may be estopped from changing its position. *See, e.g.*, *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1378-1381 (Fed. Cir. 2020) (considering the district court's application of judicial estoppel to bar an inventorship correction under § 256); *see also Yeda Rsch. And Dev. Co. v. Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 623 (S.D.N.Y. 2006) ("During the course of their patent prosecution, defendants specifically represented to the PTO that Figure 1(B) of the 1988 paper, which they copied into the patent application, discloses element (iii) of Claim 1 of the '866 patent, which states, "wherein the antibody inhibit [sic] the binding of EGF to the EGF receptor." U.S. Patent 6,217,866. They now take the position that Figure 1(B) does not disclose Element (iii) in arguing that they must be considered at least joint inventors of the patent because they solely conceived of Element (iii). However, because the PTO adopted their argument that Figure 1(B) supports Element (iii), we conclude that defendants are judicially estopped from now arguing that the Weizmann scientists did not disclose Element (iii) in the 1988 paper.").

Abbott's cited authority, *C.R. Bard, Inc. v. M3 Systems, Inc.*, does not suggest that a jury should not first consider the issue of invalidity for improper inventorship. 157 F.3d 1340 (Fed. Cir. 1998). Rather, in *C.R. Bard,* the jury issued a verdict of invalidity on many bases, including anticipation, obviousness, and incorrect inventorship for one of the patents at issue. *Id.* at 1346. Following the jury's verdict, the district court entered judgment of invalidity. *Id.* On appeal, the Federal Circuit explained that for a *final judgment* of invalidity, a correction under § 256 must not be available. *Id.* at 1353. This, of course, presumes a correction is indeed sought by the patent owner—relief Abbott has never asserted it may seek until two days ago and relief that DexCom disputes is available given the prosecution history of the patent and Abbott's positions in this litigation. *See, e.g.*, *Egenera*, 972 F.3d at 1378-1381 (considering the district court's application of judicial estoppel to bar an inventorship correction under § 256). Moreover, in *C.R. Bard*, the Federal Circuit did not suggest that a jury should not consider invalidity based on improper inventorship. Indeed, quite the opposite: the Federal Circuit explained that inventorship is a fact-dependent question, and the trier of fact is given substantial evidence deference, thus making clear that the jury must first consider the issue. *Id.* at 1352.

Your job will be to decide whether or not the asserted claims of Abbott's asserted patents have been infringed and, where DexCom contends a claim is invalid, whether or not those claims are invalid. If you decide that any claim of any patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Abbott to compensate it for the infringement. If you decide that any claim of any patent has been infringed and is not invalid, you will also need to make a finding as to whether DexCom's infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

[Federal Circuit Bar Association Instruction A.2]

---

In addition, to the extent Abbott provides a proposed instruction, the proposal departs significantly from the model instruction and omits clarifications that are central to the parties' arguments and contentions, *e.g.*, law concerning experimental failures.]

## III.    WHAT A PATENT IS AND HOW ONE IS OBTAINED

As I mentioned, this case is about patents, which is an area unfamiliar to many people. To help you understand what patents are and how they are obtained, you will now be shown a video produced by the Federal Judicial Center. The video will run for approximately 17 minutes. At the conclusion of the video, I will provide you with additional instructions.

[Pretrial Order Section XIV.G]

**IV.     OVERVIEW OF APPLICABLE LAW**

In deciding the issues in this case, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether DexCom has infringed the Asserted Claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, to prove infringement, Abbott must prove by a preponderance of the evidence that DexCom made, used, sold, or offered for sale in the United States a product meeting all the requirements of an Asserted Claim of an Asserted Patent. DexCom may also indirectly infringe the Asserted Claims of the Asserted Patents by contributing to infringement by another entity, or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether some of the Asserted Claims are invalid. DexCom may prove a claim is invalid by clear and convincing evidence for a number of reasons, including because it is obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether inventions claimed in some of the Asserted Patents are obvious. I will provide you with detailed instructions on these questions at the conclusion of the case.

A claim may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet

this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the asserted patent. The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description of the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.

If you decided that any Asserted Claim has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Abbott to compensate it for the infringement. A damages award should put Abbott in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Abbott would have received had it been paid a reasonable royalty. The damages you award are meant to compensate Abbott and not to punish DexCom. You may not include in your award any additional amount as a fine or penalty in order to punish DexCom. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

## V.      BURDEN OF PROOF

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards. [Source: Federal Circuit Bar Association Instruction A.5]]

## VII.   SUMMARY OF PATENT ISSUES

In this case, you must decide several things according to the instructions I will give you at the end of the trial. Those instructions will repeat this summary and will provide more detail. You must decide:

1.   Whether Abbott has proven by a preponderance of the evidence that DexCom has infringed one or more claims of the asserted patents.

2.   Whether DexCom has proven by clear and convincing evidence that one or more claims of the asserted patents is invalid.

3.   If you find that DexCom infringed at least one valid claim of at least one of the asserted patents, you will then need to decide what amount of money damages Abbott has proven by a preponderance of the evidence that it is entitled to.

4.   If you find that DexCom has infringed one or more claims, whether Abbott has proven by a preponderance of the evidence that DexCom's infringement was willful.

[*Siemens Mobility Inc. v. Westinghouse Air Brake Tech. Corp.*, No. 16-284-LPS-CJB, D.I. 431 Instruction XIII.]

