IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT DIABETES CARE INC. and ABBOTT DIABETES CARE LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>DEXCOM, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 21-977 (KAJ)<br>)<br>)<br>)<br>)<br>) |

## ORDER

At Wilmington this 17th day of January, 2024, confirming the ruling made in open Court on January 12, 2024,

IT IS HEREBY ORDERED that:

- DexCom's Motion to Exclude Certain Expert Testimony of Catharine Lawton (D.I. 558) is GRANTED and Ms. Lawton's proposed testimony regarding a reasonable royalty, as set forth in her declaration of September 7, 2023, is EXCLUDED.

"Any reasonable royalty must seek to measure the value of the patented technology – must be 'apportion[ed]' to that value – by separating out and excluding other value in economic products or practices." *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1345 (Fed. Cir. 2023).  The Federal Circuit has described that requirement as being in addition to "ascertaining what the parties would have agreed to in the context of a patent license negotiation." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337

(Fed. Cir. 2009); *see id.* ("[T]he objective of the Court's concern has been two-fold: determining the correct (or at least approximately correct) value of the patented invention, when it is but one part or feature among many, and" hypothesizing a patent negotiation). In other words, apportionment creates "the royalty base to which the royalty rate will be applied[,]" *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018), and a market analysis determines the value parties would hypothetically give for the apportioned value of the patented technology. *See id.* (applying royalty base analysis to "hypothetical negotiation"). Thus, even if the patentee can show that "a product would not be commercially viable without the patented feature," it still must apportion the value between what is and is not patented. *Id.* at 979; *see also Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("Whether 'viewed as valuable, important, or even essential,' the patented feature must be separated.").

Finally, "[t]o be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). An expert may not make "conclusory assertions" with a "great … analytical gap between the data and the opinion proffered[.]" *Virnetx*, 767 F.3d at 1333 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Catharine Lawton's three proffered reasonable royalty opinions do not provide the necessary apportionment.

### A.     Hypothetical Negotiation Approach

After I held the '954 Patent ("factory calibration patent") invalid at summary judgment (D.I. 483 at 1), Abbott filed a supplemental expert report from Ms. Lawton that compared DexCom's G6 to Abbott's FreeStyle Libre ("FSL").  (D.I. 498, Abbott Ex. 4; D.I. 573-2 ¶¶ 50-52.)[1]  Abbott all but admits that that approach did not apportion value to the patented features.  (D.I. 560, DLAW 89-90 (Ms. Lawton admitting that comparing the G6 to the FSL does not offer "a valuation of the patents-in-suit").)

### B.     "Analytical Approach"

In both her original and supplemental expert reports, Ms. Lawton presented an alleged "analytical approach" comparing the G5 and the G6.  (D.I. 573-1 ¶¶ 1019-1075; D.I. 573-2 ¶¶ 35-48.)  At one point, that comparison was justifiable.  (D.I. 482 at 64 ("Lawton … has made a credible pass at isolating the value of the patented features because it is her contention that the entire increase in demand between the G5 and G6 is due to the inventions claimed by the patents-in-suit.").)  But, after I invalidated the factory calibration patent, Ms. Lawton presented her supplemental report using the same method and resulting in the same number.  (D.I. 573-2 ¶ 45-47.)  Lawton had previously called factory calibration one of two primary demand drivers for the G6, the other being the easy-to-use inserter.  (D.I. 392, Ex. 150 ¶¶ 158-168, 1043; D.I. 560 at DLAW 6-9.)  Now, factory calibration must be considered unpatented.  Thus, to isolate the value of the

---

[1] Ms. Lawton did so in her original report as well.  (D.I. 573-1 ¶ 1483.)

3

remaining patented feature in the G6, the easy-to-use inserter, Lawton cannot use the G6 as a profit comparator. It has an unpatented feature – factory calibration – that Ms. Lawton admitted was a key driver of demand. (D.I. 392, Ex. 150 ¶ 159; D.I. 560 at DLAW 6.) *See Sprint Commc'ns Co. v. Cequel Commc'ns*, LLC, No. 18-1752-RGA, 2022 WL 1801433, at *1 (D. Del. June 2, 2022) (the comparison must be "apples-to-apples … except for the patented technology to ensure that there are no additional features that need to be apportioned out" (internal quotation marks omitted)).

    C.    **Alternative Approach**

In her third report, filed in response to DexCom's latest expert report, Ms. Lawton assumes that the incremental value of the G6 over the G5 can at least be evenly split between the easy-to-use inserter and factory calibration features of the G6. (D.I. 573-3 ¶¶ 110-112, 116.) Yet, this is a "conclusory assertion[]" with a "great … analytical gap between the data and the opinion proffered" if it is based on any data at all. *Virnetx*, 767 F.3d at 1333 (quoting *Gen. Elec. Co.*, 522 U.S. at 146). For example, at oral argument, Abbott stated that Ms. Lawton based that opinion in part on the fact that everyone needs to use the inserter but does not need to use factory calibration. That does nothing to isolate the value of the *particular inserter* present in the G6 – after all, every CGM has an inserter, and every CGM patient has to use one. Abbott also contended that DexCom's officials said "there is no going backwards" after the G6, but they said so about factory calibration and not the inserter. (D.I. 560 at DLAW 6.) The picking of a 50% value does not appear to be based on any analytical method and so does not satisfy the requirement

4

that "the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (citation omitted).

### D.    What's Left

Ms. Lawton's opinion on lost profits and non-infringing alternatives is still in the case and can be used to attack DexCom's case, which includes the opinion of DexCom's expert, Laura Stamm, that estimates the percentage value change attributable to patented features. (D.I. 573 at 13-14.)

                                                 s/   Kent A.. Jordan
                                                 Kent A. Jordan, Circuit Judge
                                                 Sitting by designation