## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ABBOTT DIABETES CARE INC. and<br>ABBOTT DIABETES CARE LIMITED,<br><br>                Plaintiffs,<br><br>   v.<br><br>DEXCOM, INC.,<br><br>                Defendant. | C.A. No. 1:21-cv-00977-KAJ |

## [PROPOSED] FINAL PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure. The parties are Abbott Diabetes Care Inc. ("ADC Inc.") and Abbott Diabetes Care Ltd. ("ADC Ltd.") (collectively, "Abbott") and DexCom, Inc. ("DexCom") (together, the "parties"). Pursuant to Local Rule 16.3, the parties hereby submit for the Court's approval this proposed Final Pretrial Order governing the trial of C.A. No. 21-977, currently scheduled to begin on March 11, 2024.

**Abbott's Counsel:**

Morris, Nichols, Arsht & Tunnell LLP

Jack B. Blumenfeld

Rodger D. Smith II

Anthony Raucci


McAndrews, Held & Malloy, Ltd.

Leland G. Hansen

James M. Hafertepe

Sharon A. Hwang

Thomas J. Wimbiscus

Michael J. Carrozza

Manuela Cabal

Paul W. McAndrews

Scott P. McBride

David D. Headrick

Gregory C. Schodde

Eligio C. Pimentel

Carey J. Prill

Alexander M. Vogler

Alan M. Montera

Amanda C. Jackson

Dorien J. Clark

Rocco J. Screnci


Kirkland & Ellis LLP

Ellisen Shelton Turner

Amanda J. Hollis

Benjamin A. Lasky


Latham & Watkins LLP

Michael A. Morin

P. Anthony Sammi

Rachel R. Blitzer

S. Giri Pathmanaban

Aaron Macris

Michael Bern

Christine Nam

Tyler Latcham

Ryan Banks

Melanie Grindle

Richard Lowry


**DexCom's Counsel:**

<u>Shaw Keller LLP</u>

John W. Shaw

Karen Keller

Andrew E. Russell

Nathan R. Hoeschen

Emily S. DiBenedetto


<u>Keker, Van Nest & Peters LLP</u>

Robert A. Van Nest

Leo L. Lam

Eugene M. Paige

Matthew M. Werdegar

R. Adam Lauridsen

Sophie Hood

Elizabeth A. Egan

Andrew S. Bruns

Puja Parikh

Yena Lee

Bilal Malik

Stephanie J. Goldberg

Jacquie P. Andreano

JD Schneider

Oliver J. Fong

William S. Hicks

Michael K. Deamer

Eric B. Hanson

David J. Rosen

Ellen Watlington

Hilgers Graben PLLC

Theodore Kwong

Quinn Emanuel Urquhart & Sullivan

Nathan Hamstra

## I.     NATURE OF THE CASE

1.      This trial is a patent infringement action filed by Abbott against DexCom. Abbott accuses DexCom of infringing U.S. Patent Nos. 10,874,338 ("the '338 patent"), 10,945,647 ("the '647 patent"), 10,945,649 ("the '649 patent"), and 11,000,216 ("the '216 patent") (collectively, "the Asserted Patents").[1] ADC Inc. is the owner by assignment of the Asserted Patents.

2.      Both Abbott and DexCom sell medical devices known as "continuous glucose monitors" or "CGMs." CGMs monitor glucose levels in the body and can help people with diabetes manage their glucose levels.

3.      The Asserted Patents relate to CGM systems. The '649 and '216 patents relate to inserters; the '338 patent relates to transmitter mounts; and the '647 patent relates to sensor alignment and retention mechanisms.

4.      DexCom makes, has made, uses, has used, sells, has sold, offers for sale, or has offered for sale within the United States, or imports, or has imported into the United States, CGM products that Abbott accuses of infringing at least the following claims (collectively, the "Asserted Claims") of the Asserted Patents:

| Patent | Claim |
|--------|-------|
| '338 patent | 22 |
| '647 patent | 3 |
| '649 patent | 28 |
| '216 patent | 3 |

---

[1] Abbott also accused DexCom of infringing U.S. Patent No. 10,827,954 ("the '954 patent"). Abbott accused all of the Accused Products of infringing claims 1 and 15 of the '954 patent. On August 15, 2023, the Court issued an Opinion (D.I. 483) and Order (D.I. 482) finding, *inter alia*, the '954 patent claims invalid under 35 U.S.C. § 101.

5.     The accused products, including accused methods and systems, are as follows: DexCom G6 Continuous Glucose Monitoring System ("G6"), DexCom Pro Q Continuous Glucose Monitoring System ("Pro Q"), DexCom G6 Pro Continuous Glucose Monitoring System ("G6 Pro"), DexCom G6 Glucose Program Continuous Glucose Monitoring System ("G6 Glucose Program"), and the DexCom ONE Continuous Glucose Monitoring System ("ONE") (collectively, the "Accused Products"). The Accused Products include all components and features thereof (including any receivers).

6.     Abbott accuses all of the Accused Products of infringing one claim of each of the Asserted Patents.

7.     With regard to the Asserted Patents, Abbott accuses DexCom of:

   i.    directly infringing under 35 U.S.C. § 271(a) as a result of making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products;

   ii.   indirectly infringing under 35 U.S.C. §§ 271(b) and/or (c) as a result of inducing and/or contributing to infringement of the Asserted Claims; and

   iii.  infringing under 35 U.S.C. § 271(f) as a result of supplying components of the Accused Products from the United States.

**A.     Procedural History**

8.     On July 1, 2021, Abbott filed its Complaint against DexCom alleging infringement of twelve patents: the '338 patent, the '647 patent, the '649 patent, the '216 patent, the '954 patent, U.S. Patent Nos. 10,820,842 ("the '842 patent"), 10,952,653 ("the '653 patent"), 10,881,341 ("the '341 patent"), 10,959,654 ("the '654 patent"), 10,973,443 ("the '443 patent"), 11,013,440 ("the '440 patent"), and 10,966,644 ("the '644 patent"). (D.I. 1.)

9.     On September 13, 2021, DexCom moved to dismiss the First and Seventh Causes of Action ("Motion to Dismiss"), which relate to the '842 patent and '653 patent, respectively, asserting that those patents do not claim patentable subject matter under 35 U.S.C. § 101 and that

the First and Seventh Causes of Action consequently fail to state a claim as a matter of law. (D.I. 11.)

10.    On October 4, 2021, Abbott filed a First Amended Complaint ("FAC") that amended the First and Seventh Causes of Action, which relate to the '842 and '653 patents. (D.I. 17.)

11.    On November 11, 2021, DexCom again moved to dismiss the First and Seventh Causes of Action ("Second Motion to Dismiss"). (D.I. 21.) Abbott opposed the motion. (D.I. 29.) On February 8, 2022, the Court held Oral Argument on the Second Motion to Dismiss and issued an Order denying the motion. (D.I. 49.)

12.    Abbott filed a Second Amended Complaint ("SAC") on May 20, 2022, which included details relating to the Asserted Claims, the Accused Products, and DexCom's alleged direct, indirect, and willful infringement, and a request for award of enhanced damages under 35 U.S.C. § 285. (D.I. 108.)

13.    On June 30, 2022, DexCom filed its Answer to Abbott's SAC, in which DexCom denied Abbott's allegations of infringement. (D.I. 129.) DexCom also asserted various affirmative defenses including, but not limited to, that each of the Asserted Patents is invalid for failure to meet the requirements of one or more sections of 35 U.S.C. §§ 101, 102, 103, and/or 112. (*Id.*)

14.    On February 16, 2023, DexCom sought leave to amend its Answer to add a defense of inequitable conduct ("Motion to Amend"). (D.I. 259.) Abbott opposed DexCom's Motion to Amend. (D.I. 275.) The Court heard Oral Argument on DexCom's Motion to Amend on March 9, 2023, and granted DexCom leave to file an amended answer. (D.I. 298.)

15.    On March 10, 2023, DexCom filed its Amended Answer to the SAC. (D.I. 300.)

16.    The Court issued a claim construction Memorandum Opinion (D.I. 307) and Order (D.I. 308) on March 22, 2023.

17.    The Court heard Oral Argument on the parties' pending summary judgment and *Daubert* motions on June 30, 2023. The Court issued a summary judgment and *Daubert* Memorandum Opinion (D.I. 482) and Order (D.I. 483) on August 15, 2023. The Court ruled on the parties' pending motions as follows:

- DexCom's Motion for Summary Judgment (D.I. 330) was granted-in-part insofar as DexCom argued that the asserted '954 patent claims are invalid under 35 U.S.C. § 101.

- DexCom's Motion for Summary Judgment (D.I. 330) was denied-in-part insofar as DexCom argued that: the asserted '954 patent claims are invalid under 35 U.S.C. § 112; the asserted '842 and '653 patent claims are invalid under 35 U.S.C. § 101; Abbott is not entitled to an earlier invention date for the '842 and '653 patents; claim 18 of the '649 patent and its dependent claims are indefinite; and it is entitled to summary judgment of no willful infringement.

- DexCom's Motion to Strike Abbott's Untimely Damages Contentions (D.I. 334) was denied.

- DexCom's Motion to Exclude Expert Testimony Under *Daubert* (D.I. 336) was denied-in-part insofar as DexCom moved to exclude Cathy Lawton's royalty and lost profits opinions and certain opinions of John Smith and Karl Leinsing.

- DexCom's Motion to Exclude Expert Testimony Under *Daubert* (D.I. 336) was dismissed-in-part as moot insofar as DexCom moved to exclude Cathy Lawton's opinions that DexCom copied Abbott.

- DexCom's Motion to Strike Abbott's Untimely Expert Opinions (D.I. 407) was granted-in-part insofar as DexCom moved to strike portions of the declaration of Majid Sarrafzadeh (D.I. 347), and denied-in-part insofar as DexCom moved to strike: portions of the declaration of Neil Sheehan (D.I. 348); the entirety of the declaration of Karl Leinsing (D.I. 351); and portions of the declaration of John Smith (D.I. 379).

- Abbott's Motion for Summary Judgment and Exclusion of Expert Opinions Under *Daubert* (D.I. 339) was granted-in-part insofar as Abbott argued that: claim 18 of the '649 patent and its dependent claims are not invalid for indefiniteness under 35 U.S.C. § 112; the asserted claims of the '649 and '440 patents are not invalid for lack of written description under 35 U.S.C. § 112; the hypothetical negotiation date for purposes of reasonable royalties is March 31, 2021; and Laura Stamm's reasonable royalty analysis should be excluded to the extent it relies on the wrong hypothetical negotiation date.

- Abbott's Motion for Summary Judgment and Exclusion of Expert Opinions Under *Daubert* (D.I. 339) was denied-in-part insofar as Abbott argued that: the asserted claims of the '649 and '440 patents are not invalid as obvious under 35 U.S.C. § 103 based on the Guardian-Omnipod-Accu-chek and Yodfat-Omnipod prior art references; the

asserted claims of the '443 patent are not invalid for lack of written description under 35 U.S.C. § 112; the '443 patent is not invalid for improper inventorship and is not unenforceable for inequitable conduct; the inventions claimed in the '443 patent were conceived and reduced to practice before August 1, 2002; the asserted claims of the '649 and '440 patents, claims 3 and 6 of the '216 patent, claim 15 of the '842 patent, the asserted claims of the '338 patent, and the asserted claims of the '644 patent are infringed; and Ms. Stamm's opinions on non-infringing substitutes should be excluded under *Daubert*.

- Abbott's Motion for Summary Judgment and Exclusion of Expert Opinions Under *Daubert* (D.I. 339) was dismissed-in-part as moot insofar as Abbott argued that the asserted claims of the '216, '341, and '654 Patents are not invalid as obvious under 35 U.S.C. § 103 based on the Yodfat-Brister and Brister-Bachynsky prior art references and that it is entitled to summary judgment of no prosecution laches.

- Abbott's Motion to Strike DexCom's Untimely Enablement Defense (D.I. 394) was denied.

- Abbott's Motion to Strike DexCom's New Claim Constructions (D.I. 466) was denied.

18.     Between February 15, 2022 and February 28, 2022, DexCom filed two (2) petitions for *Inter Partes* Review in front of the Patent Trial and Appeal Board ("PTAB") challenging the '649 patent (IPR No. 2022-00605) and the '440 patent (IPR No. 2022-00637).

19.     The PTAB instituted IPR No. 2022-00605 and denied institution of IPR No. 2022-00637.

20.     On July 10, 2023, the PTAB issued a final written decision in IPR No. 2022-00605, holding that DexCom had demonstrated by a preponderance of the evidence that claims 1–6, 8–10, and 12–17 were unpatentable, but had not demonstrated that claims 7, 11, and 18-28 of the '649 patent were unpatentable.

21.     On October 3, 2023, the Court held a telephonic hearing on DexCom's Motion to Strike Plaintiffs' New Damages Opinions disclosed in the Declaration of Catharine M. Lawton in Support of Plaintiffs' Opposition to Defendant's Motions in Limine (D.I. 500), during which the Court denied DexCom's motion and allowed Abbott's damages expert's new opinions but granted DexCom leave to rebut them. Oct. 3, 2023 Hr. Tr. at 25-28.

9

22.    At the October 10, 2023 Pretrial Conference, the Court heard oral argument on various pending motions, and on November 9, 2023 issued an Order (D.I. 555) ruling as follows:

- DexCom's Motion to Strike Plaintiffs' New Damages Opinion (D.I. 500) was denied.

- Abbott's Motion to Strike DexCom's Argument in Opposition to Lost Profits (D.I. 538) was denied.