## VIII.   MEANINGS OF CERTAIN CLAIM TERMS

I have already determined the meaning of the following terms as used in the following patents:

- the term "slot" as used in the 649 and 444 patents means "a narrow opening, groove, or channel"; and

- the term "rotor comprising a cylindrical shape" as used in the 649 and 440 patents means "rotor having an overall cylindrical shape."

- [***Abbott's proposal***: the terms "straight track" and "second axis" as used in the 216 and 654 Patents do not require a "track" or "axis" to be stationary][3]

For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of

---

[3] [**Abbott's position:** In its summary judgment opinion the Court stated "Abbott also argues that DexCom is proposing a new construction for the disputed term, adding the limitations that the straight track must be stationary and that the second axis cannot move. DexCom disagrees and states that, because of the G6's internal movement, there can be no second axis defined by the length of the straight track. To avoid ambiguity regarding the scope of the claim element, I ruled during oral argument that '[i]t's not the case that the straight track must be stationary.'" D.I. 482 at 44 n.24; *see also* D.I. 454 at 35:6-5 ("But on the argument that Abbott is making that you folks are attempting to define an element that isn't there, to insert a claim element that isn't there, I'm persuaded they're right and that you guys are wrong, so I'm making it clear that is not an element, period.").

**DexCom's position**:  Abbott's proposed addition should be rejected.  The Court has not issued a claim construction of either "straight track" or "second axis" in the 216 and 654 patents.  Plain and ordinary meaning applies to those terms.  At the June 30, 2023 summary judgment hearing, the Court ruled that "[i]t is not the case that the straight track must be stationary," D.I. 482 at 44 n.24, and advised DexCom that "to the extent you try to argue to the jury that the claim requires that the straight track be stationary, you'll be corrected in front of the jury and so will your expert, and that will be, probably a bad thing for you." D.I. 454 at 32:5-10. DexCom will follow the Court's guidance.  But Abbott should not be allowed to convert the Court's summary judgment guidance into a formal claim construction for the jury, because that would be confusing, unwarranted, and prejudicial to DexCom.]

the claims before you retire to deliberate your verdict.

[Federal Circuit Bar Association Instruction A.3; claim constructions from D.I. 308]

## IX.   CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. You also must not talk to anyone about this case or use your electronic devices to communicate with anyone about the case, including through electronic messaging or social media. This includes your family and friends.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you. That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper or online article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

[22-605 Preliminary Instruction 5; Third Circuit Model Jury Instruction 1.3.]

## X.      JUROR BINDERS

To assist in your deliberations, you have been provided with a binder that contains the following:

- The Asserted Patents;

- The claim constructions to be applied for this case;

- A blank pad of paper; and

- A pencil or pen.

These materials have been jointly submitted by the parties. Please refer to these materials to assist you during the trial.

[Patent Case Management Judicial Guide 8.1.2.3.3]

## XI.   EVIDENCE

The evidence from which you are to find the facts consists of the following:

1.      The testimony of the witnesses;

2.      Documents and other things received as exhibits;

3.      Any facts that are stipulated--that is, formally agreed to by the parties; and

4.      Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1.      Statements, arguments, and questions of the lawyers for the parties in this case;

2.      Objections by lawyers;

3.      Any testimony I tell you to disregard; and

4.      Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection

is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

[22-605 Preliminary Instruction 6; Third Circuit Model Jury Instruction 1.5]

## XII.   CREDIBILITY OF WITNESSES

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.

[22-605 Preliminary Instruction 7; Third Circuit Model Jury Instruction 1.7]

## XIII.   OPINION TESTIMONY

You will hear testimony containing opinions from a number of expert witnesses presented by both parties. In weighing this opinion testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting those opinions. The opinions of the parties' expert witnesses should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

[22-605 Preliminary Instruction 8; Third Circuit Model Jury Instruction 2.11]

**XIV.   DEPOSITION TESTIMONY**

You may hear some witnesses testify through deposition testimony. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

[Third Circuit Model Jury Instruction 2.5]

## XV.   NOTE TAKING BY JURORS

During the trial, you may, but are not required to, take notes regarding testimony; for example, exhibit numbers, impressions of witnesses, or other things related to the proceedings. A word of caution is in order. There may be a tendency to attach undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Also, keep in mind that you will not have a transcript of the testimony to review. So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case. If you do take notes, you must leave them in the jury deliberation room, which is secured at the end of each day. And, remember that they are for your own personal use. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

[22-605 Preliminary Instruction 9]

## XVI.   OUTLINE OF TRIAL

The trial will now begin.  First, each side will make an opening statement.  An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

After the opening statements, Abbott will present its evidence in support of its contention that the Asserted Claims have been and continue to be infringed by DexCom and that the infringement has been and continues to be willful. To prove infringement of any claim, Abbott must persuade you that it is more likely than not that DexCom has infringed that claim. To persuade you that any infringement was willful, Abbott must also prove that it is more likely than not that the infringement was willful.

DexCom will then present its evidence responding to Abbott's evidence of infringement and willfulness. In addition, DexCom will put on evidence that certain claims of the Asserted Patents are invalid. To prove invalidity of any claim, DexCom must persuade you by clear and convincing evidence that the claim is invalid.

Abbott may then put on additional evidence responding to DexCom's evidence that the claims of the patents are invalid and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence. Abbott's "rebuttal" evidence may respond to any evidence offered by DexCom.

Finally, DexCom may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of some of the claims of the asserted patents by responding to any evidence offered by Abbott on that issue.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. The attorneys' comments are not evidence and the attorneys are being allowed to comment solely

for the purpose of helping you to understand the evidence.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

[Federal Circuit Bar Association Instruction A.5]