- Abbott's Request to Prevent the Jury from Hearing DexCom's Inventorship Defense (D.I. 533 at 1-3) was denied.

- DexCom's Request Regarding Evidence Subject to FRE 408 and the Parties' NDA (D.I. 533 at 5) was denied.

- DexCom's Motion in Limine No. 3 (D.I. 496 Ex. 8D) to Exclude Evidence of Willfulness, Including Alleged Copying by DexCom was denied.

- Abbott's Motion in Limine No. 2 (D.I. 495 Ex. 8P at 14) to Preclude DexCom's Experts from Using the Patent's Specification, Prosecution History, or Other Evidence to Interpret the Plain Meaning of the Patents' Claims or to Distinguish Between the Claims and the Accused Infringing Products was granted.

23.    At the October 10, 2023 Pretrial Conference, the Court reserved ruling on DexCom's Motion in Limine No. 1 to Exclude the Unsupportable Reasonable Royalty Opinion of Catharine Lawton and held that it will rule on the motion in conjunction with DexCom's *Daubert* motion on Ms. Lawton's opinions. (D.I. 555 at 2.)

24.    On October 6, 2023, DexCom filed a motion to continue trial. (D.I. 532.) On October 12, 2023, the Court issued an Amended Scheduling Order (D.I. 543) continuing the trial date from November 6, 2023 to March 11, 2023.

25.    On November 8, 2023, DexCom served a supplemental damages report, along with four supporting clinical and technical expert reports and five supporting employee declarations, and made a related document production. (D.I. 561.) The parties disagreed about whether the Court authorized the scope of this supplementation. (*Id*.) On December 6, 2023, pursuant to the parties' stipulation entered by the Court (D.I. 562), Abbott moved: (1) for leave to respond to DexCom's

10

new expert reports and declarations; and (2) to compel targeted document production relating to DexCom's new opinions and theories and depositions of DexCom's employee declarants; or, in the alternative (3) to strike DexCom's supplemental reports and fact declarations. (D.I. 563.) DexCom opposed Abbott's motion and cross-moved for a protective order: (1) prohibiting Abbott from introducing new experts in new areas such as Dr. Becker and further supplemental reports from existing experts; (2) setting reasonable limits on the length of supplemental depositions of DexCom's employee declarants Simpson and Kamath; and, (3) limiting any further discovery from DexCom to the compromises proposed in DexCom's November 17, 2023 letter. (D.I. 568.)

26.    On January 12, 2024, the Court held a hearing on Abbott's motions for leave to respond, to compel targeted discovery, or in the alternative to strike (D.I 563), Dexcom's cross-motion for a protective order (D.I. 568) and on Dexcom's Motion to Exclude Certain Testimony of Catharine Lawton (D.I. 558).  At the hearing, the Court granted Abbott's motions for leave to respond and to compel targeted discovery, and denied Abbott's motion to strike and Dexcom's motion for a protective order, as stated on the record at the hearing.  The Court further granted Dexcom's Motion to Exclude Certain Testimony of Catharine Lawton.

27.    On January 17, 2024, the Court issued a written Order (D.I. 602) on Dexcom's Motion to Exclude Certain Testimony of Catharine Lawton (D.I. 558), which excluded Ms. Lawton's proposed testimony regarding reasonable royalty as set forth in her declaration of September 7, 2023.

28.    On February 5, 2024, the Court held a Second Pretrial Conference. At the Second Pretrial Conference, the Court heard oral argument on various pending motions, ruling as follows:

- Abbott's Motion in Limine No. 1 to Preclude Argument, Evidence or Testimony Regarding Dexcom's Patents was granted. (D.I. 620 at 34:13-36:11.)

11

- Abbott's Motion in Limine No. 2 to Preclude Empty-Chair Arguments About Witnesses Who Do Not Testify Live At Trial was granted-in-part to the extent the Court held that empty-chair arguments regarding (1) individuals who are outside the subpoena power of the Court and not under the control of either party, (2) individuals who are within the subpoena power of the Court, (3) inventors that Dexcom did not depose, and (4) Mr. Glen Liu will not be allowed. (D.I. 620 at 77:4-22, 89:8-18, 81:20-82:1, 91:15-92:6.) Based on Dexcom's representation that it will not make any empty-chair arguments during opening statements (*id*. at 81:3-11), the Court reserved ruling on Abbott's motion with respect to individuals who are outside the subpoena power of the Court and under the control of either party. (*Id*. at 89:19-90:24, 91:15-92:11.)

- Abbott's Motion in Limine No. 3 to Preclude Argument or Evidence Suggesting that Inventorship of the '443 Patent Should Be Determined Based on Unclaimed Features of a Commercial Embodiment or Unclaimed Commercial Objectives was denied. (D.I. 620 at 114:11-12.)

- Dexcom's Motion in Limine No. 1 to Exclude the Deposition Testimony of Unrepresented Third-Party Martin Gibler was denied. (D.I. 620 at 104:7-105:23.)

- Dexcom's Motion in Limine No. 2 to Exclude Opinions that Abbott's FreeStyle Libre Products Practice Unasserted Patents was denied. (D.I. 620 at 121:9-10.)

- The Court reserved ruling on Dexcom's Motion in Limine No. 3 to Exclude Certain Evidence, Opinion or Argument by Abbott Regarding Abbott's Basis for Removing Kelemen and Kelemen's Contributions to the Inventions Claimed in the '443 Patent and Related Patents and Applications as moot. (D.I. 620 at 71:16-17.)

29.     A Final Pretrial Conference is scheduled to be held on March 8, 2024. (D.I. 616.)

30.     For trial, Abbott has reduced the number of asserted claims to four claims from four patents across four patent families. *See* D.I. 633.  On March 1, 2024, Abbott stipulated to dismissal with prejudice of all claims of infringement of the '443 patent, the '654 patent, and the '440 patent by Dexcom's G6. *See id*.

## II.     JURISDICTION

31.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, including 35 U.S.C. § 271.

32.     This Court has subject matter jurisdiction over Abbott's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). The subject matter jurisdiction of the Court is not disputed.

33.     This Court has personal jurisdiction over the parties because, *inter alia*, DexCom and Abbott are incorporated in Delaware and thus reside in this District.

34.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. §1400(b) because, *inter alia*, DexCom is incorporated in Delaware, and thus resides in this District.

35.     The parties do not dispute personal jurisdiction or venue for purposes of this action.

## III.    UNCONTROVERTED AND CONTESTED FACTS

### A.      Uncontroverted Facts

36.     The parties' statement of facts that are not disputed or have been agreed to or stipulated to by the parties and require no proof is attached as **Exhibit 1**.

37.     These facts are not disputed or have been agreed to or stipulated to by the parties. These facts should become part of the evidentiary record in this action. Any party, with prior notice to all other parties, may read any or all of the uncontroverted facts to the jury or Court and will be charged for the time used to do so.

### B.      Contested Facts

38.     Abbott's Statement of Contested Facts is attached as **Exhibit 2P**.

39.     DexCom's Statement of Contested Facts is attached as **Exhibit 2D**.

## IV.    ISSUES OF LAW WHICH REMAIN TO BE LITIGATED

40.     Abbott's Statement of Issues of Law is attached as **Exhibit 3P**.

41.     DexCom's Statement of Issues of Law is attached as **Exhibit 3D**.

## V.     WITNESSES

**A.     Abbott's Witnesses.** Abbott expects to call the following witnesses, either live or by deposition.

    1.     Expert witnesses:

        a)     Abbott will call the following witnesses live:

            (1)     Karl Leinsing

            (2)     Neil Sheehan

            (3)     Catharine Lawton

            (4)     Dr. John Anderson

            (5)     Dr. Karen M. Becker

    2.     Non-expert witnesses:

        a)     Abbott will call the following witnesses live:

            (1)     Marc Taub

            (2)     Badia Boudaiffa

            (3)     Gary Stafford

            (4)     Jason Pederson

        b)     Abbott may call the following witnesses live or by deposition:

            (1)     DexCom Witnesses:

                (a)     Giada Acciaroli

                (b)     Matt Dolan

                (c)     John Durham

                (d)     Laura Endres

                (e)     Ghazaleh Esmaili

                (f)     Arturo Garcia

                (g)     Jason Halac

(h)     Jonathan Hughes

(i)     Apurv Kamath

(j)     Aidan O'Sullivan

(k)     Neeta Sharma

(l)     Peter Simpson

(m)    Brian Smith

(n)     Barry Solomon

(o)     Mike Steelman

(p)     Barbara Woods

(q)     Steve Pacelli

(r)     DexCom (via its 30(b)(6) designees)

(2)     Other Witnesses:

(a)     Delve, LLC (via its 30(b)(6) designee, Justen England)

(b)     Stress Engineering Services, Inc. (via its 30(b)(6) designee, Martin Gibler)

(c)     Medtronic Inc. (via its 30(b)(6) designee, Mike Ivey)

(d)     Lawless Alliance LLC (via its 30(b)(6) designee, Michael Lawless (also in his personal capacity))

(e)     NOVO Engineering, Inc. (via its 30(b)(6) designee, Adam Livingston)

(f)     Insulet, Inc. (via its 30(b)(6) designee, Jason O'Connor)

(g)     Jorge Valdez

(h)     All witnesses listed by DexCom

(i)     Any custodian of records or other person for testimony sufficient to establish the authenticity and/or business record status under Fed. R. Evid. 803(6) of any trial exhibit to the extent that those matters are disputed

15

**B.**     **DexCom's Witnesses.** DexCom expects to call the following witnesses, either live or by deposition.

    1.     Expert witnesses:

        a)     DexCom will call the following expert witnesses live:

            (1)     Dr. Christine Brauer

            (2)     Jack Griffis

            (3)     Dr. Lori Laffel

            (4)     Laura Stamm

            (5)     Dnyanesh Talpade

            (6)     Jeff Vaitekunas

        b)     DexCom may call the following witnesses live:

            (1)     Gary Fletcher

    2.     Non-expert witnesses:

        a)     DexCom will call the following witnesses live or by deposition:

            (1)     DexCom Witnesses (live):

                (a)     Apurv Kamath

                (b)     Laura Endres

                (c)     Jason Halac

                (d)     Aidan O'Sullivan

                (e)     Neeta Sharma

                (f)     Peter Simpson

            (2)     Abbott Witnesses:

                (a)     Louis Pace

                (b)     Peter Robinson

                (c)     Gary Ashley Stafford

          (d)     Marc Taub

          (e)     Badia Boudaiffa

(3)     Other Witnesses:

          (a)     Delve/ Justen England

b)     DexCom may call the following witnesses live or by deposition:

(1)     DexCom Witnesses (live, unless unavailable):

          (a)     Matt Dolan

          (b)     Barbara Woods

(2)     Abbott Witnesses:

          (a)     Adam Cate

          (b)     Jeff Halpern

          (c)     Wesley Scott Harper

          (d)     Scott Kosinski

          (e)     Jason Pederson

(3)     Other Witnesses:

          (a)     Insulet / Jason O'Connor

          (b)     Medtronic/ Medtronic MiniMed Inc. / Michael Ivey

          (c)     Novo / Adam Livingston

          (d)     All witnesses listed by Abbott

          (e)     Bradley Kelemen

          (f)     Glen Liu

          (g)     Jeffery Funderburk

          (h)     Any custodian of records or other person for testimony sufficient to establish the authenticity and/or business record status under Fed. R. Evid. 803(6) of any trial exhibit to the extent that those matters are disputed

17

**C.      Third parties**

42.     Third parties are not expected to call witnesses at this time.

**D.      Abbott's Objections to DexCom's Witness List**

43.     Abbott objects to DexCom's identification of all DexCom witnesses, including Aidan O'Sullivan, Neeta Sharma, Peter Simpson, Barbara Woods, Apurv Kamath, Mike Steelman, and Laura Endres, to the extent these witnesses will provide improper lay opinion testimony (Fed. R. Evid. 701-703), including, for example, the cost and timelines relating to DexCom's alleged non-infringing alternatives.

44.     In this case, DexCom has served expert reports from the following individuals: Dr. John Mastrototaro, Dr. Jeff Vaitekunas, Dr. Gary Fletcher, Laura Stamm, Dnyanesh Talpade, Dr. John Villasenor, Jack Griffis, Dr. Christine Brauer, and Dr. Lori Laffel. None of these individuals were identified by DexCom as fact witnesses. Abbott objects to any of these individuals as a fact witness to facts and issues not fairly disclosed under Fed. R. Civ. P. 26(a). Abbott also objects to any opinion testimony by any of these individuals that is beyond the scope of their expert report. Abbott further objects to these witnesses to the extent their testimony would invade the province of the Court in instructing the jury as to matters of law, including claim construction.

45.     Abbott also objects to the extent DexCom seeks to offer any testimony as the corporate testimony of ADC Inc. or ADC Ltd., under Federal Rule of Civil Procedure 30(b)(6), when the testimony in question is not within the scope of the topics on which the relevant witness was designated to testify.

46.     Abbott objects to DexCom's identification of Bradley Kelemen, Glen Liu, Jeffery Funderburk, and Gary Fletcher to the extent Dexcom intends for these witnesses to testify

concerning the '443 patent because any such testimony would be irrelevant, confusing, and not helpful to the jury. *See* Federal Rules of Evidence 401, 403, and 702(a).

47.    Abbott makes these objections based on information that is reasonably available to Abbott at this time and at this stage of the proceedings. As additional information becomes available, Abbott reserves the right to supplement, revise, correct, clarify, withdraw, or otherwise amend these objections. Accordingly, Abbott reserves the right to supplement or amend its objections in light of future rulings by the Court, including any rulings on the parties' pending motions *in limine* or other evidentiary objections raised by the parties prior to trial. These objections are made without waiver of, and without prejudice to, any motions *in limine* or other evidentiary motions Abbott has filed or may file related to these or other witnesses. Further, Abbott does not waive and hereby expressly preserves any objections it may have to specific questions asked, testimony given, or documents used in the examination of these or other witnesses, whether presented live at trial or by deposition. Abbott also incorporates herein its objections to Abbott's Deposition Designations.

48.    Abbott reserves the right to object to any or other witnesses on DexCom's list of will call and may call witnesses, or to the scope of their testimony, at the time that their testimony is offered and/or once the scope of their intended testimony is known.

49.    Abbott makes no admission that any testimony from any DexCom witness is proper, relevant, or admissible. Abbott reserves the right to object to DexCom's use of any witness to the extent it violates any Rule of Evidence or Order of the Court.

### E.    DexCom's Objections to Abbott's Witness List

50.    DexCom objects to Abbott's Witness List as follows. These objections are made based on information that is reasonably available to DexCom at this time and at this stage of the

proceedings. As additional information becomes available, DexCom reserves the right to supplement, revise, correct, clarify, withdraw, or otherwise amend these objections. Accordingly, DexCom reserves the right to supplement or amend its objections in light of future rulings by the Court, including any rulings on the parties' pending motions *in limine* or other evidentiary objections raised by the parties prior to trial. These objections are made without waiver of, and without prejudice to, any motions *in limine* or other evidentiary motions DexCom has filed or may file related to these or other witnesses. Further, DexCom does not waive and hereby expressly preserves any objections it may have to specific questions asked, testimony given, or documents used in the examination of these or other witnesses, whether presented live at trial or by deposition. DexCom also incorporates herein its objections to Abbott's Deposition Designations.

51.     In this case, Abbott has served expert reports from Karl Leinsing, Neil Sheehan, John Smith, Dr. Eden Miller, Catharine Lawton, Dr. John Anderson, and Karen Becker. None of these individuals were identified by Abbott as fact witnesses. DexCom objects to any of these individuals as a fact witness to facts and issues not fairly disclosed under Fed. R. Civ. P. 26(a). DexCom objects to any opinion testimony by any of these individuals that is beyond the scope of their expert report. DexCom further objects to these witnesses to the extent their testimony would invade the province of the Court in instructing the jury as to matters of law, including claim construction.

52.     DexCom objects to Abbott's identification of John Smith to the extent Abbott intends for him to testify concerning the alleged infringement or validity of U.S. Patent 10,827,954 ("the '954 Patent"), or any alleged copying by Dexcom of the subject matter of the '954 patent, as the Court has ruled that the asserted claims of the '954 Patent are invalid under 35 U.S.C. § 101

(*see* Dkt. 490 at p. 17) and therefore any such opinion testimony would be irrelevant, confusing, and not helpful to the jury. *See* Federal Rules of Evidence 401, 403, and 702(a).

53.     DexCom objects to Abbott's identification of Catharine Lawton to the extent Abbott intends for her to testify concerning any subject matter that was excluded by the Court in its Order (D.I. 602) or that was not properly and/or timely disclosed pursuant to Fed. R. Civ. P. 26 and/or the Court's orders. Dexcom further objects to Abbott's identification of Ms. Lawton for the reasons set forth in Dexcom's Emergency Motion for Leave to File an Additional Daubert Motion and For Expedited Briefing, Ex. C (D.I. 634).

54.     DexCom also objects to Abbott's identification of Giada Acciaroli, Ghazaleh Esmaili, and Arturo Garcia. Their testimony would also concern issues relating to the '954 Patent, and would now be irrelevant and confusing. *See* Federal Rules of Evidence 401 and 403.

55.     Similarly, DexCom objects to Abbott's identification of Udo Hoss to the extent Abbott intends to offer testimony regarding the '954 Patent, on which Dr. Hoss is the first named inventor, as any such testimony would also be irrelevant and confusing. *See* Federal Rules of Evidence 401 and 403.

56.     DexCom also objects to Abbott's identification of Steve Pacelli, who has only testified in another case between these parties pending before this Court. (*DexCom v. Abbott Diabetes Care*, Case No. D. Del. 1:22-cv-00605-KAJ). Neither party listed Mr. Pacelli on its initial disclosures under Federal Rule of Civil Procedure 26(a)(1), and Mr. Pacelli's testimony—which would concern issues unrelated to this infringement case—would be irrelevant and confusing. *See* Federal Rules of Evidence 401 and 403. Additionally, DexCom objects to Abbott's attempt to designate Mr. Pacelli's trial testimony from Case No. 22-605 (D. Del.) as though it were a

deposition.   Trial testimony is not a deposition within the meaning of Federal Rule of Civil Procedure 32(a), and therefore may not be introduced at trial under that Rule.

57.     DexCom continues to reserve its rights with respect to Abbott's late identification of Badia Boudaiffa. Ms. Boudaiffa's name was added to Abbott's witness list for the first time only one night before the parties' initial joint pretrial order was due to be filed. Ms. Boudaiffa was never included in any version of Abbott's initial disclosures under Federal Rule of Civil Procedure 26(a)(1) in this case. Although DexCom did depose Ms. Boudaiffa this fall, Dexcom never had an opportunity to review documents from her files or pursue any follow-up discovery. DexCom does not object to Ms. Boudaiffa providing any testimony whatsoever, but DexCom does reserve its rights depending upon the nature and substance of her testimony.

58.     DexCom objects to Abbott's identification of Jason Pederson. Mr. Pederson was first disclosed by Abbott as a potential witness on November 22, 2023. Mr. Pederson was never included in any version of Abbott's initial disclosures under Federal Rule of Civil Procedure 26(a)(1) in this case. Although DexCom did depose Mr. Pederson on January 26, 2024, DexCom never had an opportunity to review documents from his files or pursue any follow-up discovery. DexCom does not object to Mr. Pederson providing any testimony whatsoever, but DexCom does reserve its rights depending upon the nature and substance of his testimony. In particular, Abbott's counsel represented to DexCom's counsel on January 22, 2024 that Mr. Pederson's "trial testimony will be directed to the subject matter of his November 21, 2023 declaration, other than possibly authenticating documents as contemplated by Section V.A.2.b.3.1 of the PTO"; DexCom thus objects to the extent Mr. Pederson's trial testimony goes beyond the scope of his November 21, 2023 declaration or beyond authentication of documents.

59.     DexCom also objects that Abbott identified only four Abbott witnesses that it will call live; then it lists 7 current Abbott employees that it indicates it may call by deposition.

60.     DexCom also objects to the extent Abbott seeks to offer any testimony as the corporate testimony of DexCom, Inc, under Federal Rule of Civil Procedure 30(b)(6), when the testimony in question is not within the scope of the topics on which the relevant witness was designated to testify.

61.     DexCom also objects to the extent Abbott seeks to offer any DexCom witness's individual testimony under Rule 30(b)(1) by deposition, when DexCom is bringing that witness live at trial.

62.     DexCom also objects to the extent Abbott seeks to offer deposition testimony from any of Abbott's witnesses designated under Rule 30(b)(6) when the witness had no personal knowledge of the subject matter of his or her testimony.

63.     DexCom reserves the right to object to other witnesses on Abbott's list of will call and may call witnesses, or to the scope of their testimony, at the time that their testimony is offered and/or once the scope of their intended testimony is known.

**F.     Procedures For Witnesses**

64.     The parties agree that fact witnesses will be sequestered. The parties agree that expert witnesses need not be sequestered. Notwithstanding the foregoing, the parties agree that a single corporate representative need not be sequestered even if the corporate representative may also be a fact witness.

65.     No party shall be required to present testimony from any witness on its list of witnesses. The listing of a witness by a party on its witness list does not waive any objections to

that witness should the opposing party attempt to call that witness to testify, either live or by deposition.

66.     The parties will identify by email to the opposing party the witnesses they intend to call, in the order in which they intend to call them, and whether those witnesses will be called live, by 8:00 p.m. two (2) nights before the day on which such witness will be called to testify. (For example, if a party expects to conduct an examination on Thursday, notice is to be given to the opposing party by 8:00 p.m. on Tuesday.) This paragraph applies only to the identification of witnesses. Witnesses whose testimony will be presented via deposition must also be disclosed according to the schedule set forth below in Section VII.

## VI.     Exhibits

### A.     Documentary and Physical Exhibits

67.     Abbott's list of exhibits that it may offer at the jury trial, and DexCom's objections to Abbott's exhibits, is attached as **Exhibit 5P**. Abbott's trial exhibits will be identified with PTX numbers, starting at PTX-0001. Abbott's physical exhibits will be identified with PPX numbers, starting at PPX-1.

68.     DexCom's list of exhibits that it may offer at the jury trial, and Abbott's objections to DexCom's exhibits, is attached as **Exhibit 5D**. DexCom's trial exhibits will be identified with DX numbers, starting at DX0001. DexCom's physical exhibits will be identified with DX numbers.

69.     A key to the objection codes used by both Abbott and DexCom for objections to exhibits is included in **Exhibit 5D** and **Exhibit 5P**, respectively.

70.     The parties agree that exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.

71.     The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

72.     The fact that a document appears on a party's exhibit list does not mean that it is admissible against that party.

73.     The listing of an exhibit by a party on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

74.     The parties agree that any document produced in the above-captioned action, or produced in *DexCom, Inc. v. Abbott Diabetes Care, Inc. et al.*, C.A. No. 22-605-KAJ (including documents deemed produced in these actions pursuant to paragraph 54 of the Protective Orders entered in both actions), that appears on its face to have been authored by [**Dexcom's proposal:** or for] a party or an employee, officer, [**Dexcom's proposal:** or] agent [**Dexcom's proposal:**, or consultant] of a party shall be deemed prima facie genuine and authentic within the meaning of Fed. R. Evid. 901 for the purpose of the above-captioned action. Nothing shall prohibit a party from offering argument or evidence to rebut these presumptions, or from otherwise seeking admittance of any documents or communications for purposes other than the truth of the stated matters. The parties further agree that the party opposing admission shall bear the burden of demonstrating the lack of authenticity of the documents described above. The parties reserve the right to oppose or object to the admission of any of the documents described above on grounds other than authenticity.[2]

---

[2] [**Abbott**: The parties previously agreed, multiple times, including in prior pretrial orders, that documents "authored by *or for* a party or an employee, officer, agent, *or consultant* of a party

75.     This Final Pretrial Order contains the maximum universe of exhibits to be used by any party (other than solely for impeachment) as well as all objections to the admission of such exhibits. Exhibits not listed will not be admitted unless good cause is shown.

### B.     Demonstrative Exhibits

76.     Exhibits that the parties intend to use at trial solely for demonstrative purposes without admitting into evidence ("demonstrative exhibits") do not need to be specifically described on the parties' respective exhibit lists that are part of this Final Pretrial Order. Abbott's demonstrative exhibits will be identified with PDX numbers, starting with PDX-1. DexCom's demonstrative exhibits will be identified with DDX numbers, starting with DDX-1.

77.     The parties shall exchange demonstratives (*e.g.*, PowerPoint slides and magnetic boards) to be used in opening statements by 4:00 p.m. the calendar day before opening statements. Any objections shall be provided no later than 6:00 p.m. the calendar day before their intended use. The parties are to meet and confer to resolve any objections to the demonstratives for opening statements at 6:30 p.m. the calendar day before opening statements.

78.     The parties shall provide demonstrative exhibits to be used in connection with direct examination of live witnesses by 7:00 p.m. the calendar day before their intended use. Any

---

shall be deemed prima facie genuine and authentic [under] Fed. R. Evid. 901" for this case. (*See, e.g.*, text above; *see also* Proposed Final Pretrial Orders filed with the Court on September 8, 2023 (D.I. 494 at ¶67), September 20, 2023 (D.I. 508 at ¶64), and January 4, 2024 (D.I. 582 at ¶74).) Abbott has relied on this agreement for more than six months in preparing for trial starting Monday. Allowing Dexcom to renege on this agreement would be grossly unfair and severely prejudicial to Abbott.

**Dexcom:** Abbott cites two proposed pretrial orders that were *proposals* only. The Court never entered them. Abbott cannot claim genuine reliance on two unentered orders. Additionally, Abbott will not be prejudiced by requiring it to meet the typical burden under the Federal Rules of Evidence to lay a foundation for the authenticity of certain evidence. Dexcom is willing to consider these documents on a case-by-case basis but cannot consent to a blanket stipulation like the one Abbott wants.]

objections shall be provided no later than 9:00 p.m. the calendar day before their intended use. The parties are to meet and confer to resolve any objections at 10:00 p.m. the calendar day before the demonstratives' intended use.

79.    If good-faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention in the morning of the opening statement or the day the witness is being called to the witness stand.

80.    If any of the demonstratives change after the deadline, the party intending to use the demonstrative shall promptly notify the opposing party of the change(s) to provide the opposing party with reasonable notice of the change(s) before the demonstratives are presented to the jury.

81.    The party seeking to use a demonstrative shall provide a color representation of the demonstrative to the other side in PDF form. However, for a demonstrative containing video animations, the party seeking to use the animation shall provide it to the other side in digital interactive format via a secure file share.

82.    For irregularly sized physical demonstratives, the party seeking to use the demonstratives shall provide a color representation as a PDF of 8.5" x 11" copies of the demonstratives indicating to the other party its intended physical size at trial.

83.    For physical demonstratives for which a color representation as a PDF is not feasible, the party seeking to use the demonstratives shall identify them in writing with specificity by the 7:00 p.m. deadline and make them available for inspection.

84.    These provisions do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination [**Abbott's proposal:** or rebuttal], neither of which need to be provided to the other side in advance of their use (without waiving either party's right to object to the same).

85.     Demonstrative exhibits may be admitted only by agreement of the parties.

**C.      Exchange of Exhibits for Use With a Witness**

86.     Each party shall identify by number the exhibits it expects to use on direct examination of a witness by 8:00 p.m. two (2) calendar days before the witness will testify live. The party receiving the list of exhibits shall provide the identifying party any objections to the listed exhibits by 8:00 p.m. via electronic mail to counsel of record on the following day. The parties shall then meet and confer as soon as possible to resolve any objections, in no event later than 9:00 p.m. that day. This notice provision does *not* apply to exhibits to be used for cross-examination [**Abbott's proposal:** or on rebuttal], which need not be provided to the other side in advance of their use (without waiving either party's right to object to the same).

**VII.   TESTIMONY BY DEPOSITION**

87.     Abbott identifies the deposition testimony that it may offer into evidence at the jury trial in **Exhibit 6P**. DexCom's objections to the designations, DexCom's counter designations, and Abbott's objections to the counter designations are listed in **Exhibit 6P**.

88.     DexCom identifies the deposition testimony that it may offer into evidence at the jury trial in **Exhibit 6D**. Abbott's objections to the designations, Abbott's counter designations, and DexCom's objections to the counter designations are listed in **Exhibit 6D**.

89.     A key to the objection codes used by both Abbott and DexCom for objections to deposition testimony is included in **Exhibit 6D** and **Exhibit 6P**, respectively.

90.     The parties may offer some or all of the deposition testimony set forth herein at trial.

91.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

92.     This Final Pretrial Order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony, unless good cause is shown or unless used exclusively for impeachment.[3]

93.     For any witnesses whose testimony the parties intend to present at trial by deposition, the parties shall identify a final list of deposition designations to be played or read to the jury, whether the testimony will be played by video or read, and the proposed exhibits used in the designations, by 6:00 p.m. three (3) calendar days before designations to be played or read. Final objections to the testimony and/or exhibits and final counter-designations with proposed exhibits shall be provided by 6:00 p.m. two (2) calendar days before designations are to be played or read. Final objections to the final counter-designations and proposed exhibits shall be provided by 8:00 p.m. that day. The parties shall meet and confer at 9:00 p.m. the same day.

94.     If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than one (1) calendar day before the witness is to be called at trial, submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (*i.e.*, no more than one sentence per objection) of the basis for the objection and the offering party's response to it.

95.     The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony played in the same order it appears in the full transcript, minus any attorney objections, and shall provide a final

---

[3] [**Abbott:** Abbott objects to DexCom's "Counters to Plaintiffs' Counter Designations," which were not contemplated under the parties' agreed-upon pre-trial exchanges. Abbott reserves the right to serve objections and sur-reply to DexCom's "Counters to Plaintiffs' Counter Designations."]

version of the video and clip report with time allocations to all parties by 8:00 p.m. the day before it is to be shown to the jury or state in writing that the deposition testimony will instead be read into the record.

96.    Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations for each deposition so read or played. For clarity, primary designations will count against the time limits for the primary-designating party, and counter-designations will count against the time limits for the counter-designating party.

97.    Colloquy between counsel and objections will be eliminated when the deposition is read or played at trial.

98.    When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two (2) copies of the transcript of the designations and counter-designations that will be read or played. An additional copy shall be provided to the court reporter.

99.    If a party decides to play less than all of the designated testimony for a witness at trial, or to include less than all of its counter-designations, the opposing party may use such dropped testimony as counter-designations to the extent the usage of such testimony in such manner is otherwise consistent with Fed. R. Evid. 106, Fed. R. Civ. P. 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

## VIII.   BRIEF STATEMENT OF INTENDED PROOFS

### A.    Abbott's Brief Statement of Intended Proofs

100.   Abbott intends to show that DexCom directly infringed, and continues to directly infringe, literally or under the doctrine of equivalents, the Asserted Claims of the Asserted Patents

under 35 U.S.C. § 271(a) by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

101.   Abbott intends to show that DexCom has induced infringement, and continues to induce infringement, of the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(b).

102.   Abbott intends to show that DexCom has contributorily infringed, and continues to contributorily infringe, the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(c).

103.   Abbott intends to show that DexCom has infringed, and continues to infringe, the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(f) as a result of selling the Accused Products outside of the United States.

104.   Abbott intends to show that DexCom's infringement of the Asserted Claims of the Asserted Patents was, and continues to be, willful.

105.   Abbott intends to show that one of ordinary skill in the art would not have been motivated to modify particular alleged prior art references or combine alleged prior art references to arrive at the Asserted Claims of the '338 patent, '647 patent, and '649 patent.

106.   Abbott intends to show that one of ordinary skill in the art would not have had a reasonable expectation of success in modifying or combining the alleged prior art references to arrive at the Asserted Claims of the '338 patent, '647 patent, and '649 patent.

107.   Abbott intends to show that objective indicia of nonobviousness rebut any prima facie showing of obviousness for the Asserted Claims of the Asserted Patents.

108.   Abbott intends to show that it is entitled to damages no less than a reasonable royalty as a result of DexCom's infringement of the Asserted Patents, and the amount of those damages.

109.   Abbott intends to show that it is entitled to lost profit damages, including that, during the damages period, Abbott and DexCom competed in a two-player market.

31

110.    Abbott intends to show that it is entitled to lost profit damages, including that, during the damages period: (1) there was a demand for the patented products; (2) there were no acceptable, non-infringing alternatives; (3) Abbott had the manufacturing and marketing capacity to exploit the demand; and (4) Abbott would have made a quantifiable amount of lost profits if DexCom had not infringed.

111.    Abbott intends to show that the named Plaintiffs, Abbott Diabetes Care Inc. and Abbott Diabetes Care Ltd., lost profits as a result of Dexcom's infringement.

112.    Abbott intends to show that Abbott Diabetes Care Ltd. is the principal profit (or loss) earning entity for sales of the FreeStyle Libre products in the United States.

113.    Abbott intends to show that Abbott Diabetes Care Inc. earns an 8% profit in the form of a royalty on the sales of the FreeStyle Libre products in the United States.

114.    Abbott intends to show that United States entities, Plaintiff Abbott Diabetes Care Inc. and Abbott Diabetes Care Sales Corp., collectively, earn a 2% operating margin on the sales of the FreeStyle Libre products in the United States.

115.    Abbott intends to show that Abbott Diabetes Care Sales Corp. distributes the FreeStyle Libre products on behalf of Plaintiff Abbott Diabetes Care Ltd.

116.    Abbott intends to show that, to the extent that Abbott Diabetes Care Sales Corp. makes any profit from sales of the FreeStyle Libre products in the United States, any such profit inexorably flows to Abbott Diabetes Care Inc. and/or Abbott Diabetes Care Ltd.

117.    Abbott intends to show that it is entitled to, by statute, to no less than a reasonable royalty on infringing sales not subject to lost profits, the appropriate range of such reasonable

royalty, that the *Georgia-Pacific* factors support a royalty at the higher end of such range, and that

such royalty should be a running royalty.[4]

---

[4] Abbott has further addressed its position on reasonable royalty damages in its January 30, 2024 Fourth Supplemental Response to Defendant's Interrogatory No. 8.

[**Dexcom**: The parties agree that Ms. Lawton cannot offer a per patient per month royalty. *See* D.I. 612. However, Abbott's interrogatory response supplemented on January 30, 2024 indicates that Ms. Lawton will opine on the *Georgia Pacific* factors. But this Court's order explicitly excluded "Ms. Lawton's proposed testimony regarding a reasonable royalty," and specified that the only topics "left" for Ms. Lawton are 1) lost profits, 2) non-infringing alternatives, and 3) criticizing Ms. Stamm's analysis. *See* D.I. 602 at 1, 5. Dexcom objects to the extent that Abbott intends to have Ms. Lawton offer any opinions that have been excluded by the Court, including but not limited to opinions relating to the *Georgia Pacific* factors.

Dexcom has never agreed—explicitly or implicitly—to Abbott's proffer of the proper scope of Lawton's Second Supplemental Report in light of the Court's *Daubert* order. In fact, Ms. Blitzer's February 2 email was Abbott's second proffer. The first Dexcom rejected outright as including paragraphs clearly excluded by the Court's order. Dexcom refused to agree to the second for the same reason. Per Ms. Blitzer's February 2 email, Abbott continues to insist, for example, that paragraph 62 of Lawton's Second Supplemental Report is still in the case, which reads: "Dexcom's expected loss of profits with an NIA ranges from $55 to $88 per patient per month, which significantly exceeds the intrinsic value of the patents, $47 per patient per month based on my Income Approach analysis (i.e., the Analytical Approach)." *See* Footnote 6 (Abbott's list of the portions it proposes are excluded from Lawton's Second Supplemental Report). That paragraph, among others, is plainly violative of the Court's order, which excluded Lawton's analytical approach in its entirety. *See* D.I. 602 at 3-4 (excluding Ms. Lawton reasonable royalty based on the analytical approach).

The fact that other courts have permitted experts to opine on the *Georgia Pacific* factors after excluding their royalty opinion is beside the point. This Court's order sets the bounds of what is permissible in *this* case and as explained it only allows for Lawton to testify to lost profits, NIAs, and criticism of Stamm. Consistent with the Court's order, Dexcom agrees that Lawton can criticize Stamm's hypothetical negotiation construct, as Abbott pointed out. But critiquing Stamm involves exactly that—identifying alleged flaws, not offering her own independent opinions. Abbott's contention that Lawton can offer *Georgia Pacific* factors to "rebut Ms. Stamm's royalty theories" is in essence saying that Lawton can offer a reasonable royalty opinion. And Ms. Lawton has already been excluded from doing just that. D.I. 602 (excluding "Ms. Lawton's proposed testimony regarding a reasonable royalty").

**Abbott:** Abbott provided Dexcom with what portions of Ms. Lawton's Second Supplemental Report it believes is proper and within the scope of the Court's *Daubert* Order. *See* February 2, 2024 Email from Blitzer to Lauridsen.  Dexcom never responded to Abbott's email.  However, Ms. Blitzer's February 2, 2024 email connected the scope of Ms. Lawton's third deposition with

118.   Abbott intends to show it is entitled to an accounting of damages for post-verdict infringement prior to any injunction, and the amount of such damages.

---

the non-excluded portions of Ms. Lawton's Second Supplemental Report as contemplated in said email.  As Dexcom proceeded to take Ms. Lawton's deposition on February 22, 2024, Dexcom implicitly agreed to the scope of Ms. Lawton's Second Supplemental Report as laid out in Ms. Blitzer's email.

Additionally, the Court's *Daubert* Order does not reference the *Georgia-Pacific* factors.  *See* D.I. 602.  Indeed, courts have allowed damages experts to provide an opinion regarding the *Georgia-Pacific* factors even after an ultimate royalty opinion has been excluded.  *See Acceleration Bay LLC v. Activision Blizzard*, C.A. No. 16-453-WCB, D.I. 767 at 15 (D. Del. Mar. 22, 2023) (Bryson, J., sitting by designation) (permitting patentee's damages expert to provide testimony "such as his general framing of the hypothetical negotiation and the *Georgia-Pacific* factors," even though ultimate reasonable royalty opinion had been excluded).  It is also appropriate for Ms. Lawton to provide an opinion as the *Georgia-Pacific* factors to rebut Ms. Stamm's royalty theories and hypothetical negotiation construct.  In negotiations with Dexcom, Abbott has agreed that Ms. Lawton will not offer a per patient per month royalty.  In those same negotiations, Dexcom acknowledged, *inter alia*, that Ms. Lawton could address and criticize Ms. Stamm's analysis of any *Georgia-Pacific* factors on which Ms. Stamm opined.  (Notably, Ms. Stamm addressed all 15 *Georgia-Pacific* factors in her April 17, 2023 Rebuttal Report (at pp. 201-214.)).  This is consistent with Dexcom's agreement that Ms. Lawton is "able to critique Ms. Stamm's reasonable royalty analysis and criticize it." 1/12/24 Tr. 5:15-6:1.  Accordingly, Ms. Lawton will address those same *Georgia-Pacific* factors and critique Ms. Stamm's analysis of any or all of them.

Dexcom's late flagging of paragraph 62 of Ms. Lawton's Second Supplemental Report is of no moment.  Abbott has already agreed, in a supplemental discovery response requested by Dexcom, that "Abbott recognizes that the Court excluded Ms. Lawton's ultimate reasonable royalty opinions for lack of apportionment, and … it will fully comply with that Order at the upcoming trial." January 30, 2024 Fourth Supplemental Response to Defendant's Interrogatory No. 8 at 72.  In fact, that discovery response disclosed at length the scope of reasonable royalty expert testimony that Abbott intends to offer at trial.  *Id.* at 71-75.  Abbott specifically disclosed its intent for Ms. Lawton to address the *Georgia-Pacific* factors.  *Id.* at 72 ("Abbott intends to offer expert testimony on the subject of reasonable royalties from Ms. Lawton in compliance with the Court's Daubert Order (e.g., discussing the *Georgia-Pacific* factors and critiquing and criticizing Ms. Stamm's opinions)").  Dexcom objected to only one portion of Abbott's supplemental discovery response: whether or not Ms. Lawton could offer a per patient per month royalty rate.  The parties met and conferred on that issue on February 2, 2021.  Once Abbott agreed that Ms. Lawton would not offer a per patient per month royalty rate, Dexcom withdrew its objection and the parties formalized that agreement in a letter to the Court—along with their additional agreement that "Ms. Lawton will present her lost profits opinions and prebut and criticize Ms. Stamm's royalty opinion in Abbott's case in chief."  D.I. 613 at 2.  Dexcom cannot now, mere days before trial, seek to rescind that agreement.]

119.   Abbott intends to show it is entitled to injunctive relief that permanently enjoins DexCom and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from further infringement of the Asserted Patents.

120.   Abbott intends to show that, as part of the injunctive relief, Abbott is entitled to an order that requires the recall, removal, seizure, or destruction of all infringing products currently in the marketplace.

121.   Abbott intends to show that if a permanent injunction is not awarded, it is entitled to an ongoing royalty for DexCom's future sales of the Accused Products and any products that are not colorably different, and the amount of such royalty.

122.   Abbott intends to show that it is entitled to an award of prejudgment and post-judgment interest and costs, and the amount of such interest.

123.   Abbott intends to show it is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

124.   Abbott intends to show that this is an exceptional case pursuant to 35 U.S.C. § 285.

125.   Abbott intends to show that it is entitled to attorneys' fees, expenses, or costs, and the amount of such attorneys' fees, expenses, or costs.

126.   Abbott intends to rebut any assertions by DexCom that any of the Asserted Claims of the Asserted Patents are invalid under 35 U.S.C. §§ 103 and/or 112, not infringed, or unenforceable.

127.   Abbott intends to rebut any assertions by DexCom that each asserted prior art reference qualifies under 35 U.S.C. § 102 as prior art to the patent against which it is asserted.

128.   Abbott intends to rebut all of the below assertions that DexCom states it intends to prove.

129.    Further details regarding Abbott's intended proofs have been explained at length in Abbott's Second Amended Complaint (D.I. 108), Abbott's expert reports, Abbott's briefing in support of its Motions for Summary Judgment (D.I. 340, 414), Abbott's briefing in opposition to DexCom's Motions for Summary Judgment (D.I. 376), Abbott's Statement of Contested Facts (**Exhibit 2P**), the parties' Statement of Uncontroverted Facts (**Exhibit 1**), and Abbott's Statement of Issues of Law (**Exhibit 3P**), submitted herewith.

### B.    DexCom's Brief Statement of Intended Proofs

130.    DexCom's statement is limited to its expected proof with regard to Abbott's infringement and damages claims and DexCom's asserted affirmative defenses, and does not address the proof that Abbott may present, but has not yet identified, in its rebuttal case at trial. Furthermore, DexCom's statement is based upon the current status of the case and the Court's rulings. DexCom reserves the right to revise this statement in light of any further decisions or orders of the Court, including but not limited to with respect to the parties' motions *in limine*, information learned through discovery and expert analysis that has not yet been completed, and/or any new issues raised by Abbott. By setting forth an intended proof, DexCom is not intending to assume and does not assume any burden of proof on any issue as to which Abbott bears the burden.

Subject to the foregoing caveats, DexCom intends to establish the following through its presentation of evidence at trial:

131.    The Accused Products were independently developed by DexCom using DexCom's technology.

132.    DexCom did not copy any element of any of the Asserted Claims and did not copy any Abbott product that purports to practice any of the Asserted Claims.

133.   The features of the Accused Products that drive demand for the Accused Products are not covered by the Asserted Claims.

134.   DexCom's G6 device was approved by the U.S. Food and Drug Administration and on the market, and therefore publicly available, before the Asserted Patents were issued.

135.   Abbott had access to DexCom's G6 device prior to the dates the asserted claims of the Asserted Patents were submitted to the U.S. Patent and Trademark Office.

136.   Abbott conducted competitive intelligence with respect to DexCom, as many companies do with respect to their competitors, including tear downs of DexCom's CGM products and monitoring of DexCom's patenting activity.

137.   Abbott does not currently practice any of the Asserted Patents.

138.   The Accused Products practice certain of DexCom's patents.

139.   DexCom does not infringe any of the Asserted Claims because the Accused Products operate differently than the purported inventions claimed by the Asserted Claims.

140.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not directly infringe any asserted claim of the '647 patent, either literally or under the doctrine of equivalents.

141.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not directly infringe any asserted claim of the '338 patent, either literally or under the doctrine of equivalents.

142.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not directly infringe any asserted claim of the '649 patent, either literally or under the doctrine of equivalents.

143.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not directly infringe any asserted claim of the '216 patent, either literally or under the doctrine of equivalents.

144.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not indirectly, whether contributorily or by inducement, infringe the asserted claim of the '647 patent, either literally or under the doctrine of equivalents.

145.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not indirectly, whether contributorily or by inducement, infringe the asserted claim of the '338 patent, either literally or under the doctrine of equivalents.

146.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not indirectly, whether contributorily or by inducement, infringe the asserted claim of the '649 patent, either literally or under the doctrine of equivalents.

147.   DexCom's manufacture, sale, offer for sale, and/or use (or control of use by others) of the Accused Products does not indirectly, whether contributorily or by inducement, infringe any asserted claim of the '216 patent, either literally or under the doctrine of equivalents.

148.   DexCom's export of components of the Accused Products does not indirectly, whether contributorily or by inducement, infringe any Asserted Claim, either literally or under the doctrine of equivalents.

149.   The state of the art at the time of the alleged priority date of each of the Asserted Patents.

150.   The level of ordinary skill in the art to which each of the Asserted Patents pertains.

151.   The asserted claim of the '647 patent is invalid as obvious in light of the prior art under pre-AIA 35 U.S.C. § 103.

152.   The asserted claim of the '338 patent is invalid as obvious in light of the prior art under pre-AIA 35 U.S.C. § 103.

153.   The asserted claim of the '649 patent is invalid as obvious in light of the prior art under pre-AIA 35 U.S.C. § 103.

154.   Claim 3 of the '647 patent is invalid for lack of written description support under pre-AIA 35 U.S.C. § 112.

155.   The asserted claim of the '647 patent would have been obvious in view of Brister '984 to a person having ordinary skill in the art.

156.   The asserted claim of the '647 patent would have been obvious in view of Brister '984, in combination with Ethelfeld to a person having ordinary skill in the art.

157.   The asserted claim of the '647 patent would have been obvious in view of Heller to a person having ordinary skill in the art.

158.   The asserted claim of the '647 patent would have been obvious in view of Heller, in combination with Radmer to a person having ordinary skill in the art.

159.   The asserted claim of the '649 patent would have been obvious in view of Guardian, in combination with Omnipod and the Accu-Chek to a person having ordinary skill in the art.

160.   The asserted claim of the '649 patent would have been obvious in view of Yodfat in combination with Omnipod, to a person having ordinary skill in the art.

161.   The asserted claim of the '338 patent would have been obvious in view of Brister '360 to a person having ordinary skill in the art.

162.   The asserted claim of the '338 patent would have been obvious in view of Brister '360 in combination with Gerstle to a person having ordinary skill in the art.

163.   Abbott has failed to establish that there is objective evidence of nonobviousness and whether any such objective evidence suffices to rebut a prima facie case of obviousness.

164.   Abbott has failed to establish that there is a nexus between any of the alleged inventions disclosed in the Asserted Claims and the sale of the accused products.

165.   Abbott has failed to establish that the accused products' commercial success resulted from the features allegedly covered by the Asserted Claims as opposed to other factors unrelated to the Asserted Claims.

166.   Abbott has failed to establish that there was a long-felt but unmet need for any of the alleged inventions claimed in the Asserted Claims.

167.   Abbott has failed to establish that others attempted to develop any of the alleged inventions claimed in the Asserted Claims but failed to develop the claimed inventions.

168.   Abbott has failed to establish that others attempted to copy any of the alleged inventions claimed in the Asserted Claims.

169.   Abbott has failed to establish that any of the alleged inventions claimed in the Asserted Claims of the patents produced any unexpected results.

170.   Abbott has failed to show entitlement to lost sales in the United States for the named Plaintiff entities.

171.   DexCom was an early entrant to and innovator in the CGM market, releasing its first commercially approved CGM in 2006, and developed and grew that market extensively while Abbott lacked competitive products.

172.   Abbott had limited presence and success in the CGM market until 2014 OUS and in or around 2017 in the U.S.

173.   DexCom and Abbott products provide different features.

174.    Medtronic CGM products compete with DexCom and Abbott products. Medtronic products include products competing both for insulin pump users and for non-pump users. Medtronic sells to a substantial portion of pump-using CGM users, as well as to a material share of CGM users who do not also use or integrate with insulin pumps.

175.    Medtronic has been a longstanding market participant since its 1999 release of an FDA-approved CGM. It has historically offered CGMs that do not integrate with an insulin pump as well as systems that integrate with an insulin pump. Medtronic was the first to integrate insulin pumps and CGM with the Paradigm system that launched in 2006.

176.    DexCom is the "Gold Standard" CGM, offering key features that drive demand and are not covered by Abbott's asserted patents.

177.    The goals of diabetes management include maximizing time spent in normal glucose ranges and avoiding emergency or life-threatening excursions into high or low glucose levels. To do so, an individual needs accurate, reliable glucose measurements to make and inform optimal treatment decisions.

178.    CGMs provide people with diabetes with more frequent and readily available glucose data, along with other features that aid daily self-management, such as information for insulin dosing and treatment decisions.

179.    CGM features that promote the core function of providing readily available and usable glucose data include accuracy and safety-promoting features like real-time data streaming, alarms and predictive alerts, a remote monitoring and real-time share function, and integration with automated insulin delivery systems.

180.    DexCom's products offer core attributes of accuracy and safety-promoting features, with numerous related features that are not accused of infringing Abbott's asserted patents.

41

181. Users often prioritize and optimize for certain features over others. When people are considering a medical device, many are willing to trade off minor inconvenience and design choices for features they believe can improve self-management of diabetes.

182. Accuracy and safety-promoting features are primary demand drivers in the intensive insulin therapy ("IIT") user segment.

183. The IIT user segment includes all persons with Type 1 diabetes and a portion of the population with Type 2 diabetes. A portion of the IIT user segment uses insulin pumps, as described above.

184. DexCom is the market leader in the IIT segment.

185. DexCom's marketing emphasizes accuracy and usability. Usability includes numerous factors related to use of CGMs throughout the sensor's wear life, not merely to applying the on-body sensor.

186. DexCom users choose DexCom products for their core features, not for the features allegedly covered by the asserted claims.

187. Abbott entered the CGM market with a strategy of promoting its products as low cost and easy to use.

188. The IIT and non-intensive insulin therapy ("NIIT") user segments have different medical needs and customer preferences.

189. Abbott's CGM products lacked (and/or still lack) key features that DexCom and Medtronic products offer and that drive demand from IIT users.

190. The asserted patents do not provide the benefits that Abbott claims.

191. Abbott does not claim that its products on the market during the claimed damages period practice any of the Asserted Patents.

192.   In a hypothetical world in which the G6 could not be sold, acceptable non-infringing alternative products would be available to G6 users from both DexCom and/or Medtronic.

193.   The appropriate regulatory pathway (if any is required) and timeline for any non-infringing alternative offered by DexCom.

194.   DexCom had acceptable and available non-infringing alternatives that it could have sold to G6 users, including a modified G6 without the accused features.

195.   DexCom's modified G6 would not infringe.

196.   DexCom's modified G6 would be acceptable to G6 users.

197.   DexCom's modified G6 would have been readily available.

198.   DexCom's modified G6 includes the same or substantially similar benefits as the claimed benefits of the asserted patents.

199.   Dexcom's modified G6 would have been cleared by the FDA and/or would have been appropriately documented by Dexcom as a letter to file.

200.   DexCom's existing FDA-approved G5 was also acceptable and available as an additional non-infringing alternative that DexCom could have sold in place of the G6.

201.   DexCom's existing G5 does not infringe any of the asserted patents.

202.   DexCom's G5 includes the same or substantially similar benefits as the claimed benefits of the asserted patents.

203.   DexCom's G5 would have been an acceptable alternative to G6 users.

204.   DexCom's G5 had innovative CGM features that customers valued.

205.   Many users in fact chose the G5 over the FreeStyle Libre when they were both on the market at the same time.

206.   DexCom also could have modified its manufacturing process for the G5 to reduce its manufacturing costs.

207.   Another acceptable and available non-infringing alternative that DexCom could have sold in place of the G6 was a G5/G6 Hybrid combining the G6 sensor and other features with the G5's applicator and on-body portion, based on the "Mutombo" device that DexCom created, designed, manufactured, tested and used to support its G6 FDA submissions.

208.   Mutombo's combination of features supports factory calibration in a device with the G5's non-infringing applicator, mount, and seal carrier.

209.   The G5/G6 Hybrid would not infringe.

210.   The G5/G6 Hybrid would have been readily available.

211.   The G5/G6 Hybrid includes the same or substantially similar benefits as the claimed benefits of the asserted patents.

212.   The G5/G6 Hybrid would have been an acceptable alternative to G6 users.

213.   The G5/G6 Hybrid would include many innovative CGM features that customers valued.

214.   The G5/G6 Hybrid would have been cleared by the FDA.

215.   DexCom also could have moved its manufacturing of the G6 fully out of the United States, to the extent necessary to support continued, non-infringing sales of the existing G6 in the OUS market.

216.   Medtronic products were also acceptable and available to existing G6 users, including products available and acceptable to some portion of both pump users and non-pump users (in what Abbott describes as the "Standalone CGM" market).

217.   Medtronic products such as the Guardian Connect or MiniMed 770G were available to G6 users.

218.   Medtronic products such as the Guardian Connect or MiniMed 770G would have been acceptable to some G6 users.

219.   Even if the asserted patents are found to be valid and infringed, the proper remedy is for Abbott to receive a reasonable royalty based on DexCom's costs to design around the asserted patents and bring to market a non-infringing, modified version of the G6.

220.   In a hypothetical negotiation, a reasonable royalty would be based on DexCom's costs to modify the G6 and market a non-infringing version of the product.

221.   Abbott's proposed royalties are unsupported and unreasonable.

222.   Abbott's proposed royalties do not reflect or isolate the value of the accused patented features.

223.   Abbott's proposed royalties improperly assign no material value to important features of the G6 that are not covered by the asserted patents (including features of the G6 that are patented by Dexcom, not Abbott). Among others, these include Dexcom's superior accuracy, multiple features providing superior safety, alarms, and interoperability with insulin pumps.

224.   DexCom would not have agreed to pay Abbott's proposed royalties in a hypothetical negotiation.

225.   The *Georgia-Pacific* factors support DexCom's proposed royalty, not Abbott's.

226.   To the extent that Abbott attempts to offer a proposed royalty notwithstanding the exclusion of Ms. Lawton's reasonable royalty opinions, that the *Georgia-Pacific* factors do not support Abbott's proposed royalty.

227.   Abbott cannot meet its burden to show that it is entitled to an award of lost profits.

228. The Abbott entities in this case cannot show legal entitlement to lost profits.

229. Non-party Abbott Diabetes Care Sales Corp. makes all sales on which lost profits are claimed.

230. The profits and/or revenue of Abbott Diabetes Care Sales Corp. do not inexorably flow to either Abbott Diabetes Care Inc. or Abbott Diabetes Care Ltd.

231. Abbott Diabetes Care Ltd. does not ever have title to some or all of the products on which its claim for lost profits is based.

232. The relevant market is not a two-supplier market.

233. Acceptable non-infringing alternatives were available to DexCom, as set forth above.

234. Abbott's Libre products do not offer all of the features that are important to DexCom customers, as set forth above.

235. DexCom would not have exited the CGM market entirely in the but-for world, as Abbott contends.

236. IIT users of the G6 would not have switched to Abbott products, because the G5 and Medtronic products offer key features that are important to the IIT user segment, including (in addition to pump integration) accuracy, real-time and remote monitoring, and alarms.

237. Even if the modified G6 and/or the modified G5/G6 Hybrid were not available, Abbott would not have made all of DexCom's G6 sales. At most, a portion of DexCom's NIIT Type 2 users would have purchased Abbott's Libre products. Even in this NIIT market segment, some users still would have purchased non-Abbott CGMs.

238. Available and acceptable non-infringing alternatives would capture significant sales.

239.    Multiple other factors that Abbott does not account for would also inhibit users from switching from Dexcom's G6 to Abbott's Libre products; these include insurance coverage, brand familiarity and trust in DexCom, and various issues and complaints about Abbott's Libre products common among users and health care providers.

240.    Abbott lacked sufficient manufacturing capacity and inventory to supply the appropriate Libre products necessary to make the sales for which Abbott seeks lost profits.

241.    Among other deficiencies, Abbott's claimed excess supply of Libre 3 products could not substitute for deficient supplies of other Libre products, and Abbott also lacked sufficient capacity to supply readers even to meet its own sales demands in the actual world, let alone to supply the additional sales that Abbott contends it lost to DexCom.

242.    G6 sales were aided by DexCom's efforts to expand the market; the absence of those efforts in the but-for world would reduce Abbott's Libre sales and lost profits.

243.    Abbott's incremental costs associated with making its claimed lost sales would also reduce Abbott's lost profits in the but-for world. Abbott's lost profits analysis does not account for this factor, which would reduce its claimed lost profits.

244.    Abbott's damages analysis is unsupported and unreasonable.

245.    Certain patents directed to CGM systems or technologies with Adam Heller as a named inventor are essential to the sensor technology pursued by Abbott.

246.    That any alleged infringement by DexCom of the Asserted Patents after the patents-in-suit issued and DexCom had knowledge of them was not willful.

247.    Further details regarding DexCom's intended proofs can be found in DexCom's Answer to Abbott's Second Amended Complaint (D.I. 129), the reports of DexCom's expert witnesses, DexCom's briefing in support of its summary judgment and *Daubert* motions (D.I. 331,

337), DexCom's briefing in opposition to Abbott's summary judgment and *Daubert* motions (D.I. 388), and DexCom's Statements of Contested Facts and of the Issues of Law submitted herewith.

248.   As discussed at the hearing of November 30, 2021, issues relating to Abbott's request for injunctive relief will be litigated after trial and after supplemental discovery on this issue. This statement therefore does not cover post-judgment issues and/or remedies, including injunctive relief, ongoing royalties (if relevant), pre- and post-judgment interest, enhanced damages, and costs under 35 U.S.C § 285. DexCom reserves all rights to address these issues in post-trial briefing and, where relevant, to conduct related discovery.

## IX.   AGREEMENTS REGARDING PRESENTATION OF EVIDENCE AND WITNESSES

249.   The presentation of evidence will follow the burdens of proof.

    i.   Abbott's opening statement[5];

    ii.   DexCom's opening statement;

---

[5] [**Abbott's Position:** Contingent on the parties' agreement not to bring judgment as a matter of law motions until the close of evidence and a representation from Dexcom that Ms. Stamm will opine on reasonable royalty damages, the parties have agreed to the following sequencing of expert witness testimony on damages (as memorialized in D.I. 612): Ms. Lawton will present her lost profits opinions and prebut and criticize Ms. Stamm's royalty opinion in Abbott's case in chief, Dexcom will call Ms. Stamm on her lost profit and royalty opinions in its case in chief, and Abbott will cross-examine Ms. Stamm on those issues. Otherwise, Abbott reserves the right to re-call Ms. Lawton in rebuttal.  While Dexcom points to the "Order of Proof" set forth in the Court's Trial Management Order, that Order of Proof dictates that "the presentation of evidence will follow the pleadings and burdens of proof" and that "plaintiff may then reply on its claims for relief and answer the defendant's claims."  D.I. 310 at 5.  Notably, Dexcom bears the burden of proving availability of any hypothetical noninfringing alternatives it may choose to rely (and indeed many of Dexcom's proposed noninfringing alternatives are hypothetical products that have never been made or sold). *See, e.g.*, *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) ("When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time... The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period.").  Dexcom acknowledges this burden, yet refuses to acknowledge Abbott's entitlement to respond to Dexcom's showing.]

iii.   Abbott's case-in-chief regarding its patent infringement claims;

iv.   DexCom's rebuttal to Abbott's case-in-chief and DexCom's case-in-chief;

v.   Abbott's reply to DexCom's rebuttal and to DexCom's case-in-chief;

vi.   Abbott's closing argument;

vii.   DexCom's closing argument;

viii.   Abbott's rebuttal closing argument.

250.   The following issues will be decided by the Court outside the presence of the jury on a briefing and hearing schedule to be set by the Court after the jury trial concludes:

i.   Abbott's request for injunctive relief; and

ii.   Abbott's request for enhanced damages.

251.   To minimize the need for witnesses to testify multiple times, both sides will be allowed to cross-examine witnesses outside the scope of their directs.

252.   All motions for judgment as a matter of law will be held until the close of all evidence.

---

[**Dexcom's Position:**  Dexcom disagrees that such a scenario would necessarily entitle Abbott to recall Ms. Lawton in rebuttal. Non-infringing alternatives ("NIAs") are an element of damages, on which Abbott bears the burden of proof and must address in its case in chief. *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) ("To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits."); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief."). Abbott is correct that Dexcom must *rebut* the inference that off-market NIAs are not available, but only after Abbott has established the inference and otherwise met its burden on damages in its case in chief. Dexcom does not start with the burden of proof with respect to NIAs. Moreover, pursuant to the "Order of Proof" set forth in the Court's Trial Management Order, Abbott's reply to DexCom's rebuttal and to DexCom's case-in-chief "will be limited to matters [Abbott] could not have anticipated at the time it opened." D.I. 310 at 5.

253.   The parties agree (subject to the Court's approval) that exhibits may be entered into evidence through examination of expert witnesses without a separate sponsoring witness where: (1) the expert properly disclosed reliance on the exhibit; (2) the exhibit was produced, created, and authored by a party to the case (not including TheraSense, a predecessor to Abbott Diabetes Care); (3) the exhibit is discussed by the expert witness during his or her trial testimony; and (4) the exhibit is not otherwise objectionable, for example, because it is hearsay when offered by the proponent. The parties may also seek to introduce other exhibits through expert testimony, but will take those on a case-by-case basis, and this agreement shall not be used to imply that additional exhibits are not admissible through the experts.

254.   The parties agree that neither party will designate or play deposition testimony of witnesses on the other party's will-call list, irrespective of whether the witnesses are 30(b)(6) witnesses. Nonetheless, the parties agree that expert witnesses can display on their demonstrative exhibits deposition testimony of witnesses on the other party's will-call list, and can indicate that the witnesses' testimony is 30(b)(6) testimony where appropriate, both on the demonstrative exhibits and in any cross-examination of that witness. The parties further agree that neither party is waiving any objections it would otherwise have to deposition testimony if it had been offered by designation instead of being put on a demonstrative exhibit (as described in the preceding sentence). The parties will be allowed to admit deposition testimony of any of the other party's witnesses who were on the other party's will-call list, but who do not end up testifying live at trial.

255.   The parties will do their best to provide notice to the other party that it intends to close its case-in-chief no later than one calendar day before it closes its case-in-chief.

## X.   OPINION TESTIMONY

256.   Abbott provides its summary of the opinions to be offered by any witness to be called to offer opinion testimony as **Exhibit 7P**.

257.   DexCom provides the summary of the opinions to be offered by any witness to be called to offer opinion testimony as **Exhibit 7D**.

## XI.   DAMAGES

258.   **Abbott's Itemized Statement of Damages:** Abbott respectfully submits the following itemized statement of damages[6]:

---

[6] [**Abbott:** This itemized statement of damages includes current damages through June 2023. Abbott's damages are ongoing and Abbott reserves the right to supplement its itemized damages through trial. This is the first time Dexcom has attempted to argue that Ms. Lawton cannot opine on the number of infringing sales (which are measured for both royalty purposes and lost profits purposes on a "patient month" metric).  (While the parties have used the term "royalty base" to describe this number, the number is simply the total number of infringing sales at issue, not a dollar figure. Abbott certainly does not agree that the Court's *Daubert* Order precludes the introduction of a royalty base, but adjusted the wording here to address Dexcom's eleventh-hour argument that referring to the total infringing sales as a "royalty base" somehow rendered that fundamental information excluded.)  However, Dexcom previously implied that Abbott's understanding of the portions of Ms. Lawton's Second Supplemental Report not excluded by the Court's *Daubert* order, including the amount of infringing patient months through June 2023, was correct.  *See* Footnote 7.  Abbott and Ms. Lawton are entitled to identify the number of accused infringing sales at issue in this case, including to dispute and rebut Ms. Stamm's use of a lump sum royalty figure. Additionally, Abbott must disclose the infringing sales on which it is seeking lost profits as contrasted with the infringing sales on which it only seeks a reasonable royalty.  Under Dexcom's apparent position, Abbott would not be permitted to tell the jury simply how many infringing sales Dexcom has made.]

[**Dexcom:** Abbott attempts to present expert analysis on an appropriate royalty base under the guise of presenting "infringing patient months."  In every iteration of the proposed pre-trial order prior to the one being filed, Abbott stated it would be presenting a royalty base.  In response to Dexcom's objections that such analysis was precluded by the Court's *Daubert* Order, Abbott recharacterized its royalty base offerings into "infringing patient months," implicitly conceding that offering a royalty base is not permissible and attempting instead to import in such testimony under the guise of "infringing patient months."

Regardless, infringing patient months have no relevance for purposes of criticizing Stamm's royalty analysis, which is all Lawton is permitted to do under this Court's *Daubert* order. *See* D.I 602. Stamm offers a lump sum royalty and Abbott agrees Lawton cannot offer her own per patient per month royalty. *See* D.I. 612. Abbott may still state the number of sales on which it seeks lost profit damages, but Abbott has failed to demonstrate how the number of allegedly infringing sales not subject to lost profits is necessary for any permissible royalty damages analysis. Abbott may describe categorically which allegedly infringing sales are subject to lost profits versus reasonable royalties (e.g., U.S. sales vs. outside the U.S. sales), but that does not

51

- Total Damages (Lost Profits + Reasonable Royalty):

  - Total Lost Profits (Lost Sales): $1,428,744,565

  - Total Reasonable Royalty (Sales Excluded from Lost Profits): No less than a reasonable royalty per patient per month on 20,324,201 infringing patient months

  - Estimated Costs Associated with Transition: $(90,646,708)

- Total Damages (Reasonable Royalty): No less than a reasonable royalty per patient per month on 37,353,584 infringing patient months

259. **DexCom's Itemized Statement of Damages:** DexCom respectfully submits the following itemized statement of damages:[7]

- Under Local Rule 16.3(c)(8) and (9), plaintiff, but not defendant, is required to provide "details of the damages claimed."

---

entitle Abbott to provide expert opinion regarding what it contends is an appropriate royalty base (an opinion excluded by the Court's *Daubert* order). Finally, as explained in footnotes 3 and 6, Dexcom has never agreed nor even implied it agreed to Abbott's proffer of the portions of Lawton's Second Supplemental Report not excluded by the Court's *Daubert* order.]

[7] [**DexCom:** After the Court excluded Ms. Lawton's reasonable royalty opinions, D.I. 602, the parties agreed that Ms. Lawton would not offer at trial a per patient per month royalty, *see* D.I. 612. But Abbott still carries the burden on damages. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1370 (Fed. Cir. 2002) ("[T]he patent owner bears the burden of proving by a preponderance of the evidence the quantum of damages . . ."); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014) ("In a case completely lacking any evidence on which to base a damages award, the record may well support a zero royalty award."). Contrary to Abbott's contention, if Abbott cannot meet its burden to establish a reasonable royalty, it is not entitled to one. *See* infra note 7; *see also Rex Med. v. Intuitive Surgical, Inc.*, No. CV 19-005 (MN), 2023 WL 6142254, at *11 (D. Del. Sept. 20, 2023) ("Plaintiff has failed to meet its burden to prove its damages. A plaintiff is not entitled to an award of damages when none have been proven.") (citing *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020)).

Additionally, contrary to Abbott's representation, Dexcom has never agreed—explicitly or implicitly—to Abbott's proffer of the proper scope of Lawton's Second Supplemental Report in light of the Court's *Daubert* order. In fact, Ms. Blitzer's February 2 email was Abbott's second proffer. The first Dexcom rejected outright as including paragraphs clearly excluded by the Court's order. Dexcom refused to agree to the second for the same reason. Per Ms. Blitzer's February 2 email, Abbott continues to insist, for example, that paragraph 62 of Lawton's Second Supplemental Report is still in the case, which reads: "Dexcom's expected loss of profits with an

NIA ranges from $55 to $88 per patient per month, which significantly exceeds the intrinsic value of the patents, $47 per patient per month based on my Income Approach analysis (i.e., the Analytical Approach)." *See* below for Abbott's proposed list of excluded portions of Ms. Lawton's Second Supplemental Report. That paragraph, among others, is plainly violative of the Court's order, which excluded Lawton's analytical approach in its entirety. *See* D.I. 602 at 3-4 (excluding Ms. Lawton's reasonable royalty based on the analytical approach).

Abbott's suggestion that Dexcom somehow manifested assent to Ms. Blitzer's February 2 proffer because Dexcom proceeded to depose Ms. Lawton is plainly wrong. The deposition was not contingent on any agreement. At the hearing on the *Daubert* motion on January 12, Mr. Morin himself represented to the Court that Abbott would make Lawton available for deposition. *See* 1/12/24 Tr. at 38:14-15 ("MR. MORIN: We'll make her available for the deposition."). Abbott also blatantly misrepresents Ms. Hood's February 5, 2024 email. Rather than have anything to do with any negotiation for a deposition, it merely states the following;

> All,
>
> Nice to see some of you earlier today.  I also write to follow up regarding deposition scheduling.  We accept 2/21 for Mr. Leinsing's deposition in Chicago and 2/23 for Mr. Smith's deposition in Portland.  We also accept 2/23 for Dr. Becker, in-person, in San Francisco.  Please provide dates for Ms. Lawton in Chicago as soon as possible, and no later than Wednesday.  Also, I understand Abbott will now be serving a report from Anderson.  Please provide dates and a location for Anderson by Wednesday as well.
>
> Dr. Brauer is available on 2/21 for an in-person deposition in San Francisco.  Please confirm that date and location as soon as possible.
>
> Thanks,
> Sophie

Abbott further misrepresents the scope of Stamm's "response" to Lawton's partially excluded opinion.  The "response" was solely an update to her damages calculations to match the accounting period of Lawton's report.  It was not a response to the opinions of Lawton that this Court has excluded. Finally, proposing different language in the agenda that was later filed with the Court in advance of the February 5 pretrial conference, again, in no way binds Dexcom to Ms. Blitzer's February 2 email. Thus, Dexcom and Abbott are not in agreement on this issue, and Dexcom reserves its objections to any damages claims, evidence, or testimony to the extent it is subject to this Court's Daubert order or is otherwise unreliable or inadmissible.

[**Abbott:** While the Court excluded Ms. Lawton's ultimate reasonable royalty opinions for lack of apportionment, much of Ms. Lawton's analysis related to reasonable royalty is relevant to her criticism and critique of Ms. Stamm's royalty analysis, as Dexcom has conceded is appropriate (1/12/24 Tr. 5:15-6:1) *See Acceleration Bay LLC v. Activision Blizzard*, C.A. No. 16-453-WCB, D.I. 767 at 15 (D. Del. Mar. 22, 2023) (Bryson, J., sitting by designation) (permitting patentee's damages expert to provide testimony "such as his general framing of the hypothetical negotiation

and the *Georgia-Pacific* factors," even though ultimate reasonable royalty opinion had been excluded). Indeed, Abbott is statutorily entitled to no less than a reasonable royalty for every infringing sale or action by Dexcom. 35 U.S.C. § 284. "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003).

While Abbott recognizes that the Court excluded Ms. Lawton's ultimate reasonable royalty opinions for lack of apportionment, Abbott's entitlement to reasonable royalty damages is not contingent on expert testimony:  "[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather 'may [be] receive[d] ... as an aid.'" *Id.*, *reaffirmed in Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) ("[I]f a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record."); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (reversing district court's grant of summary judgment that patentee could not prove damages because the court could have used other record evidences as a basis for determining a reasonable royalty after exclusion of damage's expert opinion); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 598 (D. Mass. 2018) ("[E]ven, if there were no expert testimony on damages, the court would still be obligated to evaluate what evidence there was to come up with a reasonable royalty.")

Even in the absence of expert testimony on the issue of damages, a court may not award zero damages unless there is no genuine factual dispute that zero is the only reasonable royalty. *Acceleration Bay LLC v. Activision Blizzard Inc.*, 2019 WL 4194060, at *3-4 (D. Del. Sept. 4, 2019) (collecting cases); *see also Info-Hold, Inc., v. Muzak LLC*, 783 F. 3d 1365, 1372 (Fed. Cir. 2015) (reversing a summary judgment of zero damages granted by district court after it struck the patentee's expert's report "because there was no evidence of record supporting a zero royalty and the evidence of record which could  be used to determine a non-zero royalty was ignored"). In this case, neither party contends that the reasonable royalty should be zero. *See Mondis Tech. Ltd. v. LG Elecs., Inc*., Civil Action No. 15-4431 (SRC), 2020 U.S. Dist. LEXIS 70561, at *4-5, 9 (D.N.J. Apr. 22, 2020) (denying a motion for judgment as a matter of law because there was some evidence "from which the jury could reasonably award some amount of damages" including an infringer's expert's concession of a $1.9 million entitlement, despite exclusion of the patentee's expert's royalty testimony).

With regard to Dexcom's objection to Ms. Lawton's Second Supplemental Report, we understand any such objection to be resolved, as the parties agreed to the permissible scope of Ms. Lawton's Second Supplemental Report following the Court's *Daubert* ruling, Dexcom deposed Ms. Lawton on that Report (subject to the parties' agreement on scope) on February 22, 2024, and Ms. Stamm issued her own Third Supplemental Rebuttal Report in response the Ms. Lawton's Second Supplemental Report on February 19, 2024.

Dexcom now seeks, on March 4, 2024, to renege on negotiated agreements it made in order to secure a third deposition of Ms. Lawton, which took place on February 22, 2024.  (Notably, that deposition was then used strategically by Dexcom to develop the record for its recent motion for leave to file its fourth Daubert motion challenging Ms. Lawton's opinions (D.I. 634).)  When Dexcom requested a third deposition of Ms. Lawton on her November supplemental report, which

had been served prior to her second deposition, Abbott disagreed that Dexcom had any entitlement to such deposition and no such deposition had been ordered by the Court.  However, Abbott offered to make Ms. Lawton available only if the parties were in agreement on the scope of the un-excluded portions of the November report, and Abbott identified the portions of the report Abbott believed to be excluded.  R. Blitzer 1/30/24 email to Y. Lee.  After meeting and conferring on February 1, 2024, Abbott amended that list to include additional portions of the November report:

With regard to the scope of an additional deposition of Ms. Lawton, we'll amend the list of excluded portions of Ms. Lawton's Second Supplemental Report to the following:

- ¶ 8, as to Total Reasonable Royalty
- ¶ 9 as to Royalty Rate, Reasonable Royalty Damages, and Total Reasonable Royalty Damages – but not Royalty Base
- ¶¶ 21-27
- ¶¶ 73-74
- The following text from ¶ 82: "and, therefore, Dexcom would be willing to pay a royalty up to $88 per patient per month."
- ¶ 83 (other than the first sentence) and Chart 3.5
- The final sentence of ¶ 91
- ¶ 92 (other than the first sentence) and Chart 3.7
- ¶ 100
- ¶ 112

R. Blitzer 2/2/24 email to A. Lauridsen.  Abbott further agreed that Ms. Lawton will not offer at trial a per patient per month running royalty (even though the parties agreed that Ms. Lawton could quantify the costs improperly excluded from Ms. Stamm's cost-based royalty analysis).   Id.  During that same time, Abbott provided to Dexcom a draft of the Pretrial Conference agenda (that would later be submitted to the Court as D.I. 612), proposing that the parties identify for the Court the scope of Ms. Lawton's testimony as a disputed issue:

> **Disputed:**   The parties dispute the proper scope of Ms. Lawton's allowable testimony and continue to discuss this to try to reach agreement in advance of Monday's conference.

In response to Abbott's February 2 amended list of proposed agreed excluded portions and agreement, Dexcom took two actions.  1)  Dexcom removed that "Disputed" section from the draft agenda, and replaced it with the parties' agreement that "Ms. Lawton will not offer at trial a per patient per month running royalty."  D.I. 612 at 2.  2) Dexcom requested a date for the deposition of Ms. Lawton, which Abbott only agreed to contingent on agreement to the scope of the unexcluded portions of Ms. Lawton's report.  2/5/24 Email from S. Hood.  The parties agreed to a February 22, 2024 deposition date for Ms. Lawton, at which she was deposed regarding her opinions criticizing Ms. Stamm's royalty opinions in the November report.  As such, Dexcom is incorrect when it now—after successfully negotiating for the deposition it sought—asserts that

- DexCom contends Abbott is entitled to **no damages** because the asserted patents are not valid and/or not infringed.

- In the event any of the patents are found to be valid and infringed, DexCom contends Abbott is not entitled to any damages exceeding the specific amounts described in the Rebuttal Report of Laura Stamm dated April 14, 2023 and as elaborated on by her Supplemental Rebuttal Report dated September 1, 2023 and her Second and Third Supplemental Rebuttal Reports dated November 22, 2023 and February 20, 2024 to the extent those amounts have not been excluded by an order of this Court. *See* D.I. 602. Dexcom further contends that in the event any patent is found valid and infringed, Abbott is entitled to no more than zero or, at best, nominal damages if it cannot prove lost profits or adduce sufficient evidence at trial of a reasonable royalty.[8]

---

"Dexcom and Abbott are not in agreement on this issue."  The parties did reach agreement and Dexcom must be held to it.

Dexcom's late flagging of paragraph 62 of Ms. Lawton's Second Supplemental Report is of no moment.  Abbott has already agreed, in a supplemental discovery response requested by Dexcom, that "Abbott recognizes that the Court excluded Ms. Lawton's ultimate reasonable royalty opinions for lack of apportionment, and … it will fully comply with that Order at the upcoming trial."  January 30, 2024 Fourth Supplemental Response to Defendant's Interrogatory No. 8 at 72.  In fact, that discovery response disclosed at length the scope of reasonable royalty expert testimony that Abbott intends to offer at trial. *Id.* at 71-75.  Abbott specifically disclosed its intent for Ms. Lawton to address the *Georgia-Pacific* factors. *Id.* at 72 ("Abbott intends to offer expert testimony on the subject of reasonable royalties from Ms. Lawton in compliance with the Court's Daubert Order (e.g., discussing the *Georgia-Pacific* factors and critiquing and criticizing Ms. Stamm's opinions").  Dexcom objected to only one portion of Abbott's supplemental discovery response: whether or not Ms. Lawton could offer a per patient per month royalty rate.  The parties met and conferred on that issue on February 2, 2021.  Once Abbott agreed that Ms. Lawton would not offer a per patient per month royalty rate, Dexcom withdrew its objection and the parties formalized that agreement in a letter to the Court—along with their additional agreement that "Ms. Lawton will present her lost profits opinions and prebut and criticize Ms. Stamm's royalty opinion in Abbott's case in chief."  D.I. 613 at 2.  Dexcom cannot now, mere days before trial, seek to rescind that agreement.

Dexcom's reference to Mr. Morin's representation to the Court that Abbott would provide Ms. Lawton for a deposition to address any perceived problem with her opinion necessitating *Daubert* exclusion has no relevance in light of the fact that the Court granted Dexcom's motion to exclude.]

[8] [**Dexcom:** *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014) ("In a case completely lacking any evidence on which to base a damages award, the record may well support a zero royalty award."); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) ("The statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts."); *Rex Med. v. Intuitive Surgical, Inc.*, No. CV 19-005 (MN), 2023 WL 6142254, at *11 (D. Del. Sept. 20, 2023) ("Here, the record is wholly lacking in evidence that

## XII.   BIFURCATED TRIAL

260.   No bifurcation of the issues to be tried to the jury is necessary.

---

would allow the Court to determine the value of a reasonable royalty for the '650 patent. Therefore, the Court will remit the jury's award to nominal damages of $1.").

**Abbott:** While Abbott recognizes that the Court excluded Ms. Lawton's ultimate reasonable royalty opinions for lack of apportionment, Abbott's entitlement to reasonable royalty damages is not contingent on expert testimony:  "[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather 'may [be] receive[d] ... as an aid.'" *Id.*, *reaffirmed in Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) ("[I]f a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record."); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015) (reversing district court's grant of summary judgment that patentee could not prove damages because the court could have used other record evidences as a basis for determining a reasonable royalty after exclusion of damage's expert opinion); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 598 (D. Mass. 2018) ("[E]ven, if there were no expert testimony on damages, the court would still be obligated to evaluate what evidence there was to come up with a reasonable royalty.")

Even in the absence of expert testimony on the issue of damages, a court may not award zero damages unless there is no genuine factual dispute that zero is the only reasonable royalty. *Acceleration Bay LLC v. Activision Blizzard Inc.*, 2019 WL 4194060, at *3-4 (D. Del. Sept. 4, 2019) (collecting cases); *see also Info-Hold, Inc., v. Muzak LLC*, 783 F. 3d 1365, 1372 (Fed. Cir. 2015) (reversing a summary judgment of zero damages granted by district court after it struck the patentee's expert's report "because there was no evidence of record supporting a zero royalty and the evidence of record which could  be used to determine a non-zero royalty was ignored"). In this case, neither party contends that the reasonable royalty should be zero. *See Mondis Tech. Ltd. v. LG Elecs., Inc.*, Civil Action No. 15-4431 (SRC), 2020 U.S. Dist. LEXIS 70561, at *4-5, 9 (D.N.J. Apr. 22, 2020) (denying a motion for judgment as a matter of law because there was some evidence "from which the jury could reasonably award some amount of damages" including an infringer's expert's concession of a $1.9 million entitlement, despite exclusion of the patentee's expert's royalty testimony).

Finally, Dexcom has already agreed that Ms. Stamm will offer testimony on reasonable royalty, so the issues is moot.  D.I. 612 at 2 ("Agreed: In view of the Court's Daubert ruling, the parties agree that Ms. Lawton will present her lost profits opinions and prebut and criticize Ms. Stamm's royalty opinion in Abbott's case in chief, Dexcom will call Ms. Stamm on her lost profit and royalty opinions in its case in chief, and Abbott will cross-examine Ms. Stamm on those issues.")]

## XIII.   LIMITATIONS, RESERVATIONS, AND OTHER MATTERS

### A.      Length of Trial

261.   Trial is scheduled to begin on March 11, 2024 at 9:30 a.m. and last 10 days. (D.I. 543 at ¶5.)

Mark appropriate box:      Jury          ☒
                           Non-jury      ☐

262.   [**Abbott's proposal:** Each party is allocated a total of 22 hours to present their case. (D.I. 543 at ¶5.)][9] [**Dexcom's proposal:** Each party is allocated a total of 20 hours to present their case. (*See* D.I. 633 ordering stipulation of dismissal of three of the previously remaining seven asserted patents.)]

263.   [**Abbott's proposal:** Unless otherwise determined by the Court, time that a party is objecting to evidence in open court, examining or cross-examining witnesses, presenting deposition designations that are read or played into evidence, or otherwise speaking or arguing on behalf of a party will be counted as the time of that party.]

### B.      Number of Jurors

264.   There shall be nine jurors.

### C.       Jury Voir Dire

265.   The Court will conduct voir dire.

266.   The parties' proposed voir dire will be submitted three (3) days prior to the pretrial conference in accordance with the Court's Scheduling Order. (D.I. 543 at ¶4.)

---

[9] [**Abbott:** The Scheduling Order allocates each party "a total of 22 hours to present their case." D.I. 543 at ¶5. In stipulating to dismiss three of the previously asserted patents, neither party agreed to shorten the allocated time for trial. Abbott has prepared for trial with the understanding that each party would have 22 hours to present its case.]

### D.      Discovery Designations

267.   The reading of interrogatory responses or portions thereof shall count against the time of the party who is offering the interrogatory response or portions thereof into evidence.

268.   Abbott provides the following written discovery designations. Designation of a DexCom discovery response is not an admission that the response is relevant or admissible for all purposes, or under any circumstances. Abbott reserves the right to amend or supplement its designations. Abbott may also need to provide amended or supplemental designations based on additional Orders from the Court. Abbott reserves the right to object to DexCom's use of any discovery responses designated herein to the extent such use violates any Rule of Evidence or Order of the Court.

- DexCom's 1/6/2023 Response to Interrogatory No. 1, including original response and any and all supplements.

- DexCom's 4/19/2022 Response to Interrogatory No. 2, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 3, including original response and any and all supplements.

- DexCom's 5/9/2022 Response to Interrogatory No. 4, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 5, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 6, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 7, including original response and any and all supplements.

- DexCom's 4/29/2022 Response to Interrogatory No. 8, including original response and any and all supplements.

- DexCom's 6/24/2022 Response to Interrogatory No. 9, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 10, including original response and any and all supplements.

- DexCom's 12/20/2022 Response to Interrogatory No. 11, including original response and any and all supplements.

- DexCom's 1/6/2023 Response to Interrogatory No. 12, including original response and any and all supplements.

- DexCom's 1/23/2023 Response to Interrogatory No. 13, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 14, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 15, including original response and any and all supplements.

- DexCom's 10/11/2022 Response to Interrogatory No. 16.

- DexCom's 10/11/2022 Response to Interrogatory No. 17.

- DexCom's 10/11/2022 Response to Interrogatory No. 18.

- DexCom's 10/11/2022 Response to Interrogatory No. 19.

- DexCom's 10/11/2022 Response to Interrogatory No. 20.

- DexCom's 12/20/2022 Response to Interrogatory No. 21, including original response and any and all supplements.

- DexCom's 12/20/2022 Response to Interrogatory No. 22, including original response and any and all supplements.

- DexCom's 12/20/2022 Response to Interrogatory No. 23, including original response and any and all supplements.

- DexCom's 1/6/2023 Response to Interrogatory No. 24, including original response and any and all supplements.

- DexCom's 12/20/2022 Response to Interrogatory No. 25, including original response and any and all supplements.

- DexCom's 11/22/2023 Response to Interrogatory No. 27, including original response and any and all supplements.

- DexCom's 1/20/2023 Response to Interrogatory No. 28, including original response and any and all supplements.

- DexCom's 1/20/2023 Response to Interrogatory No. 29, including original response and any and all supplements.

- DexCom's 1/20/2023 Response to Interrogatory No. 30, including original response and any and all supplements.

- DexCom's 1/26/2023 Response to Interrogatory No. 32, including original response and any and all supplements.

- DexCom's 1/20/2023 Response to Interrogatory No. 33, including original response and any and all supplements.

- DexCom's 1/20/2023 Response to Interrogatory No. 34, including original response and any and all supplements.

- DexCom's 1/20/2023 Response to Interrogatory No. 35, including original response and any and all supplements.

- DexCom's 2/10/2023 Response to Request for Admission Nos. 1-95.

- The complete response(s) or portions thereof relating to DexCom's designations below.

269.   DexCom provides the following written discovery designations. Designation of an Abbott discovery response is not an admission that the response is relevant or admissible for all purposes, or under any circumstances. DexCom reserves the right to amend or supplement the below-specified designations. DexCom may also need to provide amended or supplemental designations based on additional Orders from the Court.

270.   DexCom reserves the right to object to Abbott's use of any discovery responses designated herein to the extent such use violates any Rule of Evidence or Order of the Court.

| Discovery Response | DexCom's Designations |
|---|---|
| Abbott's Responses to DexCom's First Set of Interrogatories (Nos. 1–10) served December 13, 2021 | Pages 8–9 (only the following:  text of Interrogatory No. 3 and "Abbott's Navigator product practices one or more claims of the U.S. Patent No. 10,973,443 and was sold in the United States no earlier than March 12, 2008.  Abbott's FreeStyle Libre and FreeStyle Libre 2 products practice one or more claims of U.S. Patent Nos. 10,820,842 and 10,827,954.  The FreeStyle Libre was sold in the U.S. no earlier than September 27, 2017.  The FreeStyle Libre 2 was sold in the U.S. no earlier than June 12, 2020.  Abbott's FreeStyle Libre |

| Discovery Response | DexCom's Designations |
|---|---|
| | 3 product practices one or more claims of U.S. Patent Nos. 10,820,842, 10,827,954, and 10,952,653.  The FreeStyle Libre 3 was made in the United States no earlier than September 24, 2020.") |
| Abbott's Responses to DexCom's Fourth Set of Interrogatories (Nos. 16–32) served November 14, 2022 | Pages 26–28 (the entirety of the text beginning with "**INTERROGATORY NO. 26**" on Page 26 and ending at the last sentence on Page 28) |
| Abbott's First Supplemental Responses to DexCom's Interrogatories Nos. 16, 18, 20–22, 25, and 29 & Second Supplemental Responses to DexCom's Interrogatories No. 28, 30–32 served December 27, 2022 | Pages 15–17 (only the following:  text of Interrogatory No. 21 and "Plaintiffs are not presently aware of any available products not manufactured by Abbott or DexCom that practice any of the Patents-in-Suit.") |
| Abbott's Third Supplemental Response to DexCom's Interrogatory No. 18 served March 14, 2023 | Pages 1–2 and 35 (only the following:  text of Interrogatory No. 18 and "DexCom has stated that, if the G6 infringes any Asserted Patent, the G5 nevertheless does not infringe that patent.  Abbott does not contest DexCom's statements.") |
| Abbott's Responses to DexCom's First Set of Requests for Admission (Nos. 1–35) served January 26, 2023 | Pages 3–7, 12–15 (the full text of Request for Admission Nos. 1–10, 12–13, 26–29, and 31–35 and only the word "admitted" from Abbott's response to each of the aforementioned Requests for Admission) |

## E.     Agreements to Exclude Certain Evidence and Arguments

271.   The parties have reached the following agreements concerning evidence and argument:

- The parties agree to exclude any evidence or argument regarding other litigations or administrative proceedings between the parties. For the avoidance of doubt, questions to experts about their work on other litigations for purposes of impeachment and/or cross-examination are not barred.

- DexCom agrees it will not include evidence, testimony, or argument regarding recalls of Abbott's baby formula.

- The parties agree not to refer to either party as a "monopolist," "attempted monopolist," or otherwise disparage a party's right to assert exclusivity as harming competition, patients, or doctors.

- The parties agree that (1) the parties' damages experts will supplement their reports only with 2023 patient base information, rather than modifying prior calculations with any newly produced pre-2023 patient base information; (2) DexCom will limit its reliance on the patient type information in DXCMDEL10062954, for all purposes, only to that document's 2023 data; and (3) neither party will use pre-2023 patient base data contained in supplemental production to contest the other party's reliance on previously produced pre-2023 patient base.[10]

### F.    Representative Products

272.   Abbott will prove the infringement of one representative product, the DexCom G6 Continuous Glucose Monitoring System, which, if Abbott is successful in so proving, the parties agree will be sufficient to prove that the other accused products made, used, offered for sale, sold, and/or imported by DexCom (*i.e.,*, Pro Q Continuous Glucose Monitoring System, G6 Pro Continuous Glucose Monitoring System, G6 Glucose Program Continuous Glucose Monitoring System, and the DexCom ONE Continuous Glucose Monitoring System) likewise infringe.

### G.    Federal Judicial Center Introduction to Patent System Video

273.   The parties agree that the Federal Judicial Center's video titled "The Patent Process: An Overview for Jurors" found at https://www.fjc.gov/publications/patent-process-overview-jurors may be played to the jurors at the start of trial.

---

[10] [**Abbott**: It is Abbott's understanding that Dexcom has additionally agreed not to rely on pre-2023 patient type data from its supplemental productions, though Dexcom refused to include language referencing such agreement.  Abbott has asked Dexcom to explain its position and to identify any intended use of such data.  If needed, Abbott will seek the Court's guidance at the Pretrial Conference.

**Dexcom**: Abbott has refused to include language accurately reflecting the parties' additional agreement that the parties will not use at trial any new pre-2023 patient type data from supplemental productions for which no equivalent data was previously produced, or which conflict with equivalent actual data that were previously produced.]

## XIV.   POST-TRIAL BRIEFING

274.   The parties request that the Court defer adoption of a post-trial briefing schedule at this time and instead order the parties to meet and confer and then submit positions on a post-trial briefing schedule 14 days after the verdict is rendered in the trial.

275.   The parties agree that at least the following issues shall be addressed, if necessary, in post-trial briefing only and not presented to the jury:

- Abbott's request for pre and post-judgment interest and costs;

- Abbott's request for Attorneys' fees under 35 U.S.C. § 285, including any request for a finding the case is exceptional under that provision;

- Abbott's request for injunctive relief (after any supplemental discovery);

- DexCom's request for Attorneys' fees under 35 U.S.C. § 285, including any request for a finding the case is exceptional under that provision.

## XV.   CERTIFICATION OF GOOD FAITH EFFORTS AS TO SETTLEMENT

276.   The parties certify that they have engaged in good faith efforts to explore the resolution of the controversy by settlement. At this time, the parties have been unable to resolve this controversy by settlement.

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Anthony D. Raucci
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Abbott Diabetes Care, Inc. and Abbott Diabetes Care Limited*

March 7, 2024

SHAW KELLER LLP

/s/ Nathan R. Hoeschen
_____
John W. Shaw (#3362)
Andrew E. Russell (#5382)
Nathan R. Hoeschen (#6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for DexCom, Inc.*

SO ORDERED this _____ day of March, 2024.


_____
United States Circuit Judge